# No. 25-1300

## In the United States Court of Appeals for the Eighth Circuit

Christopher Kohls; Mary Franson,
*Plaintiffs-Appellants*,

*v.*

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Chad Larson, in his official capacity as County Attorney of Douglas County,
*Defendants-Appellees*,

_____

Appeal from the United States District Court for the District of Minnesota,
Case No. 0:24-cv-03754-LMP-DLM,
Hon. Laura M. Provinzino

---

**Opening Brief of Christopher Kohls and Mary Franson**

---

Douglas P. Seaton
James V. F. Dickey
Alexandra K. Howell
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
Phone: (612) 428-7000
Email: james.dickey@umlc.org

Adam E. Schulman
Michael Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for*
*Plaintiff-Appellants Kohls and Franson*

## Summary of the Case

This is an appeal from a denial of preliminary injunction against enforcement of a Minnesota statute that criminalizes political speech in the form of AI-generated videos and images. Plaintiffs are a social media content creator (Kohls) who uses AI-generated audio as a tool to make political satire videos and a state legislator (Franson) who often reshares such content from Kohls and similar speakers. Consistent with this Circuit's leading precedent in this area, *281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014), Plaintiffs bring a First and Fourteenth Amendment pre-enforcement challenge. Notwithstanding *281 Care Committee*, the district court denied Plaintiffs' motion to enjoin enforcement of the law. Though Kohls' speech has been expressly targeted by California's substantively similar law prohibiting political deepfakes, the district court held that his speech was not "arguably proscribed" by Minnesota's law, and concluded he had no standing. App. 130; R. Doc. 47 at 11; Add. 11. While the court concluded that Franson's resharing was "arguably proscribed," it held she suffered no irreparable harm because the first version of the law was enacted sixteen months before she sued. App. 131–41; R. Doc. 47 at 12–22; Add. 12–22. An amendment passed shortly before Franson sued amplified the law's penalty to disqualify violators from any public office.

Plaintiffs now ask this Court to reverse and enter the injunction *281 Care Committee* warrants. They request twenty minutes of oral argument for each side.

Appellate Case: 25-1300     Page: 2     Date Filed: 04/18/2025 Entry ID: 5507826

## Corporate Disclosure Statement

Appellants Christopher Kohls and Mary Franson are individuals.

Appellate Case: 25-1300    Page: 3    Date Filed: 04/18/2025 Entry ID: 5507826

# Table of Contents

Summary of the Case ..................................................................................................... i

Corporate Disclosure Statement ............................................................................... ii

Table of Contents ......................................................................................................... iii

Table of Authorities .................................................................................................... v

Jurisdictional Statement ........................................................................................... 1

Statement of the Issues .............................................................................................. 2

Statement of the Case ................................................................................................. 4

     A.    Minnesota criminalizes political deepfakes and amends the
          prohibition to threaten disqualification from public office .............. 4

     B.    Plaintiff Kohls' satirical Kamala Harris campaign ad goes viral
          online; California's chief executive Governor Newsom and
          Minnesota Senator Klobuchar, among others, call it deceptive ....... 7

     C.    Kohls and Minnesota state legislator Franson sue to enjoin
          enforcement of the statute. ................................................................. 9

     D.    The district court refuses to enjoin enforcement, holding that
          Kohls lacks standing to challenge the law, and that Franson
          does not suffer irreparable harm .................................................... 11

Summary of Argument ............................................................................................. 12

iii

Argument ....................................................................................................... 14

I.    Kohls has standing because Minn. Stat § 609.771 "arguably proscribes" both his speech and that of others resharing it—injuring his expression and reach. ........................................................... 14

    A.    The statute at least "arguably" criminalizes Kohls' speech. ............ 15

        1.   The district court improperly narrowed the statute by inventing a parody exemption. ................................................. 17

        2.   The court erred by departing from the complaint. ........................ 18

    B.    The statute at least "arguably" criminalizes the resharing of Kohls' speech on social media. ........................................................ 23

II.   Franson did not unduly delay in bringing suit; both she and Kohls suffer irreparable harm from infringement of their speech rights. ......... 25

    A.    Nothing in the record suggests Franson or Kohls engaged in covered speech in 2023, and they could not have known their rights were infringed until 2024 ................................................. 27

    B.    The constitutional nature of the harm—and the statute's timing—make any delay legally irrelevant. ......................................... 33

III.  The Court should remand with instructions to enjoin Defendants from enforcing the statute because it flagrantly infringes core political speech. ......................................................................................... 38

Conclusion ..................................................................................................... 46

Combined Certifications of Compliance ......................................................... 48

Certificate of Service ..................................................................................... 49

Appellate Case: 25-1300    Page: 5    Date Filed: 04/18/2025 Entry ID: 5507826

# Table of Authorities

## Cases

*281 Care Committee v. Arneson*,
 2010 WL 610935, 2010, U.S. Dist. LEXIS 14712 (D. Minn. Feb. 19,
 2010) ............................................................................................................ 34

*281 Care Committee v. Arneson*,
 638 F.3d 621 (8th Cir. 2011) .................................................... 22, 28, 34

*281 Care Committee v. Arneson*,
 766 F.3d 774 (8th Cir. 2014) ............................................................ *passim*

*Alexis Bailly Vineyard, Inc. v. Harrington*,
 931 F.3d 774 (8th Cir. 2019) .......................................................... 22

*Animal Legal Def. Fund v. Reynolds*,
 89 F.4th 1071 (8th Cir. 2024) ........................................................ 16

*Animal Legal Def. Fund v. Vaught.*,
 8 F.4th 714 (8th Cir. 2021) ................................................ 14, 15, 24

*Baker Elec. Coop. v. Chaske*,
 28 F.3d 1466 (8th Cir. 1994) .......................................................... 25

*Block v. Meese*,
 793 F.2d 1303 (D.C. Cir. 1986) ...................................................... 24

*Boos v. Barry*,
 485 U.S. 312 (1988) ........................................................................ 23

*Bryant v. Woodall*,
 1 F.4th 280 (4th Cir. 2021) ............................................................ 22

*Cajune v. Indep. Sch. Dist. 194*,
 105 F.4th 1070 (8th Cir. 2024) ................................................. 44, 45

Appellate Case: 25-1300    Page: 6    Date Filed: 04/18/2025 Entry ID: 5507826

*Carman v. Yellen*,
    112 F.4th 386 (6th Cir. 2024) ..................................................................... 24

*Cerame v. Slack*,
    123 F.4th 72 (2d Cir. 2024) ......................................................................... 17

*Corner Post, Inc. v. Bd of Governors of the Fed. Reserve Sys.*,
    603 U.S. 799 (2024) ........................................................................... 27–28, 30

*Crawford v. Marion Cnty. Election Bd.*,
    553 U.S. 181 (2008) ....................................................................................... 39

*Cuviello v. City of Vallejo*,
    944 F.3d 816 (9th Cir. 2019) ............................................................... 3, 36, 37

*Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*,
    583 U.S. 416 (2018) ....................................................................................... 18

*Dakotan For Health v. Noem*,
    52 F.4th 381 (8th Cir. 2022) ........................................................................ 16

*Defenders of Wildlife, Friends of Animal & Their Environment v. Hodel*,
    851 F.2d 1035 (8th Cir. 1988) ....................................................................... 19

*Dep't of Commerce v. New York*,
    588 U.S. 752 (2019) ....................................................................................... 24

*Doe v. Chao*,
    540 U.S. 614 (2004) ....................................................................................... 18

*Doe v. S. Iron R-1 Sch. Dist.*,
    498 F.3d 878 (8th Cir. 2007) ........................................................................ 35

*Emineth v. Jaeger*,
    901 F. Supp. 2d 1138 (D.N.D. 2012) ............................................................ 35

Appellate Case: 25-1300    Page: 7    Date Filed: 04/18/2025 Entry ID: 5507826

*Enter. Fin. Grp., Inc. v. Podhorn,*
  930 F.3d 946 (8th Cir. 2019)........................................................... 14, 19

*Fantasysrus 2, LLC v. City of E. Grand Forks*,
  881 F. Supp. 2d 1024 (D. Minn. 2012)..................................................28

*FEC v. Ted Cruz for Senate*,
  596 U.S. 289 (2022) ...................................................................... 39, 40

*Fish v. Kobach*,
  840 F.3d 710 (10th Cir. 2016) ..............................................................36

*Gentile v. State Bar of Nevada*,
  501 U.S. 1030 (1991)...........................................................................16

*Grimmett v. Freeman*,
  59 F.4th 689 (4th Cir. 2023)................................................................45

*Heartland Acad. Cmty. Church v. Waddle,*
  335 F.3d 684 (8th Cir. 2003).......................................................... 14, 19

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.,*
  115 F.4th 889 (8th Cir. 2024) .........................................................35–36

*Huizenga v. Indep. Sch. Dist. No. 11,*
  44 F.4th 806 (8th Cir. 2022)................................................................21

*I.N.S. v. Cardoza-Fonseca*,
  480 U.S 421 (1987) .............................................................................18

*Iancu v. Brunetti*,
  588 U.S. 388 (2019) ...................................................................... 23, 44

*Int'l Ass'n of Firefighters, Local 365 v. City of E. Chi.,*
  56 F.4th 437 (7th Cir. 2022)................................................................36

Appellate Case: 25-1300     Page: 8     Date Filed: 04/18/2025 Entry ID: 5507826

*Int'l Ass'n of Firefighters, Local 2665 v. City of Ferguson*,
 283 F.3d 969 (8th Cir. 2002)......................................................... 24, 25

*Iowa Right to Life Committee, Inc. v. Williams*,
 187 F.3d 963 (8th Cir. 1999)..................................................... 3, 34–35

*Kirkeby v. Furness*,
 52 F.3d 772 (8th Cir. 1995) ...............................................................33

*Kohls v. Bonta*,
 752 F. Supp. 3d 1187 (E.D. Cal. 2024) ..................................... 4, 9, 43

*Krantz v. City of Fort Smith*,
 160 F.3d 1214 (8th Cir. 1998) ...........................................................22

*Lakewood v. Plain Dealer Pub. Co.*,
 486 U.S. 750 (1988) ..........................................................................23

*Lujan v. Defenders of Wildlife*,
 504 U.S. 555 (1992) ..........................................................................30

*Matal v. Tam*,
 582 U.S. 218 (2017) ...................................................................4, 44, 45

*McIntyre v. Ohio Election Comm'n*,
 514 U.S. 334 (1995) ..........................................................................45

*Minn. Citizens Concerned for Life, Inc. v. Swanson*,
 692 F.3d 864 (8th Cir. 2012) (*en banc*) ..........................................38

*Minn. Voters Alliance v. Mansky*,
 585 U.S. 1 (2018)................................................................... 16, 39, 44

*Nat'l Rifle Ass'n v. Vullo*,
 602 U.S. 175 (2024) ..........................................................................44

Appellate Case: 25-1300     Page: 9     Date Filed: 04/18/2025 Entry ID: 5507826

*Ng v. Bd of Regents*,
    64 F.4th 992 (8th Cir. 2024).......................................................................3, 26, 29

*Novus Franchising, Inc. v. Dawson*,
    725 F.3d 885 (8th Cir. 2013)..................................................................................36

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
    83 F.4th 658 (8th Cir. 2023)......................................................2, 3, 15, 16, 22, 38

*Pennell v. City of San Jose*,
    485 U.S. 1 (1988)..........................................................................3, 14, 18–19

*Phelps-Roper v. Nixon*,
    545 F.3d 685 (8th Cir. 2008)..................................................................................33

*Rotkiske v. Klemm*,
    589 U.S. 8 (2019)......................................................................................................18

*St. Paul Area Chamber of Commerce v. Gaertner*,
    439 F.3d 481 (8th Cir. 2006).......................................................................... 22, 34

*State v. Hensel*,
    901 N.W.2d 166 (Minn. 2017)...............................................................................23

*Straights & Gays for Equality v. Osseo Area Schs.*,
    571 F.3d 908 (8th Cir. 2006)..................................................................................33

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..........................................................2, 3, 12, 15, 22, 23

*Susan B. Anthony List v. Driehaus*,
    814 F.3d 466 (6th Cir. 2016)..................................................................................42

*Texas v. Yellen*,
    105 F.4th 755 (5th Cir. 2024)................................................................................23

Appellate Case: 25-1300   Page: 10   Date Filed: 04/18/2025 Entry ID: 5507826

*Turtle Island Foods, SPC v. Thompson,*
    992 F.3d 694 (8th Cir. 2021)..........................................................2, 15–16

*United Food & Commercial Workers Int'l Union v. IBP, Inc.,*
    857 F.2d 422 (8th Cir. 1988)...............................................................23

*United States v. Alvarez,*
    567 U.S. 709 (2012) .........................................................................4, 40

*United States v. Iowa,*
    126 F.4th 1334 (8th Cir. 2025) ......................................................19, 21

*United States v. Stevens,*
    559 U.S. 460 (2010) ............................................................................23

*Upper Midwest Booksellers Ass'n v. Minneapolis,*
    780 F.2d 1389 (8th Cir. 1985)..............................................................16

*Virden v. City of Austin,*
    127 F.4th 960 (5th Cir. 2025)...............................................................28

*Weaver v. Bonner,*
    309 F.3d 1312 (11th Cir. 2002) ......................................................42–43

*Willson v. City of Bel-Nor,*
    924 F.3d 995 (8th Cir. 2019)..............................................25, 26, 44

*X Corp. v. Bonta,*
    116 F.4th 888 (9th Cir. 2024).............................................................35

Constitutional Provisions

U.S. CONST., AMEND. I .........................................................................*passim*

U.S. CONST., ART. III............................................................1, 3, 14–25

Appellate Case: 25-1300   Page: 11   Date Filed: 04/18/2025 Entry ID: 5507826

Rules and Statutes

28 U.S.C. § 1292(a)(1)...................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1343 ...........................................................................................1

Fed. R. App. P. 4(a)(1)(A) ............................................................................1

Minn. Stat. § 609.771................................................................................ *passim*

Other Authorities

11A Charles Allen Wright, et al.,
   6 FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995) ........................36

Appellate Case: 25-1300     Page: 12     Date Filed: 04/18/2025 Entry ID: 5507826

## Jurisdictional Statement

The district court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 because plaintiffs Christopher Kohls and Mary Franson (collectively "Kohls" or "Plaintiffs") bring constitutional claims against Minnesota Attorney General Keith Ellison and Douglas County Attorney Chad Larson (collectively "Minnesota" or "Defendants" or "the government") seeking an injunction against enforcement of a new Minnesota law, Minn. Stat. § 609.771. App. 55; R. Doc. 1, at 48.[1]

Kohls moved for a preliminary injunction (R. Doc. 10) and the district court issued an order denying that preliminary injunction on January 10, 2025. Add. 1; R. Doc. 47. On January 13, 2025, the district entered a separate Judgment memorializing that denial. Add. 24; R. Doc. 48. Kohls timely appealed the order and the judgment on February 7, 2025. App.144; R. Doc. 52; Fed. R. App. P. 4(a)(1)(A). This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) from the "interlocutory order[]…refusing [an] injunction[]."

The district court concluded that only Plaintiff Franson had standing to bring this action. Add. 9–15; R. Doc. 47 at 9–15. For the reasons discussed in Section I, *infra*, both plaintiffs have Article III standing to proceed.

---

[1] "App. xyz" refers to page xyz of the Joint Appendix. "Add. xyz" refers to page xyz of the Addendum. "R. Doc." refers to docket entries in Case No. 24-cv-03754 (D. Minn.) below.

Appellate Case: 25-1300    Page: 13    Date Filed: 04/18/2025 Entry ID: 5507826

## Statement of the Issues

1.      A plaintiff need not wait for "an actual arrest, prosecution, or other enforcement action" to stop an infringement of his First Amendment rights. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (*"SBA List"*). Rather, he may pursue a pre-enforcement challenge if there is a credible threat of future enforcement of a statute that arguably proscribes his constitutionally-protected activity. *Id.* at 161–65; *Parents Defending Education v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658 (8th Cir. 2023). This is a "forgiving standard." *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021).

Here, plaintiffs challenge a recently enacted Minnesota statute that criminalizes videos intended to influence the result of an election if they are "substantially" produced using technical means and "realistic" enough to confuse a reasonable person into believing the videos are authentic presentations of someone's real speech. Prominent commentators and public officials have asserted that Kohls' viral Kamala Harris video would deceive reasonable people into thinking Harris was really speaking. Nevertheless, the district court held that, because he labeled his videos "PARODY" on YouTube, Kohls' speech was not "arguably proscribed" and thus he lacked standing. Add. 10–12; R. Doc. 47 at 10–12. While the court reasoned that Kohls' social media audience (*e.g.* Franson) was arguably proscribed from resharing Kohls' videos by the statute (Add. 12–15; R. Doc. 47 at 12–15), it did not address whether disabling large swaths of Kohls' social-media following itself harms Kohls, or whether doing so causes Kohls a speech-chilling injury. Did the district court

2

legally err in determining that Plaintiff Kohls lacked standing to challenge enforcement of the statute?

U.S. CONST. ART. III

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014)

*Parents Def. Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658 (8th Cir. 2023)

*Pennell v. City of San Jose*, 485 U.S. 1 (1988)

2.     The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Iowa Right to Life Committee, Inc. v. Williams*, 187 F.3d 963, 970 (8th Cir. 1999) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). "[D]elay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023). Plaintiffs here asserted their First Amendment claims 14 months after the initial statute took effect and only 3 months after the amended statute and took effect—an amendment that *currently threatens* Plaintiff Franson with disqualification from public office. Did the district court wrongly conclude that Franson did not suffer irreparable harm justifying preliminary injunctive relief?

*Iowa Right to Life Committee, Inc v. Williams*, 187 F.3d 963 (8th Cir. 1999)

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019)

*Ng v Bd. of Regents*, 64 F.4th 992 (8th Cir. 2023)

*281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014)

3.     This Court has recognized that state laws prohibiting false speech about political issues or candidates are subject to the strictest judicial scrutiny. *281 Care Comm. v. Arneson*, 766 F.3d at 782–85. "The citizenry, not the government, should be the monitor of falseness in the political arena." *Id.* at 796. Here, as in *281 Care Committee*, Minnesota cannot show that Minn. Stat. § 609.771 is narrowly tailored to meet a compelling government interest. *See id.* at 785–96. Did the district court err in declining to enjoin the enforcement of Minn. Stat. § 609.771?

*281 Care Committee v. Arneson*, 766 F.3d 774 (8th Cir. 2014)

*Kohls v. Bonta*, 752 F. Supp. 3d 1187 (E.D. Cal. 2024)

*United States v. Alvarez*, 567 U.S. 709 (2012)

*Matal v. Tam*, 582 U.S. 218 (2017)

## Statement of the Case

### A.     Minnesota criminalizes political deepfakes and amends the prohibition to threaten disqualification from public office.

In 2023, Minnesota enacted Minn. Stat. § 609.771 as part of a broader omnibus bill focused mostly on AI-generated nonconsensual pornography or revenge porn, HF 1370. App. 28–39; R. Doc. 1 at 21–32. The new statute created criminal penalties for the dissemination of "deepfakes"—defined as realistic, technically-generated images, audio, or video "that a reasonable person would believe" depicted an individual engaging in speech or conduct they did not in fact engage in—when such dissemination occurred without consent and with

4

the intent to injure a political candidate or influence an election. Add. 5; Minn. Stat. § 609.771, subds. 1(c), 2(a) (2023).

The legislative history reveals that lawmakers understood this prohibition to reach a broad range of politically charged content. During debate on the bill, Representative Stephenson, the bill's chief House author, cited satirical images of former President Donald Trump being arrested—content widely recognized as parody. App. 31–32; R. Doc. 1 at 24–25. Stephenson opposed proposed amendments to exclude obviously satirical still images and argued that content like the Trump image remained deceptive. *Id*. ("even if it was meant as a joke, a lot of people would believe it"). When another legislator raised concerns that the bill might prohibit content akin to Saturday Night Live political sketches, State Senator Erin Maye Quade offered only that SNL fans could "rest easy" because the show uses physical impersonation rather than synthetic media—not because the proposed bill itself exempted parody or satire. App. 34; R. Doc. 1 at 27. In the final days of the 2023 session, the omnibus HF 1370 passed both houses by a collective vote of 197-to-1, including Plaintiff Franson's vote. Franson had voted for HF 1370 because, as the verified complaint explains, she strongly supported other new sections banning nonconsensual pornography, which she views as an important issue as a supporter of women. App. 39; R. Doc. 1 at 32. These "deepfake porn" sections sandwiched the newly-enacted § 609.771, which Franson opposed.

5

In 2023, only local and municipal elections occurred in Minnesota, except for special elections filling a vacancy in State House District 52B, approximately 140 miles from Franson's home. App. 140; R. Doc. 47 at 21; Add. 21 (citing Minn. Secretary of State website).

In 2024, the Minnesota Legislature returned to expand both the reach and consequences of section 609.771. The revised statute extended the window during which dissemination is prohibited to include the 90 days before a political party nominating convention, or after the start of absentee voting. Minn. Stat. § 609.771, subd. 2(a)(3) (2024); Add. 5–6. The amendments also increased the severity of enforcement: a candidate convicted under the statute forfeits their nomination or elected office and becomes ineligible for future appointment to that or any other office governed by constitutional qualifications. Minn. Stat. § 609.771, subds. 3(b)–(c) (2024). The *mens rea* requirement was also modified from "knows or reasonably should know" to "knows or acts with reckless disregard." *Id.*, subd. 2(a); Add. 6.

The amended bill went into effect on July 1, 2024, and because nominating conventions were less than 90 days away, the bill became potentially actionable for "deepfakes" disseminated on that date concerning candidates for upcoming primaries, including the presidential candidates.

Appellate Case: 25-1300     Page: 18     Date Filed: 04/18/2025 Entry ID: 5507826

**B.** **Plaintiff Kohls' satirical Kamala Harris campaign ad goes viral online; California's chief executive Governor Newsom and Minnesota Senator Klobuchar, among others, call it deceptive.**

Plaintiff Christopher Kohls is a conservative political commentator and video creator who produces and publishes parody content under the moniker "Mr. Reagan." He operates widely followed accounts on X (formerly Twitter) and YouTube, with over 120,000 followers and 380,000 subscribers, respectively. App. 13–14, 41; R. Doc. 1 at 5–6, 40. Kohls earns his living through the monetization of his political content on these platforms—revenue that depends on viewership and engagement with his videos, including the extent to which his content is shared by others. *Id.*

On July 26, 2024, Kohls published a satirical video styled as a campaign advertisement featuring an AI-generated voice impersonating then-Vice President Kamala Harris. App. 18–22; R. Doc. 1 at 11–15. The video employed aesthetic conventions of real political ads, interspersed with absurd or hyperbolic lines such as "Joe taught me rule number one: carefully hide your total incompetence." *Id.* Kohls video employs political satire, a form of political commentary known alike to both the ancient Greeks and the oft-pseudonymous partisans of the 1787 Constitutional debates. *Id.* By posting the video, Kohls poked fun at Kamala Harris' perceived weaknesses, with the hope that it would marginally diminish her likelihood of election. While the voice of "Harris" in the video says absurd things, it features a convincingly realistic likeness to her voice

Appellate Case: 25-1300    Page: 19    Date Filed: 04/18/2025 Entry ID: 5507826

and resembles the style of real campaign ads, and it intercuts clips of actual speeches by Harris. *Id.*

Elon Musk, the owner of X (formerly Twitter) reposted the video with the caption "This is amazing." App. 13; R. Doc. 1 at 6. It went viral, garnering over 100 million views. *Id.* Minnesota State Representative, and plaintiff, Mary Franson re-tweeted Musk's posting of the video, which did not include a description labelling it as parody.

Kohls' video quickly drew national attention, fact-checks, and condemnation. App. 44–46; R. Doc. 1 at 37–39. Senator Amy Klobuchar tweeted that the video breached X's manipulated media policy, which prohibits content that is "significantly and deceptively altered" and "likely to result in widespread confusion on public issues." *Id.* Rob Weissman, president of Public Citizen, commented that "most people looking at [the video] don't assume it's a joke…precisely because it feeds into preexisting themes" and concluded that the video would deceive most viewers. *Id.* Multiple fact-checking organizations issued alerts about the video. *Id.*

California Governor Gavin Newsom responded even more directly. He characterized the video as "a misleading deepfake in the middle of an election" and vowed to outlaw its dissemination. *Id*. True to his word, he signed into law two pieces of legislation aimed at making such content criminal. App. 13; R. Doc. 1 at 6. Newsom boasted that California had acted to ensure such videos were illegal. *Id.* Kohls separately challenged those laws. He won a preliminary

injunction against the law already in effect on October 2, 2024. *See Kohls v. Bonta*, 752 F. Supp. 3d 1187 (E.D. Cal. 2024). In the process of preparing that challenge, he discovered Minnesota's similar law, Minn. Stat. § 609.771. App. 14; R. Doc. 1 at 7.

### C.    Kohls and Minnesota state legislator Franson sue to enjoin enforcement of the statute.

On September 27, 2024, Kohls and Minnesota State Representative Mary Franson filed suit challenging the constitutionality of Minn. Stat. § 609.771. App. 8–58; R. Doc. 1.

In the verified complaint, Franson describes posting sometimes computer-generated political satire on social media, of which Kohls' July 26 Kamala Harris parody is the earliest example. App. 10–11; R. Doc. 1 at 3–4. Franson also explains her concern about politically-motivated prosecution through her experience with disturbing behavior by her recent opponent for Minnesota State House District 12B, who was arrested in 2024 for stealing political yard signs.  App. 25–27; R. Doc. 1 at 18–20. Franson reported that other Republicans have "tamped down" on social media because of concern about the law, and its newly-enacted penalty to disqualify offenders from political office. *Id.*

Kohls also pleaded, in verified fashion, that his speech and livelihood would be chilled not only directly, but also by deterring others from resharing

Appellate Case: 25-1300     Page: 21     Date Filed: 04/18/2025 Entry ID: 5507826

content. App. 47; R. Doc. 1 at 40. On October 11, 2024, Plaintiffs moved for a preliminary injunction. R. Doc. 11.

In opposing the motion for preliminary injunction, Defendant Ellison relied heavily on an expert declaration from Professor Jeff Hancock, which aimed to establish purportedly unique risks posed by political deepfakes and the insufficiency of counterspeech to uphold the state's broadly claimed interest in regulating speech-qua-speech in the name of "electoral integrity" and "combatting this type of false speech" in the political arena. App. 185; Tr. 40; *see also* App. 114–19; R. Doc. 46 at 7–12. Ironically, Hancock's declaration—offered to justify a law regulating AI-generated political content—was itself partially drafted using ChatGPT and included multiple fabricated citations to non-existent academic studies which "shatter[ed] his credibility with [the district] court." App. 117; R. Doc. 46 at 10; *see also* App. 5–7; R. Doc. 21 (Hancock Decl.); R. Doc. 38 at 2. Plaintiffs moved to strike the declaration, and Hancock admitted to generating portions of the report with a large language model, inserting placeholder citations, and then failing to verify their authenticity before submission. *See* App. 109–110; R. Doc. 46 at 2–3. Plaintiffs argued that counterspeech—such as their identification of fabrications in Professor Hancock's declaration—is the best remedy for "deep fakes." *E.g.*, App. 154; Tr. 9.

At oral argument, counsel for Plaintiffs emphasized that the statute posed a live threat to their expressive rights during the 2024 election cycle and noted that its pre-election enforcement window had only just begun on July 1, 2024.

App. 201–02. The previous year included no national elections, and so Plaintiffs' counsel explained that Franson's earliest known conduct arguably covered by the statute was in fact her resharing of Kohls' Harris video. *Id.* Plaintiffs further clarified that Franson could not have brought suit earlier, as she had no history of disseminating realistic AI-generated media in previous election cycles. App. 201–02; Tr. 56–57. Plaintiffs argued that the district court could not presume Franson supported the challenged speech prohibition simply because she voted for a broader "package deal" bill. App. 206–07, Tr. 61–62.

At the hearing, the district court questioned defense counsel about whether any precedent supported denying a preliminary injunction where a plaintiff filed suit within a few months of suffering a First Amendment injury. Defense counsel was unable to identify such a case. App. 188, Tr. 43.

### D. The district court refuses to enjoin enforcement, holding that Kohls lacks standing to challenge the law, and that Franson does not suffer irreparable harm.

On January 10, 2025, the district court denied Plaintiffs' motion for preliminary injunction without reaching the likelihood of success. [2] It found that Kohls lacked standing because, in the court's view, the statute did not "arguably" proscribe his speech because some of his videos were posted with the text

---

[2] The district court also granted Plaintiffs' Motion to Exclude Prof. Hancock's declaration for purposes of deciding the preliminary injunction motion. App. 108; R. Doc. 46 at 1; *see also* App. 121; R. Doc. 47 at 2 n.1; Add. 2 n.1. Because Ellison's expert's reports concerned likelihood of success, they would not have been greatly relevant to the decision.

11

description "parody." App. 130–31; R. Doc. 47 at 11–12; Add. 11–12. The district court did not cite any record evidence that *all* of Kohls' videos were labelled as parody.

The district court found that Franson could not demonstrate requisite irreparable harm because of the long delay from Franson's awareness of the original bill's enactment on May 26, 2023. App. 137–38; R. Doc. 47 at 18–19; Add. 18–19. The court did not find that enforcement was unlikely, nor did it suggest that the statute was immune from constitutional challenge; to the contrary it found Franson's claims would be eventually reached. App. 142; R. Doc. 47 at 23; Add. 23.

## Summary of Argument

Minnesota Statutes section 609.771 imposes sweeping criminal and civil penalties on the dissemination of realistic AI-generated media about politicians. Conviction under the statute not only causes potential fines or jail time, but for Minnesota politicians like plaintiff Rep. Mary Franson, disqualification from state office. Plaintiffs Franson and Christopher Kohls, an online content creator, challenge the statute as an unconstitutional restraint on core political speech.

First, Plaintiff Kohls has standing because the statute "arguably proscribes" both his speech and the speech of others who share his videos. Under settled First Amendment precedents, including *SBA List*, plaintiffs need not prove that their speech is actually prohibited—only that it is "arguably proscribed." 573 U.S. at 162. Kohls' speech qualifies. His AI-generated videos

Appellate Case: 25-1300     Page: 24     Date Filed: 04/18/2025 Entry ID: 5507826

imitate political candidates and have been widely interpreted by reasonable viewers—including elected officials and media outlets—as realistic. The district court erred by reading a parody exemption into a statute that lacks one, and by crediting supposed disclaimers not supported by the record. It further erred by ignoring Kohls' independently sufficient injury from audiences deterred from resharing his content due to fear of prosecution. Killing his retweets hurts Kohls' livelihood. It is direct and immediate harm.

Second, the district court wrongly denied preliminary injunctive relief on the ground that Plaintiff Franson allegedly delayed in bringing suit. Franson's injury only accrued in July 2024, when the statute's new timing and penalty provisions took effect, and when she first reposted AI-generated political content that arguably falls within the law's scope. Regardless, delay is not determinative in First Amendment cases with ongoing speech restrictions. The district court also erred in attributing Franson's current injury to her vote on an omnibus bill, contrary to controlling authority and common sense.

Third, the statute flagrantly violates the First Amendment. It is a content- and viewpoint-based restriction on core political expression that fails strict scrutiny. As in *281 Care Committee v. Arneson*, Minnesota lacks evidence of concrete harm caused by political "deepfakes," and its solution is both overinclusive and underinclusive. 766 F.3d 774, 785 (8th Cir. 2014). The law criminalizes parody, satire, and core political criticism—speech at the heart of the First Amendment. Its vague and subjective terms (e.g., whether a video is

13

"realistic" to a "reasonable person") invite discriminatory enforcement, particularly given its private enforcement mechanism and political penalty of disqualification from office. The statute discriminates on the basis of viewpoint by prohibiting content intended to "injure" a candidate while allowing laudatory depictions, and by exempting candidate-approved speech. These defects render the law not only unconstitutional but dangerous to the democratic process.

This Court should reverse and remand with instructions to preliminarily enjoin enforcement of Minnesota Statutes section 609.771.

## Argument

### I. Kohls has standing because Minn. Stat § 609.771 "arguably proscribes" both his speech and that of others resharing it—injuring his expression and reach.

**Standard of Review:**

Whether a plaintiff possesses Article III standing is a question of law reviewed de novo. *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021); *Heartland Acad. Cmty. Church v. Waddle*, 335 F.3d 684, 689 (8th Cir. 2003). When standing is challenged on the face of the complaint, this Court will "accept[] the material allegations in the…complaint as true, and draw[] all permissible inferences in [the plaintiff's] favor." *Enter. Fin. Grp., Inc. v. Podhorn*, 930 F.3d 946, 949 (8th Cir. 2019); *accord Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988); *Heartland Acad. Cmty. Church*, 335 F.3d at 689 (preliminary injunction stage).

~~~

Kohls has standing both because Minnesota's law arguably proscribes his own online speech *and* independently because it arguably proscribes the speech of third parties sharing his videos. The proscription deters retweets of Kohls' videos, which hurts his reach and monetization. The district court found that Franson's reposting of the video (embedded in a tweet by Elon Musk) *was* arguably proscribed, but failed to credit Kohls' independently sufficient injury from third-party chill.

## A.   The statute at least "arguably" criminalizes Kohls' speech.

A three-pronged test determines whether plaintiffs have standing to bring a pre-enforcement challenge to a law or policy that they allege infringes their First Amendment right to speak freely. *See, e.g., Parents Defending Education v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 666–67 (8th Cir. 2023) (following *SBA List*, 573 U.S. 149 (2014)). Do the plaintiffs (1) intend to engage in a course of conduct arguably affected with a constitutional interest that is (2) arguably proscribed by a statute (3) presenting a credible threat of enforcement? *Id.* The district court below held that Plaintiff Kohls (but not Plaintiff Franson) failed to satisfy the second condition of showing that his speech was "arguably proscribed" by § 609.771. App. 130–31; R. Doc. 47 at 11–12; Add. 11–12.

"Arguably proscribed" is the test of *SBA List*; not "certainly proscribed," "definitely proscribed," or even just "proscribed." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718–19 (8th Cir. 2021); *Turtle Island Foods, SPC v.*

15

*Thompson*, 992 F.3d 694, 699-700 (8th Cir. 2021). When a challenged statute threatens constitutionally protected speech, this Circuit consistently applies a more "'lenient standing requirement' to pre-enforcement challenges, such as this one." *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077–1078 (8th Cir. 2024) (quoting *Turtle Island Foods*, 992 F.3d at 700). *SBA List* reaffirmed this Circuit's long-standing approach*. Compare Dakotans For Health v. Noem*, 52 F.4th 381, 386 (8th Cir. 2022) ("lenient and forgiving") *with Upper Midwest Booksellers Ass'n v. Minneapolis*, 780 F.2d 1389, 1391 n.5 (8th Cir. 1985) ("relaxed"). Indeed, imagine if the government could demand that First Amendment plaintiffs prove that a law proscribes their speech as a condition of bringing suit. A law's vagueness would become a tool to evade judicial review.

Exactly the opposite: in the First Amendment context, the void-for-vagueness doctrine carries its most force, disallowing even the "real possibility" of "discriminatory enforcement" or the mere "opportunity for abuse." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051 (1991); *Minn. Voters All. v. Mansky,* 585 U.S. 1, 21 (2018) (internal quotation omitted). Here, the vagueness of Minnesota's prohibition—whether a video is believably "realistic" or not to the reasonable person—means that Plaintiffs' expressive activity is at least "arguably proscribed." *See Parents Defending Education*, 83 F.4th at 667.

The district court split the baby. First, it found that while Plaintiff Franson's resharing of Kohls' political spoofs is arguably proscribed, Kohls' publication of his own videos is not. App. 130; R. Doc. 47 at 11; Add. 11. The

court reasoned that section 609.771 "categorically excludes…parody from its sweep," and because Kohls (sometimes) labeled his videos as "PARODY," his speech falls outside the ambit of the law. App. 129–30; R. Doc. 47 at 10–11; Add. 10–11. Second, the court erred by disbelieving the complaint's allegations. At both steps the court committed reversible error.

### 1. The district court improperly narrowed the statute by inventing a parody exemption.

The court concluded that because Kohls (sometimes) labeled his video "PARODY" and included a disclaimer, his speech was categorically outside the statute's scope. But the statute contains no such parody exception.

The district court "erroneously assessed" not whether the statute "*arguably* proscribe[s]" parody but whether it "*in fact* proscribe[s]" it. *Cerame v. Slack*, 123 F.4th 72, 80 (2d Cir. 2024). At Defendants' behest, the court read a parody exception into a statute that does not contain one. Add. 10; R. Doc. 47 at 10. Far from an inarguable interpretation of statutory text, this interpretation was likely incorrect. When debating the law, the sponsor of the legislation cited satirical images of Donald Trump getting arrested as an essential object of the prohibition and defeated an attempted amendment to safeguard the "right[] to engage in core political speech." App. 30–32; R. Doc. 1 at 23–25. Similarly, at another point in the debate, the legislature specifically considered, and ultimately rejected, the inclusion of a satire and parody exception. App. 36, 38; R. Doc. 1 at 29, 31.

"Few principles of statutory construction are more compelling than the proposition that [a legislature] does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 442–43 (1987) (internal quotation marks omitted); *see also Doe v. Chao*, 540 U.S. 614, 622 (2004) (presumed damages not available where "drafting history show[s] that Congress cut the very language in the bill that would have authorized any presumed damages"). "The statute says what it says—or perhaps better put here, does not say what it does not say." *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 426 (2018). And "[a]textual judicial supplementation is particularly inappropriate when, as here [the legislature] has shown that it knows how to adopt the omitted language or provision." *Rotkiske v. Klemm*, 589 U. S. 8, 14 (2019).

Thus, as a matter of statutory interpretation, the court's conclusion was not only *inarguably* correct, it was likely incorrect. The district court recognized this when it correctly concluded that Franson's resharing of Kohls' parodic content sufficed for standing purposes. Add. 13; R. Doc. 47 at 13. The court's standing determination thus reduces to its conclusion that the Kohls' parody label and disclaimer make all the difference.

### 2. The court erred by departing from the complaint.

The verified complaint did not say that every publication includes a disclaimer—only that one specific video did. The court did not "accept as true all material allegations of the complaint and…construe the complaint in favor of

Appellate Case: 25-1300     Page: 30     Date Filed: 04/18/2025 Entry ID: 5507826

the complaining party" as it must "when standing is challenged on the basis of the pleadings." *Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) (internal quotation omitted); *accord Enter. Fin. Grp.*, 930 F.3d at 949; *Heartland Acad. Cmty. Church*, 335 F.3d at 689 (preliminary injunction stage). "At the preliminary injunction stage, this court assumes the plaintiff's allegations are true and views them most favorably to the plaintiff." *United States v. Iowa*, 126 F.4th 1334, 1342 (8th Cir. 2025). It is "inappropriate for the district court to surmise [facts contrary to those pled in the complaint]" *Defenders of Wildlife, Friends of Animals & Their Environment v. Hodel*, 851 F.2d 1035, 1041 (8th Cir. 1988).

Specifically, the court here construed the verified complaint's averments against Kohls' standing in multiple respects.

First, although Kohls averred (App. 13; R. Doc. 1 at 6) that he labeled his July 26 Kamala Harris video on YouTube as parody with an acknowledgment about digital generation, he never averred that he does not also publish or republish his videos without such disclaimers.[3] Similarly, the evidence that the Court cites (App. 130; R. Doc. 47 at 11; Add. 11), and the only evidence submitted by Defendants (App. 61–63; R. Doc. 20 at 3–5) relates exclusively to Kohls' YouTube publications, even though Kohls avers that he publishes on both X and YouTube. App. 16, 43–44; R. Doc. 1 at 9, 36–37. The district court assumed Kohls'

---

[3] He does in fact re-post his content without disclaimers, and has done so on X (formerly Twitter) several times using the same video that the court found to be arguably proscribed by Franson. *See*, *e.g.*, MrReaganUSA, X, at https://x.com/MrReaganUSA/status/1818244814468767750 (Jul. 30, 2024).

Appellate Case: 25-1300     Page: 31     Date Filed: 04/18/2025 Entry ID: 5507826

video posts always include disclaimers—but the record neither proves this nor justifies rejecting the verified complaint's allegation.

To be very clear, the reason that Kohls did not supplement the record with a declaration showing that (1) Kohls has previously and intended to continue to republish his content without a "Parody" label (for example, reposting the Musk disclaimer-less embedding of his initial video) and (2) that many audience members watching his videos on YouTube will not be shown the disclaimer (App. 164–65; Tr. 19–20) is that Defendants never argued that a label or a disclaimer made a difference to the application of the statute. In fact, they argued precisely the opposite—that a labeling/disclaimer regime would be insufficient to address the concerns of the state legislature. Specifically, they argued that unlike section 609.771's outright ban, an alternative deepfake labeling regime could still "undermine the credibility of authentic information." R. Doc. 19 at 8 (citing Expert Declaration of Professor Jeff Hancock ¶¶26-27, R. Doc. 23 at 10). Despite the Defendants' position, the court injected the idea of labeling/disclaimer as a *de facto* statutory safe harbor.

<u>Second</u>, when determining that Franson's speech was arguably proscribed, it relied on the fact that "reasonable people—like United States Senator Amy Klobuchar, California Governor Gavin Newson, and the leader of Public Citizen—considered Musk's dissemination of the July 26 Video…to be realistic." Add. 13–14; R. Doc. 47 at 13–14. But Plaintiffs' complaint alleged that Newsom and others were talking about Kohls' video itself, not Musk's

dissemination of that video. Newsom called Kohls' speech "a misleading deepfake in the middle of an election." App. 44; R. Doc. 1 at 37. Newsom, "in reply to Kohls's video" promised to "make sure" Kohls' video is illegal and then bragged about signing bills that purportedly do so. App. 13, 22–23; R. Doc. 1 at 6, 15–16. The co-president of Public Citizen opined that "'most people' would be deceived by the video" itself, not by the resharing of it. App. 45; R. Doc. 1 at 38. And news outlets issued facts checks about the video itself. App. 44; R. Doc. 1 at 37.

The district court sliced the bologna too thin by recasting the allegations of the complaint as only regarding "Musk's dissemination of the July 26 Video." Add. 13–14; R. Doc. 47 at 13–14. At this stage of the litigation, courts must "presume[] that general allegations embrace those specific facts that are necessary to support the claim." *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811–12 (8th Cir. 2022) (quoting *In re SuperValu, Inc.,* 870 F.3d 763 (8th Cir. 2017)); *see also United States v. Iowa*, 126 F.4th at 1342. But the district court did exactly the opposite here, presuming that Plaintiffs' allegations encompassed only individuals commenting on Musk's speech, not on Kohls' speech itself.

Once one recognizes that Kohls' speech, like Franson's, is arguably proscribed, he also has standing because he confronts the same credible threat of enforcement. App. 133; R. Doc. 47 at 14; Add. 14. "When dealing with pre-enforcement challenges to recently enacted...statutes that facially restrict

Appellate Case: 25-1300     Page: 33     Date Filed: 04/18/2025 Entry ID: 5507826

expressive activity by the class to which the plaintiff belongs, courts will assume a credible threat of prosecution in the absence of compelling contrary evidence." *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 486 (8th Cir. 2006) (internal quotation omitted). When there is "no established practice of nonenforcement that could assuage concerns," the "plain text" of the law supplies the necessary credible threat of enforcement. *Parents Defending Educ.*, 83 F.4th at 667; *see also Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 778 (8th Cir. 2019).

Confirming the credible threat, neither defendant has disavowed enforcement. *See SBA List,* 573 U.S. at 165; *Krantz v. City of Fort Smith*, 160 F.3d 1214, 1217 (8th Cir. 1998) ("We assume the City of Dyer would prosecute violators of its ordinance, given the opportunity, because it has vigorously defended the ordinance and has never suggested that it would refrain from enforcement"). While one defendant (Larson) avers that he is not *currently* investigating any violation, the court correctly determined that a defendant's "present intention" is "neither an official policy or a long history of disuse." App. 133; R. Doc. 14 n.2; Add. 14 n.2 (quoting *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011) ("*281 Care Committee I*")); *accord Bryant v. Woodall,* 1 F.4th 280, 288 (4th Cir. 2021) (lack of "present[]" intention to enforce "do[es] not alter the analysis.")

The district court redrafted the statute, narrowing it to close the courthouse doors on Kohls. That would be wrong on the merits because courts

may not "write nonbinding limits into a silent state statute"[4] or "rewrite a law to conform it to constitutional requirements." *Iancu v. Brunetti*, 588 U.S. 388, 397 (2019) (quoting *United States v. Stevens*, 559 U.S. 460, 481 (2010)); *accord United Food & Commercial Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 435 (8th Cir. 1988). They are "without power to adopt a narrowing construction of a state statute unless such a construction is reasonable and readily apparent." *Boos v. Barry*, 485 U.S. 312, 330 (1988).[5] "[T]he First Amendment protects against the Government; it does not leave us at the mercy of *noblesse oblige*." *Stevens*, 559 U.S. at 480.

But it is doubly wrong to apply a narrowing construction when determining whether a plaintiff has standing in the first place. Avoiding a constitutional doubt through a limiting construction goes to merits, which courts should "not reach when examining standing." *Texas v. Yellen*, 105 F.4th 755, 766 (5th Cir. 2024). To do otherwise is, again, to turn the "arguably proscribed" test of *SBA List* into an "actually proscribed" one.

### B. The statute at least "arguably" criminalizes the resharing of Kohls' speech on social media.

The district court ignored Kohls' pleadings in another crucial respect. He averred a separate theory of injury: "[t]he chilling effect and enforcement of the

---

[4] *Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 770 (1988).

[5] Minnesota state courts apply the same "readily susceptible" standard. *State v. Hensel*, 901 N.W.2d 166, 176 (Minn. 2017).

Appellate Case: 25-1300     Page: 35     Date Filed: 04/18/2025 Entry ID: 5507826

law will dissuade others from sharing his content and preclude him from earning a living, which he currently does via monetization of his content on YouTube and X." App. 47; R. Doc. 1 at 40. Therefore, when it found that others like Franson could be dissuaded (and so had standing), it should have concluded that Kohls himself incurred injury. Squelching Franson's retweets immediately and directly harms Kohls. Yet the court disregarded that theory of harm entirely. *Contra Carman v. Yellen*, 112 F.4th 386, 410–411 (6th Cir. 2024). Rather than "ask[ing] only whether such injuries are sufficient to meet the injury-in-fact requirement and accord with the rest of the standing analysis," it "[in]appropriate[ly]" "disregard[ed] [Kohls'] claimed injuries." *Id*.

And that answer is yes: it is well established that a law may visit concrete and particularized injury on a plaintiff through the law's "predictable effect…on the decisions of third parties." *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019); *Animal Legal Def. Fund*, 8 F.4th at 721; *Block v. Meese*, 793 F.2d 1303, 1309 (D.C. Cir. 1986) (Scalia, J.) ("It is impossible to maintain, of course, that there is no standing to sue regarding action of a defendant which harms the plaintiff only through the reaction of third parties."). This is exactly what Kohls pled in the above-quoted paragraph 78 of his verified complaint.

"The political activities at issue here are at the core of the First Amendment." *Int'l Ass'n of Firefighters, Local 2665 v. City of Ferguson*, 283 F.3d 969, 973 (8th Cir. 2002). Even assuming arguendo that Minnesota's statute does

not proscribe his initial posts,[6] it harms him by threatening his audience members for reposting his content, and thus limiting the reach of his videos. *Cf. id.* at 973–75 (speaker harmed when government visited harm against her state employee husband). In addition to threatening Kohls' own postings, Minnesota has deterred Kohls' audience from resharing Kohls' content. That's textbook Article III harm, not only to his voice, but to his pocketbook. Proscribing retweets of Kohls' videos costs him money. This is a second independent reason to reverse the district court's determination that Kohls lacks standing.

## II. Franson did not unduly delay in bringing suit; both she and Kohls suffer irreparable harm from infringement of their speech rights.

**Standard of Review:** Denial of a preliminary injunction is reviewed for abuse of discretion. *Willson v. City of Bel-Nor*, 924 F.3d 995, 999 (8th Cir. 2019). Abuse of discretion occurs when a court omits consideration of a significant factor, affords significant weight to an irrelevant or improper factor, or commits a clear error in balancing proper factors. *Baker Elec. Coop. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994).

When a plaintiff "has shown a likely violation of his or her First Amendment rights, the other requirements for obtaining a preliminary injunction are generally deemed to have been satisfied." *Willson*, 924 F.3d at 999 (internal quotation omitted) "This Court reviews First Amendment claims de

---

[6] *Contra* section I.A, *supra*.

Appellate Case: 25-1300     Page: 37     Date Filed: 04/18/2025 Entry ID: 5507826

novo and makes a fresh examination of crucial facts." *Id.* (simplified). So when a lower court gets the First Amendment merits analysis wrong and denies a motion for a preliminary injunction despite a plaintiff being "likely to succeed on the merits of his First Amendment claim," this Court will reverse the denial of the injunction. *Id.* (citing *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098, 1101-02 (8th Cir. 2013)).

~~~

A plaintiff's purported delay in filing suit does not preclude a finding of irreparable harm—particularly in First Amendment cases. "[D]elay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023) (quoting *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015)). "The mere length of the delay is not determinative of whether the delay was reasonable," and "the determination of the reasonableness of a delay is context dependent." *Id*. Here, the district court erroneously relied on Franson's supposed delay to discount irreparable harm. But the record establishes that: (1) Franson had no actionable injury until July 2024, and (2) even if she had delayed, it would not undercut the irreparable nature of her First Amendment injuries.

**A. Nothing in the record suggests Franson or Kohls engaged in covered speech in 2023, and they could not have known their rights were infringed until 2024.**

There is no basis in the record for the district court's assumption that Franson had an earlier injury that she failed to timely pursue. The statute's restrictions are temporally limited: as originally passed, it only operated 90 days before an election. Minn. Stat. § 609.771, subd. 2 (2023). That year, there were no national or state legislative elections which Plaintiffs would have plausibly posted synthetic media about. There are no record facts even suggesting that Plaintiffs were sharing realistic AI-generated memes at the time that the district court contended that they should have sued. But even if Plaintiffs had created or shared AI-generated content in 2023, it almost certainly would not have been intended to injure any "candidate" appearing on ballots in Minnesota, as the statute requires. *See* App. 201–02; Tr. 56–57 (explaining this to district court).

The 2024 amendment to Minn. Stat. § 609.771, passed over Franson's opposition, expanded the temporal reach of the statute to 90 days before an election or political *primary*. This amendment became effective July 1, 2024, which is the earliest date Franson could have plausibly violated the speech code. The verified complaint specifies that Franson shared Kohls's July 26, 2024 video on July 27, 2024 (along with other AI-generated content that postdates the law's effective expansion in 2024). App. 11–12; R. Doc. 1 at 4–5. This was the earliest point when her conduct arguably fell within the statute's scope. That is when her standing ripened. *Cf. Corner Post, Inc. v. Bd. of Governors of the Fed. Reserve*

*Sys.*, 603 U.S. 799, 800 (2024) (rejecting claim accrual before a plaintiff is injured); *Virden v. City of Austin*, 127 F.4th 960, 966 (5th Cir. 2025) (plaintiff's rights do not accrue until she engages in regulated conduct). Challenges to laws in place for years or even decades cannot be untimely before they are ripe. *See 281 Care Committee I*, 638 F.3d 621, 628 (8th Cir. 2011) (decades-old statute amended in 2004, and challenged in 2008); *Fantasysrus 2, LLC v. City of E. Grand Forks*, 881 F. Supp. 2d 1024, 1027 & n.2 (D. Minn. 2012) (preliminary injunction for 2003 zoning statute challenged in 2012).

Franson's July 27 retweet provided standing to challenge the bill. Both plaintiffs filed suit on September 27, so the "delay" is only two months or at most three counting to the motion for preliminary injunction.

Citing no precedent, the district court suggested that even a three-month delay would have negated irreparable harm. It remarked in a footnote that "Kohls's delay in seeking injunctive relief in this case is particularly striking because he sought injunctive relief against a similar California statute on the day that the California statute was signed into law by the Governor." Add. 18 n.3. This is *non sequitur*—that a plaintiff acted more quickly against a different law in a different state does not imply that no other constitutional challenges warrant preliminary injunction. In any event, the verified complaint explains why: Kohls was unaware of any such speech-infringing laws until July 28, 2024, when the Governor of California called out *his* video as one that their statute would make "illegal" in a "matter of weeks." App. 13; R. Doc. 1 at 6. "Then further

28

research led to his discovery" of Minnesota's parallel law. App. 14; R. Doc. 1 at 7. No court has held that a three-month delay categorically forfeits irreparable harm by plaintiffs as the district court suggests. This contradicted binding precedent. *Ng v. Bd. of Regents*, 64 F.4th at 998.

And it stands to reason why the district court is an outlier here. The court's theory would force putative plaintiffs to bring speculative lawsuits the moment an unconstitutional law is passed just because they might someday do something that violates it—even with no credible threat of enforcement against them at that time. It encourages unripe, premature lawsuits and insulates unconstitutional laws from challenges like this one which are brought when a credible threat of enforcement arises.

The district court found the argument that Franson could not have violated the statute in 2023 "forfeited because it was raised for the first time at oral argument," and incorrect because "there were state and local elections in Minnesota." App. 140; R. Doc. 47; Add. 21. But the court erred on both points. First, the complaint expressly alleges that Franson's conduct at issue—including her resharing of Kohls' video—occurred in July 2024, after the statute's amendments went into effect; no earlier violation exists in the record. App. 33; R. Doc. 1 at 17; *accord* App. 59-60; R. Doc. 20. Second, while some municipal elections may have occurred in 2023, this does not negate the argument that Plaintiffs "didn't…make [AI] videos about school boards or anything like that," and so "prior to actually having conduct that would reasonably fall within the

statute, she probably wouldn't have had standing at all." App. 201–02; Tr. 56–57. The district court's implicit finding that Franson's constitutional injury ripened in 2023 is unsupported speculation, contradicted by the pleadings, and incompatible with the principle that a limitations period—or Article III standing—does not begin until the plaintiff actually suffers a cognizable injury. *Corner Post*, 603 U.S. at 800; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (jurisdiction cannot be created by later-arising facts "that did not exist" when the complaint was filed).

The district court instead cited a purported *lack* of evidence in favor of finding no irreparable harm. Improperly inverting the presumption of irreparable harm in First Amendment cases,[7] it cited Franson's lack of "temporal qualification" to her verified pleading about consuming and posting AI-generated content as somehow evidence that in May of 2023 she disseminated AI-generated "deepfakes." App. 138; R. Doc. 47 at 19; Add. 19. But the court's citation for Franson "sharing fake memes on social media as early as 2021" concerned her repost of an imaginary "Capital Invasion" Lego set, which depicted the January 6, 2021 riot at the U.S. Capitol as Lego block figurines—not "realistic" depictions of individuals. *Compare* App. 138; R. Doc. 47 at 19; Add. 19 *with* App. 27–28; R. Doc. 1 at 20–21.

The district court also ignores the evolution of generative AI. Such content has become increasingly common in political discourse as the tools have gotten

---

7 *See* Section II.B, *infra*.

better and more widely-available. Minnesota's expert observed that the tools are more rapid and inexpensive than "even just a couple years ago." App. 96; R. Doc. 24 at 7. The widespread sharing of AI-generated political memes and Minnesota's 2024 amendment making enforcement more plausible sharpened the threat and focused the injury to Franson (as a legislator who now risks disqualification from office). The reaction of Gov. Gavin Newsom, Sen. Amy Klobuchar, and others to Kohls' realistic July 26, 2024 video demonstrates the advances AI and its use for political commentary. In May of 2023, Franson would not have known how commonplace AI-generated political memes would be, nor that she would regularly re-post such content.

The district court also adopted Ellison's suggestion that Franson lacked irreparable harm because she voted in favor of the 2023 omnibus package that sandwiched the political speech law between two provisions Franson supported addressing AI-generated and nonconsensual pornography. "Because the harm Representative Franson asserts was partly of her own making, Representative Franson's claim of irreparable harm further falls flat." App. 140; R. Doc. 47 at 21; Add. 21. But that bill passed with only a single "nay" vote in the waning hours of the 2023 session, because the provisions banning deepfake revenge porn were extremely popular. "As an ardent supporter of women, Franson didn't feel that she could oppose the entire bill, including the sections addressing pornographic deepfakes. Also, the use of AI-generated speech and its application to political

31

speech was still relatively unknown when HF 1370 passed in May 2023." App. 39; R. Doc. 1 at 32.

The political reality is that many bills are package deals, and late in a legislative session it becomes infeasible to amend them. App. 206–07; Tr. 61–62. Legislators like Franson can vote up or down. When given an up-or-down choice to ban deepfake pornography, the legislature chose almost unanimously to do so. But when the expansion to the political speech prohibitions and penalties were introduced in 2024, Franson (and many others) opposed them. App. 41; R. Doc. 1 at 34. The court's presumption of political alignment from one legislative vote on an omnibus bill blinkers political reality, Franson's actual record opposing section 609.771's political speech code, and her right to challenge a law that infringes her constitutional rights. None of the cases the district court cited (App. 140; R. Doc. 47 at 21; Add. 21) equated a legislator's vote for an omnibus bill with self-inflicted harm. Franson's vote came at the end of session on a must-pass package banning AI-generated revenge porn. No doctrine of constitutional waiver allows courts to infer consent from a floor vote. And no precedent holds that a legislator forfeits their speech rights by voting for the bill that infringes them. At minimum, it strains the definition of "self-inflicted" when discussing a bill that passed that passed by a collective vote of 197-to-1.

## B. The constitutional nature of the harm—and the statute's timing—make any delay legally irrelevant.

Even if Plaintiffs had delayed, it would not negate irreparable harm because their speech rights are irreparably harmed. This Court recognizes a presumption of irreparable harm when plaintiffs show a likelihood of success on a First Amendment claim. "If [plaintiff] can establish a sufficient likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds* 697 F.3d 678 (8th Cir. 2012); *see also Straights & Gays for Equality v. Osseo Area Schs.*, 471 F.3d 908, 913 (8th Cir. 2006) ("presumption" of irreparable harm for preliminary injunctions in speech cases where likelihood of success is satisfied); *Kirkeby v. Furness*, 52 F.3d 772, 775 (8th Cir. 1995).

The district court did not consider the presumption of irreparable harm, nor the myriad precedents permitting injunctive relief after much longer delays. Although Ellison's counsel declared (App. 186; Tr. 43) that he was unaware of any cases finding irreparable harm after a "sixteen month" delay, the parties thoroughly briefed the district court on *281 Care Comm. v. Arneson,* which involved a strikingly similar Minnesota statute criminalizing political speech concerning "a ballot question…that is false, and that the person knows is false or communicates to others with reckless disregard." 766 F.3d 774, 778 (8th Cir. 2014) ("*Care Committee*").

33

That challenge, filed in 2008, concerned a speech-infringing law amended in 2004 that was on the books in similar forms decades before that. *281 Care Committee v. Arneson*, 2010 WL 610935, 2010 U.S. Dist. LEXIS 14712, at *3–*4 (D. Minn. Feb. 19, 2010); *accord 281 Care Committee I*, 638 F.3d at 628. When this Court determined that those plaintiffs' claims were viable, it didn't suggest that plaintiffs' First Amendment injury was vitiated by their delay in bringing suit. To the contrary, it described the timeline of plaintiffs' litigation as a challenge to a "recent enactment." 766 F.3d at 779. On remand, the district court entered an order permanently enjoining the challenged law, without any suggestion that the plaintiffs' First Amendment injury was not irreparable because of the delay in bringing suit. *281 Care Committee v. Arneson*, No. 08-cv-05215, Dkt. 144 (D. Minn. Dec. 5, 2014).

Similarly, in *Gaertner*, this Court considered a plaintiff's First Amendment lawsuit seeking declaratory and injunctive relief against enforcement of a statute passed sixteen years before the complaint, and last amended seven years before the complaint. 439 F.3d at 486. It characterized that posture as a "relatively short time that has passed since enactment" that did not indicate a policy of non-enforcement. *Id.* In political speech cases, there is nothing unusual about a plaintiff suing more than a year after a statute's effective date.

Courts in this Circuit and others uniformly and correctly do not treat delay as determinative against First Amendment preliminary injunctions. *See Iowa Right to Life Comm. v. Williams*, 187 F.3d 963, 965–66 (8th Cir. 1999) (affirming

Appellate Case: 25-1300     Page: 46     Date Filed: 04/18/2025 Entry ID: 5507826

preliminary injunction for suit filed two years after law enacted); *Emineth v. Jaeger*, 901 F. Supp. 2d 1138 (D.N.D. 2012) (preliminary injunction for speech-regulating statute on the books since 1981); *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (remanding with instructions to enter preliminary injunction even though suit was filed a year after law's passage); *Doe v. S. Iron R-1 Sch. Dist.*, 498 F.3d 878, 881 (8th Cir. 2007).

To be sure, "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits" (App. 135–36; R. Doc. 47 at 16–17; Add. 16–17), but the district court failed to quote or apply the rest of the cited proposition: "Rather, a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 894 (8th Cir. 2024). The district court considered none of these things, misapplying *Hotchkiss* as if it sets a time limit for delay.

In fact, *Hotchkiss* focused on the lack of harm. Hotchkiss challenged a school district's decision to exclude him from board meetings after acrimonious public comments critical of board members. *Id*. at 892. But Hotchkiss had transferred his child to another school district, had not attempted to attend another meeting for sixteen months, and only provided an implausible "last-minute Declaration" that he hoped to do so. *Id*. at 894. The "unsupported and speculative" declaration failed to evince irreparable harm, not his delay in filing

suit *per se*. *Id*. In contrast, the plaintiffs post prolifically to social media concerning political matters, sometimes including AI-generated media concerning political candidates, as their verified complaint pleads.

Even when plaintiffs significantly delay in protecting their constitutional rights, "delay is only one factor to be considered" and "there is no categorical rule that delay bars injunctive relief." *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (affirming preliminary injunction in spite of thirty months' delay from law's passage); *see also* 11A Charles Allen Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2948.1 (2d ed. 1995); *Int'l Ass'n of Fire Fighters, Local 365 v. City of E. Chi.*, 56 F.4th 437, 451 (7th Cir. 2022) (eighteen month delay in moving for preliminary injunction not fatal to irreparable harm); *contrast Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) (no irreparable harm in breach of contract case for seventeen months' delay since breach).

The district court erred in relying on irreparable harm findings from *Novus* and other cases concerning private commercial causes of action. App. 139; R. Doc. 47 at 20; Add. 20. Delays are not "determinative" in cases concerning irreparable harms to First Amendment rights, and courts are appropriately "loath to withhold relief solely on that ground." *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (plaintiff moved for preliminary injunction five months after being threatened with prosecution, seventeen months after actual knowledge of violating protest permit code, and seventeen *years* after code enacted). The presumption of irreparable injury exists because the "loss of First

Appellate Case: 25-1300     Page: 48     Date Filed: 04/18/2025 Entry ID: 5507826

Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id*.

The 2024 amendment to the statute, which Franson opposed, also amplified Franson's potential injury. While the district court found that "Franson does not claim that anything about the 2024 amendments to the statute's temporal scope and penalties materially changed her belief that the statute proscribed her speech," it increased the **risk** of her politically protected speech. The amendment introduced an unprecedented penalty—disqualifying candidates from office in Minnesota if found guilty of violation. This increased penalty militates in *favor* of irreparable harm. Alleged "tardiness is not particularly probative in the context of ongoing, worsening injuries." *Cuviello*, 944 F.3d at 833. And Franson faces ongoing risk of politically motivated prosecution for her past speech. App. 11; R. Doc. 1 at 4.

Likewise, the risk of enforcement against Franson became more palpable after she was targeted for harassment by a political opponent in 2024. App. 12, 25–26; R. Doc. 1 at 5, 18–19. It became even more pronounced as election day approached—especially given the "window" of time where the statute operates. Primaries, too, generate less excitement—including from law enforcement—than the general election.

The proliferation of AI-generated political commentary, the increased penalties due to the 2024 amendment, and the prospect of politically motivated prosecution made the likelihood of enforcement more real in August 2024 than

37

it was months earlier. All of these factors weigh in favor of Plaintiffs suing when they did, rather than in 2023 when AI-generated political commentary was comparatively rare and unrealistic, and in any event not covered by the statute because no nationally-significant elections occurred.

III. **The Court should remand with instructions to enjoin Defendants from enforcing the statute because it flagrantly infringes core political speech.**

**Standard of Review:** In constitutional cases, motions for preliminary injunction generally reduce to whether the plaintiff can demonstrate a likelihood of success on the merits. *Parents Defending Educ.*, 83 F.4th at 668; *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012) (*en banc*). Whether a statute on is facially unconstitutional under the First or Fourteenth Amendments calls for a "legal conclusion considered *de novo*." *Id.*

~~~

Minnesota cannot criminalize protected political speech, including parody, just because of the tools used to create it and for its "realism," yet that's exactly what section 609.771 does. This is not Minnesota's first unconstitutional foray in its crusade against purported political misinformation. In *281 Care Committee*, this Court addressed a Minnesota statute criminalizing false statements designed to promote or defeat a ballot question. 766 F.3d 774. *281 Care Committee* announced an unequivocal rule: political speech, false or not, "occupies the core of the protection afford by the First Amendment." *Id.* at 784.

38

If the government wishes to curtail it by legislation, it must demonstrate the law "is narrowly tailored to meet a compelling government interest." *Id.* at 784.[8]

As in *281 Care Committee*, Minnesota cannot make that demonstration. As a general matter, states have a compelling interest in preserving electoral integrity, such as in preventing voter fraud, culling voter rolls, and safeguarding voting mechanics. *See, e.g., Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008). Such "election integrity" interests relate to the election *process* and the act of voting itself, not direct restrictions on speech-qua-speech. *See 281 Care Committee*, 766 F.3d at 786–87 (collecting cases). "Yet, when these preservation goals are achieved at the expense of public discourse, they become problematic." *Id.* at 786. "Directly regulating what is said or distributed during an election, as [§ 609.771] does, goes beyond an attempt to control the process to enhance the fairness overall so as to carefully protect the right to vote." *Id.* at 787. "However well intentioned," direct regulations of speech become instruments that "tamper with the right of citizens to choose who shall govern them." *FEC v. Ted Cruz for Senate*, 596 U.S. 289, 305–06 (2022) (internal quotation omitted).

Even if the abstract notion of "preserving fair and honest elections and preventing fraud on the electorate" represents a compelling state interest (*Care*

---

[8] Another case challenging another Minnesota political speech code awaits oral argument in this Court. *See Minnesota Voters Alliance v. Ellison*, No. 24-3094 (8th Cir. 2024) (challenging Minn. Stat. §211B.075). Previously, Minnesota Voters Alliance defeated Minnesota's vague ban on "political apparel" in polling places. *See Minnesota Voters Alliance v. Mansky*, 585 U.S. 1 (2018).

*Committee* reserved the question, 766 F.3d at 787), like the *281 Care Committee* statute, section 609.771 is neither narrowly tailored to nor the least restrictive means of achieving that interest. *Id.* at 787–96.

On nearly every dimension, *281 Care Committee*'s tailoring analysis maps onto section 609.771. For example, *281 Care Committee* faulted Minnesota's predecessor statute for lacking any "empirical evidence" of harm and instead relying on "common sense to establish that the use of false statements impacts voters' understanding, influences votes and ultimately changes elections." *Id.* at 790. So too here; in the legislature, when the bill's sponsors were asked whether politically consequential deepfakes have actually occurred, Rep. Stephenson admitted they have not in Minnesota, and that the bill was "prophylactic"; likewise Sen. Maye Quade admitted that there were no "concrete real-world examples to point to—to say here is an example of harm that was done with a deepfake" and explained that "we're trying to stop it from starting instead of addressing something that's currently happening—or, currently harming people in a broad way." App. 29, 35–36; R. Doc. 1 at 22, 28–29. Prophylaxis doesn't cut it. *See, e.g.*, *United States v. Alvarez*, 567 U.S. 709, 726–27 (2012) (plurality op.). The government "must do more than simply posit the existence of the disease sought to be cured; it must instead point to record evidence or legislative findings demonstrating the need to address a special problem." *Ted Cruz for Senate*, 596 U.S. at 307.

40

The defendants in *281 Care Committee* argued (unsuccessfully) that a knowing or reckless *mens rea* requirement provided the breathing space necessary to protect free speech. 766 F.3d at 788. Section 609.771 uses this standard: "knows or acts with reckless disregard about whether the item being disseminated is a deep fake," subd. 2, and so fails for the same reason. The *mens rea* requirement offers even less protection in the case of parody, because satirists like Kohls *know* their content is not real—lampooning politicians with exaggerated caricatures is the entire purpose of their message.

Just as in *281 Care Committee*, section 609.771 "perpetuate[s] the very fraud it is allegedly designed to prohibit." *Id.* at 789. It not only allows any County Attorney, Attorney General, and other state officials to bring complaints, it allows speakers' political adversaries to do so. Minn. Stat. § 609.771 subd. 4(3)-(4). "Complaints can be filed at a tactically calculated time so as to divert the attention of an entire campaign" and inflict maximum "political damage." *281 Care Committee*, 766 F.3d at 790. Simply put, the filing of a complaint itself inflicts the damage. *Id.* at 792. This concern is more real than hypothetical for Rep. Franson, whose opponent in this past election cycle lives across the street from her, has previously dug through her trash to post her cellphone number online, and has an interest in censoring political speech judging by his recent arrest for stealing scores of political yard signs. App. 25–26; R. Doc. 1 at 18–19. The potential for abuse from section 609.771 is even greater than the *281 Care*

*Committee* "false statements" statute because convictions include the punitive sanction of **disqualification from office**. § 609.771 subd. 3(3)(b)-(c).

Finally, as in *281 Care Committee*, there exists a less restrictive alternative to government speech restraints: counterspeech. 766 F.3d at 793. Private fact checkers already have "fact-checked" Kohls's Harris video (App. 44; R. Doc. 1 at 37), and there is no reason why the state or a state agency could not engage in such counterspeech. "Especially as to political speech, counterspeech is the tried-and-true buffer and elixir" to falsehood, not speech restriction. *Id.* at 793. Candidates themselves typically do this.

*281 Care Committee* does not stand alone. On remand in *SBA List*, the Sixth Circuit held that Ohio's law against false political statements could not survive strict scrutiny. 814 F.3d 466, 473–76 (6th Cir. 2016). Although the court recognized that the general interest in election integrity is compelling, Ohio's law against speech was not narrowly tailored to that interest; "courts have consistently erred on the side of permitting more political speech than less." *Id.* at 476. So too in *Weaver v. Bonner*, 309 F.3d 1312 (11th Cir. 2002). The Eleventh Circuit invalidated a judicial canon that punished even negligently false speech, which the state had justified in part on its interest in electoral integrity. *Id.* at 1320. That stated interest could not justify the "dramatic chilling effect" on political speech. *Id.* Again, the Weaver court noted that counterspeech—not proscription—was the correct solution: "The ability of an opposing candidate to correct negligent misstatements with more speech more than offsets the danger

42

of a misinformed electorate that might result from tolerating negligent misstatements." *Id.*

Most recently, in Kohls' lawsuit contesting California's parallel statutes, the Eastern District of California agreed, determining that counterspeech was the proper remedy, not speech proscription. *Kohls v. Bonta*, 752 F. Supp. 3d 1187, 1191, 1195 (E.D. Cal. 2024). For truly egregious fakes that harm one's reputation, longstanding tort law doctrines exist. "Other statutory causes of action such as privacy torts, copyright infringement, or defamation already provide recourse to public figures or private individuals whose reputations may be afflicted by artificially altered depictions peddled by satirists or opportunists on the internet." *Id.* at 1195–96. Those regimes are generally applicable; they do not depend on the election-related content of the speech.

"Free and fair elections" require "preserv[ing] an uninhibited marketplace of ideas in which truth will ultimately prevail,"[9] not closing it to deepfakes that the state deems too "realistic" and "made with the intent to injure a candidate or influence the result of an election." It is exactly for the sake of free and fair elections that we must live with "misinformation" (which is often nothing more than commentary or satire branded by self-interested politicians as "misinformation"). "It is the citizenry that can discern for themselves what the truth is, not an ALJ behind doors." *281 Care Committee*, 766 F.3d at 793.

---

[9] *Kohls*, 752 F. Supp. 3d at 1195 (quoting *McCullen v. Coakley*, 573 U.S. 464, 476 (2014)).

43

The statute aggravates the First Amendment harm that doomed Minnesota's statute in *281 Care Committee*. While the law rebuked in *281 Care Committee* was a content-based restriction of political speech, it was nonetheless viewpoint neutral in that it took no position on whether the speech advocated for or against a given ballot measure. Section 609.771, by contrast, discriminates not only based on content, but also based on *viewpoint*. Viewpoint discrimination is "uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n v. Vullo*, 602 U.S. 175, 187 (2024). Thus, if a law is "viewpoint-based, it is unconstitutional." *Iancu v. Brunetti*, 588 U.S. 388, 393 (2019); *accord Minn. Voters Alliance*, 585 U.S. at 11 ("prohibited"); *Matal v. Tam*, 582 U.S. 218, 243 (2017) ("forbidden"); *Cajune v. Indep. Sch. Dist. 194*, 105 F.4th 1070, 1083 (8th Cir. 2024) ("impermissible").

The second and third elements of section 609.771—the (2) intent to injure a candidate or influence the result of an election and (3) that the content be made without a candidate's consent—are not merely content regulations: they discriminate based on viewpoint. Both unlawfully proscribe speech based on the "message expressed," *i.e*., by asking what the intended electoral effect of content is and whether the candidate at issue approves of it. *Willson*, 924 F.3d at 1000. The second element privileges speech intended to ossify existing voting patterns over speech intended to alter voting patterns. The third element prohibits negative political commentary toward the candidate depicted, while allowing

positive or laudatory commentary. Dictating the perspective of the speaker is viewpoint discrimination. *E.g., Matal*; *Cajune*.

The third element also creates a nonsensical asymmetry for electoral speech: Under section 609.771 a candidate (or her supporters) is free to use AI-generated content to *boost their own campaign*, while an ordinary person is barred from criticizing that same candidate using the same medium. Excluding deepfakes that support, and thus are consented to by a candidate, not only makes the statute unconstitutionally underinclusive, it is fundamentally antithetical to its claimed objective: section 609.771 privileges candidate misinformation with a safe harbor for candidate consent: AI-deepfakes for me, but not thee.

Section 609.771 thus precludes the public's full participation in the political process, while preserving the same messaging mediums for establishment politicians. This type of arbitrary, underinclusive, even counterproductive line drawing is unconstitutional. *Grimmett v. Freeman*, 59 F.4th 689, 694–96 (4th Cir. 2023) (following *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)); *see also McIntrye v. Ohio Election Comm'n,* 514 U.S. 334, 351 (1995) (remarking on expansiveness of law that circumscribed the political speech "not only…of candidates and their organized supporters, but also [of] individuals acting independently and using only their own modest resources").

As a viewpoint-discriminatory restriction of speech, section 609.771 is *per se* unconstitutional. That viewpoint discrimination only confirms what already

45

followed from *281 Care Committee*: Plaintiffs are likely to win on the merits of their First Amendment claim, and the district court legally erred by refusing to enter a preliminary injunction.

## Conclusion

Minnesota Statutes section 609.771 threatens the heart of the First Amendment by criminalizing core political speech—satire, parody, and commentary—based on its perceived realism and intent to influence elections. The district court erred at every turn: by denying standing to a plaintiff whose speech is plainly chilled; by treating a perceived filing delay as a forfeiture of constitutional rights in the face of a law that continues to violate those rights; and by upholding a viewpoint-discriminatory statute that punishes disfavored political expression.

This Court should reverse the denial of a preliminary injunction and remand with instructions to enjoin enforcement of section 609.771. The Constitution does not permit government officials to decide when parody is too convincing, or political speech too persuasive, to be lawful. That judgment belongs to the public—not the state. Even if the Court does not find plaintiffs meet the standard for preliminary injunction, it should reverse the finding of no standing as to Kohls, so that he may proceed with his claim below.

46

Dated: April 17, 2025                    Respectfully submitted,

/s/ Adam E. Schulman
Adam E. Schulman
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
James V. F. Dickey (MN #393613)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
Phone: (612) 428-7000
Email: james.dickey@umlc.org

*Attorneys for Plaintiffs-Appellants*
*Christopher Kohls and Mary Franson*

Appellate Case: 25-1300    Page: 59    Date Filed: 04/18/2025 Entry ID: 5507826

## Combined Certifications of Compliance

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief is 11,401 words long, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in 14-point CenturyExpd Bt font.

3.      This brief and addendum comply with 8th Cir. R. 28A(h) because the PDF file has been scanned for viruses by Microsoft Defender 102.2503.28002.0 and are said to be virus-free by that program.


Dated:  April 17, 2025                    Respectfully submitted,

                                          */s/ Adam E. Schulman*
                                          Adam E. Schulman

48

**Certificate of Service**

    I hereby certify that on April 17, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Adam E. Schulman*
Adam E. Schulman

Appellate Case: 25-1300    Page: 61    Date Filed: 04/18/2025 Entry ID: 5507826