NO. 25-1300

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## CHRISTOPHER KOHLS; MARY FRANSON,
*Plaintiffs-Appellants*,

v.

KEITH M. ELLISON, in his official capacity as Attorney General of Minnesota;
CHAD LARSON, in his official capacity as County Attorney of Douglas County,
*Defendants-Appellees.*

**On Appeal from the United States District Court for the
District of Minnesota, No. 0:24-cv-03754-LMP**

**Addendum to Brief of Plaintiffs-Appellants
Christopher Kohls and Mary Franson**

HAMILTON LINCOLN LAW INSTITUTE
M. Frank Bednarz
1440 W. Taylor Street, # 1487
Chicago, IL 60607
(801) 706-2690
frank.bednarz@hlli.org

HAMILTON LINCOLN LAW INSTITUTE
Adam E. Schulman
1629 K Street, N.W., Suite 300
Washington, DC 20006
(610) 457-0856
adam.schulman@hlli.org

UPPER MIDWEST LAW CENTER
James Dickey
Alexandra K. Howell
Douglas Seaton
12600 Whitewater Drive, Suite 140
Minnetonka, MN 55343

*Attorneys for Plaintiffs-Appellants
Christopher Kohls and Mary Franson*

## TABLE OF CONTENTS TO ADDENDUM

Order Denying Plaintiffs' Motion for a Preliminary Injunction
     filed January 10, 2025 (Dkt. No. 47).......................................................Add. 1

Judgment in a Civil Case
     filed January 13, 2025 (Dkt. No. 48).......................................................Add. 24

Appellate Case: 25-1300   Page: 2   Date Filed: 04/18/2025 Entry ID: 5507827

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| CHRISTOPHER KOHLS and MARY FRANSON, | Case No. 24-cv-3754 (LMP/DLM) |
| Plaintiffs, | |
| v. | **ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |
| KEITH ELLISON, in his official capacity as Attorney General of Minnesota; and CHAD LARSON, in his official capacity as County Attorney of Douglas County, | |
| Defendants. | |

M. Frank Bednarz, **Hamilton Lincoln Law Institute, Chicago, IL**; and Douglas P. Seaton, James V. F. Dickey, and Alexandra K. Howell, **Upper Midwest Law Center, Minnetonka, MN**, for Plaintiffs.

Elizabeth C. Kramer, Peter J. Farrell, Angela Behrens, and Allen C. Barr, **Office of the Minnesota Attorney General, Saint Paul, MN**, for Defendant Keith Ellison, in his official capacity as Attorney General of Minnesota.

Kristin C. Nierengarten and Zachary J. Cronen, **Rupp, Anderson, Squires & Waldspurger, Minneapolis, MN**, for Defendant Chad Larson, in his official capacity as County Attorney of Douglas County.

Minnesota Statutes section 609.771 prohibits, under certain circumstances, the dissemination of "deepfakes" with the intent to injure a political candidate or influence the result of an election. Plaintiffs Christopher Kohls ("Kohls") and Mary Franson ("Representative Franson") (collectively, "Plaintiffs") bring this action for preliminary injunctive relief against Defendants Keith Ellison, in his official capacity as Attorney General of Minnesota, and Chad Larson, in his official capacity as County Attorney of

1

Douglas County (collectively, "Minnesota"), asking the Court to enjoin its enforcement. ECF No. 10. Plaintiffs contend that Minn. Stat. § 609.771 violates the First Amendment and is unconstitutionally vague. Because Representative Franson—the only plaintiff with standing—fails to demonstrate irreparable harm absent injunctive relief, the Court denies the extraordinary relief Plaintiffs seek in their preliminary-injunction motion.

## **FACTUAL BACKGROUND**[1]

False political speech is nothing new in our Nation. For example, in the 1800 presidential election, allies of Thomas Jefferson suggested that his rival, John Adams, was a woman. *See* Annie C. Hundley, *Fake News and the First Amendment: How False Political Speech Kills the Marketplace of Ideas*, 92 Tulane L. Rev. 497, 499–500 (2017). Adams's allies responded in kind by spreading a rumor that Jefferson was dead. *Id.* This was news to Jefferson, who was very much alive (and went on to win the election).

Nevertheless, the means of spreading false political speech today would be unrecognizable to the Americans of 20 years ago, let alone 200 years ago. Indeed, rapid advances in technology now allow individuals to spread false political speech much more easily and much more convincingly.

---

[1]    Pursuant to the Court's contemporaneously filed order on Plaintiffs' motion to exclude expert testimony (ECF No. 46), the Court does not consider Professor Hancock's declaration (ECF No. 23) or his amended declaration (ECF Nos. 39-1, 39-2) in deciding this motion. Candidly, though, because the Court resolves the preliminary-injunction motion on the irreparable-harm factor, Minnesota's expert opinions—which relate to Plaintiffs' likelihood of success on the merits of their First Amendment challenge—are largely irrelevant to the Court's resolution of the preliminary-injunction motion.

2

Add.2

Enter deepfakes.  Deepfakes are image, audio, or video files that mimic real or nonexistent people saying and doing things that never happened.  ECF No. 24 ¶ 7. Deepfakes leverage artificial intelligence ("AI") algorithms to manipulate digital content— ordinarily images, sounds, and videos—in which a person's likeness, voice, or actions are convincingly altered or fabricated.  *Id.* ¶¶ 7, 11–12.  The AI technology behind deepfakes is advanced and complex, making it difficult for the average person to detect the falsity of a deepfake.  *Id.* ¶¶ 11–12, 17.

The technology used to manipulate images, sounds, and videos existed before deepfakes entered the picture, but such technology was expensive, time-consuming, technical, and difficult to use for the ordinary person.  *Id.* ¶¶ 8–9.  However, in the last 15 years, deepfake technology has become increasingly accessible and available, and ordinary people now can generate convincing deepfake content at little cost in a matter of minutes. *Id.* ¶¶ 9, 12.  And with the concomitant rise of social media, deepfakes can be disseminated to millions of online users with the mere click of a button.  *Id.* ¶¶ 13, 15.

Deepfakes have become particularly prominent in the political sphere.  *Id.* ¶ 19.  A few recent examples of high-profile political deepfakes identified by the parties include:

- On the day before the 2024 New Hampshire presidential primary, a robocall with President Joe Biden's voice encouraged Democrats not to vote in the upcoming primary.  *Id.* ¶ 13.

- On the day of a Taiwanese election, a group affiliated with the Chinese Communist Party posted a video of one of the main political candidates endorsing another candidate, which the politician never did.  *Id.* ¶ 19.

3

Add.3

- A few days before a Slovakian election in early 2024, a candidate's voice was used in a deepfake audio file in which the candidate stated that he had rigged the election. *Id.* That deepfake followed a deepfake video file of the same candidate saying that he planned to raise the price of beer. *Id.*

Like several other states, Minnesota sought to address the purported harmful effects of deepfakes in the political arena when, in 2023, the Minnesota Legislature passed, and the Governor signed into law, H.F. 1370, which was codified at Minn. Stat. § 609.771 (2023). As originally codified, the statute provided that:

> A person who disseminates a deep fake or enters into a contract or other agreement to disseminate a deep fake is guilty of a crime and may be sentenced as provided in subdivision 3 if the person knows or reasonably should know that the item being disseminated is a deep fake and dissemination:
>
> (1)    takes place within 90 days before an election;
>
> (2)    is made without the consent of the depicted individual; and
>
> (3)    is made with the intent to injure a candidate or influence the result of an election.

Minnesota Statutes section 609.771, subd. 1(c) (2023), defined a "deep fake" as:

> [A]ny video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct substantially derivative thereof:
>
> (1)    that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct; and
>
> (2)    the production of which was substantially dependent upon technical means, rather than the ability of another

4

Add.4

individual to physically or verbally impersonate such individual.

A person who violates the statute faces both criminal and civil consequences. As for criminal penalties, individuals who violate the statute face up to 90 days in prison and a $1,000 fine, or up to five years in prison and a $10,000 fine if certain aggravating circumstances are present. *Id.*, subd. 3 (2023). As for civil remedies, the statute authorizes the Minnesota Attorney General, a county attorney or city attorney, the individual depicted in the deepfake, or the candidate injured by the deepfake to seek injunctive relief against the individual responsible for disseminating the deepfake. *Id.*, subd. 4.

In 2024, the Minnesota Legislature passed, and the Governor signed into law, H.F. 4772, which amended Minn. Stat. § 609.771 in three ways, effective on July 1, 2024. Laws of Minnesota 2024, ch. 112, art. 2, §§ 76–78, *codified at* Minn. Stat. § 609.771, subds. 2– 4. *First*, the Legislature expanded the temporal scope of the statute: in addition to prohibiting the dissemination of deepfakes "90 days before an election," the statute's coverage was expanded now to prohibit disseminating deepfakes "within 90 days before a political party nominating convention," or "after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election." *Compare* Minn. Stat. § 609.771, subd. 2(a)(1) (2023), *with* Minn. Stat. § 609.771, subd. 2(a)(3) (2024). *Second*, the Legislature attached political penalties to the statute: if a candidate for state or local office is convicted of violating the statute, the candidate will be deemed to have "forfeited the[ir] nomination or office" and "is disqualified from being appointed to that office or any other office for which the legislature

Add.5

may establish qualifications under the Minnesota Constitution . . . ."  Minn. Stat. § 609.771, subd. 3(b–c) (2024).  *Third*, the Legislature amended the mens rea requirement for accused violators from "knows or reasonably should know" to "knows or acts with reckless disregard."  *Compare* Minn. Stat. § 609.771, subd. 2(a) (2023), *with* Minn. Stat. § 609.771, subd. 2(a) (2024).

Kohls does not agree with Minnesota's approach to regulating deepfakes.  He is a social media influencer who regularly publishes political content from a self-described conservative perspective, including videos on his @MrReaganUSA X account (formerly known as "Twitter") and his "Mr Reagan" YouTube page.  ECF No. 1 ¶ 17.  Kohls admits that he posts AI-generated videos that are edited to make political figures say and do things that never happened.  ECF No. 1 ¶¶ 25, 31; ECF No. 11 at 6.  Plaintiffs' complaint identifies two AI-generated posts that Kohls has made on social media:

- **July 26 Video:** Kohls posted a video on July 26, 2024, "in the style of a campaign ad for Vice President Kamala Harris" narrated by a voice that sounds like Kamala Harris saying things like "Joe [Biden] taught me rule number one: carefully hide your total incompetence," and "I was selected because I am the ultimate diversity hire."  ECF No. 1 ¶¶ 5, 26.  The video is posted on YouTube, is titled "Kamala Harris Ad PARODY," and acknowledges that "Sound or visuals were significantly edited or digitally generated."  ECF No. 20-2, Ex. 14.

- **August 9 Video:** Kohls posted a video on August 9, 2024, of an "imaginary phone call" between Vice President Harris and Minnesota Governor Tim

6

Add.6

Walz, featuring AI-generated dialog from both individuals in which the voice of "Vice President Harris" claims "we're both radical communists" before recounting Governor Walz's perceived political liabilities.  ECF No. 1 ¶ 31. The video is posted on YouTube, is titled "Kamala/Tim Walz Phone Call PARODY," and acknowledges that "Sound or visuals were significantly edited or digitally generated."  ECF No. 20-2, Ex. 17.

Representative Franson is a Minnesota State Representative who follows Kohls's X and YouTube accounts.  ECF No. 1 ¶ 16.  Representative Franson voted for Minn. Stat. § 609.771 in 2023, although she opposed the 2024 amendments to the statute.  *Id.* ¶¶ 51, 60.  Representative Franson also admits that she "regularly consumes and shares AI-generated content for political commentary."  *Id.* ¶ 16.  Representative Franson identifies the following AI-generated content that she has shared on her own social media platforms:

- On July 27, 2024, Representative Franson retweeted the July 26 Video that Kohls had posted on X, without the same capitalized parody disclaimer included by Kohls.  *Id.* ¶ 5.

- On September 16, 2024, Representative Franson retweeted an X account that posted laughing emojis in response to an image captioned "Oh No! Tim Walz Just Waved So Hard His Arms Flew Off!"  *Id.*  The accompanying image features the likeness of Governor Walz at a political rally, "except his forearms have flown off their bones."  *Id.*

Neither Representative Franson nor Kohls have been subject to any of the criminal, civil, or political penalties for violating Minn. Stat. § 609.771.  And the County Attorney

Add.7

of Douglas County—the county in which Representative Franson resides, *id.* ¶ 16—has neither threatened nor commenced any investigation against Representative Franson, Kohls, or anyone else for violating Minn. Stat. § 609.771. *See* ECF No. 26 ¶¶ 4–10. Nonetheless, Plaintiffs brought this action under 42 U.S.C. § 1983 on September 27, 2024, alleging that Minn. Stat. § 609.771 (2024) is violative of the First Amendment—both facially and as-applied—and void for vagueness. *See* ECF No. 1 ¶¶ 87–122. On October 11, 2024, Plaintiffs filed the instant motion for a preliminary injunction, seeking to enjoin Minnesota from enforcing Minn. Stat. § 609.771 (2024). *See* ECF No. 10.

## ANALYSIS

Minnesota first argues that Plaintiffs lack standing to seek injunctive relief because both Kohls and Representative Franson have not engaged in conduct arguably prohibited by Minn. Stat. § 609.771 and therefore face no imminent risk of prosecution. ECF No. 19 at 13–20. And, even if Plaintiffs have standing, Minnesota asserts that Plaintiffs have failed to show the irreparable harm necessary for injunctive relief by unreasonably delaying their request for injunctive relief. *Id.* at 46–47; ECF No. 25 at 12–14. Plaintiffs contend that they have standing because they have engaged in conduct proscribed by Minn. Stat. § 609.771 and argue that a finding of irreparable harm necessarily follows from their likelihood of success on the merits. ECF No. 11 at 14–18, 37–38; ECF No. 28 at 3–7, 16–18. The Court addresses each argument in turn.

## I.    Standing

"Standing to sue under Article III 'is the threshold question in every federal case [because it] determin[es] the power of the court to entertain the suit.'" *Becker v. N.D. Univ.*

*Sys.*, 112 F.4th 592, 595 (8th Cir. 2024) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

The standing inquiry is "especially rigorous" when reaching the merits of the case would

force a court "to decide whether an action taken by one of the other two branches" of

government was unconstitutional. *Missouri v. Yellen*, 39 F.4th 1063, 1068 (8th Cir. 2022).

To meet the "irreducible constitutional minimum" required to establish standing, a plaintiff

must satisfy three elements: "(1) the plaintiff suffered an injury in fact, (2) that is fairly

traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

by a favorable judicial decision." *Arc of Iowa v. Reynolds*, 94 F.4th 707, 710 (8th Cir. 2024)

(quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).  An injury in fact is one that is

"concrete, particularized, and actual or imminent." *Id.*

### a. First Amendment Standing Doctrine

Minnesota only challenges the injury-in-fact requirement.  ECF No. 19 at 13–21.

Because Plaintiffs have been neither threatened with nor subjected to penalties under Minn.

Stat. § 609.771, the parties agree that Plaintiffs raise a pre-enforcement challenge to the

statute.  In the First Amendment context, a plaintiff claiming an abridgment of free speech

is permitted to seek pre-enforcement review "under circumstances that render the

threatened enforcement sufficiently imminent." *Sch. of the Ozarks, Inc. v. Biden*, 41 F.4th

992, 1000 (8th Cir. 2022) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159

(2014)).  To meet this standard, a plaintiff must allege that they have "an intention to engage

in a course of conduct arguably affected with a constitutional interest, but proscribed by a

statute, and there exists a credible threat of prosecution thereunder." *Id.* (citation omitted).

If a plaintiff identifies "intended future conduct" that is "arguably . . . proscribed by the

Add.9

statute it wishes to challenge," the plaintiff has standing to pursue a First Amendment pre-enforcement challenge. *L.H. v. Indep. Sch. Dist.*, 111 F.4th 886, 893 (8th Cir. 2024) (citation omitted) (internal quotation marks omitted) (alteration in original). Although this standing inquiry is "forgiving," it is not toothless. *See id.* (citation omitted).

To determine whether Plaintiffs' past or planned conduct is "arguably proscribed" by Minn. Stat. § 609.771, the Court must interpret its scope. *See Christian Action League of Minn. v. Freeman*, 31 F.4th 1068, 1072 (8th Cir. 2022). If Plaintiffs' conduct alleged in the complaint is arguably proscribed by the statute, Plaintiffs have standing; if the statute does not prohibit Plaintiffs' conduct, Plaintiffs lack standing. *See id.*

First, the Court concludes that Minn. Stat. § 609.771 does not penalize pure parody or satire. Constitutionally speaking, parody is that which "cannot 'reasonably [be] interpreted as stating actual facts' about an individual." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (quoting *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)) (alteration in original). But the statute at issue here only proscribes a deepfake insofar as it "is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Minn. Stat. § 609.771, subd. 1(c)(1). The statute's definition of a deepfake thus categorically excludes constitutional parody from its sweep. If the speech in question "cannot reasonably be interpreted as stating actual facts about an individual," then it cannot be a deepfake under the statute.

The next question, then, is whether any of the speech alleged by Plaintiffs falls outside of the ambit of parody and into the category of media that "is so realistic that a

10

reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct."  Minn. Stat. § 609.771, subd. 1(c)(1).

### b. Kohls's Standing to Sue

From the record presented by Plaintiffs, it appears that Kohls has only ever posted constitutional parody.  Indeed, the July 26 and August 9 Videos that Kohls posted were labeled as "PARODY" and included a disclaimer that "Sound or visuals were significantly edited or digitally generated."  ECF No. 20-2, Exs. 14, 17.  It also appears that Kohls regularly includes the term "PARODY" in the titles of other videos that he has published, along with a disclaimer that "Sound or visuals were significantly edited or digitally generated."  *See* ECF No. 20-2, Exs. 15–16, 18–22.  Given Kohls's repeated disclaimers that his deepfake videos are "PARODY" and that "[s]ound or visuals [are] significantly edited or digitally generated," the Court concludes that no reasonable person would believe his dissemination of the July 26 and August 9 Videos depict "speech or conduct of an individual who did not in fact engage in such speech or conduct."  Minn. Stat. § 609.771, subd. 1(c)(1).  Indeed, by labeling his videos as "PARODY," Kohls is announcing to his viewers that the videos "cannot reasonably be interpreted as stating actual facts about an individual."  *Milkovich*, 497 U.S. at 20 (providing the constitutional definition of parody).  And because the Court concludes that constitutional parody does not fall within the ambit of Minn. Stat. § 609.771, Kohls has failed to identify a course of conduct "arguably proscribed" by the statute.  *L.H.*, 111 F.4th at 893.  Kohls accordingly lacks standing to bring this pre-enforcement challenge.  *See Christian Action League*, 31 F.4th at 1072

Add.11

(explaining that if a statute does not criminalize a plaintiff's conduct, then the plaintiff "has no injury in fact").

**c. Representative Franson's Standing to Sue**

As for Representative Franson, at least some of her speech falls squarely into the scope of parody and outside the scope of the statute. For example, she alleges that she shared an image depicting Governor Walz smiling while his arms fly off his body during a political rally. ECF No. 1 ¶ 5. From a review of this image, the Court is quite confident that no reasonable person would believe the image is "so realistic" as to actually display the public amputation of Governor Walz's arms during a political rally:



ECF No. 20-1, Ex. 13. But Representative Franson's dissemination of the July 26 Video is a closer call. It appears from the record that Representative Franson disseminated the July 26 Video on X, retweeting it from Elon Musk's X account:

12

Add.12



ECF No. 20-1, Ex. 4.  Notably, Representative Franson shared Kohls's video without including any disclaimer that the video she disseminated is a "parody," nor did she note that "[s]ound or visuals [are] significantly edited or digitally generated," like Kohls did. Without any disclaimer that the video is a parody (which would place it outside of the statute's scope), the Court concludes that a reasonable person could believe that the video disseminated by Representative Franson "arguably" was "so realistic that . . . it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Minn. Stat. § 609.771, subd. 1(c)(1); *see Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*, 83 F.4th 658, 667 (8th Cir. 2023) (explaining that to obtain standing, a plaintiff only needs to show that its speech is "arguably proscribed" by the statute).  Indeed, individuals that the parties consider reasonable people—like United States Senator Amy Klobuchar, California Governor Gavin Newson, and the leader of Public Citizen—considered Musk's

13

dissemination of the July 26 Video (which is effectively what Representative Franson shared) to be realistic. ECF No. 1 ¶¶ 72–74.

Minnesota argues that the video—even without the parody warning—would not be considered realistic by a reasonable person because it is "implausibl[e]" and not even arguably realistic. ECF No. 19 at 16–19. But as Minnesota's own expert points out, deepfakes are "visually and auditorily engaging; they are plausibly realistic, so much so that users often cannot tell whether they are real or not." ECF No. 24 ¶ 16. Speech that may be downright implausible when uttered orally or in writing may become significantly more persuasive when presented in a deepfake. Therefore, the Court finds that a reasonable person could consider the July 26 Video reposted by Representative Franson, on its own, so realistic as to depict speech or conduct that did not actually occur and would be prohibited under Minn. Stat. § 609.771.

Thus, because Representative Franson has demonstrated that she has engaged in conduct "arguably proscribed" by Minn. Stat. § 609.771, she has standing to pursue this pre-enforcement action.[2] *Parents Defending Educ.*, 83 F.4th at 667. And because at least

---

[2]     The Court does not take into account Douglas County Attorney Larson's declaration, which states that he is not presently investigating anyone for violating Minn. Stat. § 609.771 and has no present intention to threaten enforcement of Minn. Stat. § 609.771 against anyone. *See* ECF No. 26; *see also* ECF No. 25 at 9–10. Larson proffers neither an "official policy or a long history of disuse" that would suggest that there is a "[t]otal lack of enforcement" of the statute. *281 Care Comm. v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011) (citations omitted); *see also United Food & Com. Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) (representation by state officials that they have "no present intention" to enforce a statute did not divest standing to challenge the statute because the state's position was not binding and could change).

one plaintiff has standing to bring this action, the standing requirement for this case is satisfied. *See Jones v. Gale*, 470 F.3d 1261, 1265 (8th Cir. 2006) ("[W]here one plaintiff establishes standing to sue, the standing of other plaintiffs is immaterial to jurisdiction.") (citation omitted) (internal quotation marks omitted). The Court may therefore proceed to determining whether Representative Franson is entitled to injunctive relief.

## II.    Merits of Preliminary-Injunction Motion

### a.    Preliminary-Injunction Factors

A party seeking a preliminary injunction must establish four factors: (1) likelihood of success on the merits, (2) likelihood of suffering irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in the movant's favor, and (4) the injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Because Representative Franson—the only plaintiff with standing—fails to demonstrate irreparable harm absent injunctive relief, the Court's analysis starts and ends with the irreparable-harm factor. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("Failure to show

---

Additionally, Larson makes the curious argument that Representative Franson has named the "wrong defendants," because individuals other than Ellison and Larson can enforce Minn. Stat. § 609.771. ECF No. 25 at 10–12. But implicit in that argument is that Ellison and Larson *do* have power to enforce the statute against Representative Franson, which makes them proper defendants (even if Representative Franson could have named other defendants, including other county attorneys). *See Doe v. Piper*, 165 F. Supp. 3d 789, 801 (D. Minn. 2016) (explaining that the proper governmental defendant for a constitutional claim is one who is "connected to the enforcement of the relevant law").

irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction.").

### b. Irreparable Harm

Plaintiffs argue that if they show a likelihood of success on the merits, a showing of irreparable harm necessarily follows. ECF No. 11 at 37. At first blush, Plaintiffs' argument finds resonance in Eighth Circuit case law. The Eighth Circuit has explained that in First Amendment cases, "the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue." *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester*, 697 F.3d 678 (8th Cir. 2012); *see also Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1101–02 (8th Cir. 2013) (holding in a First Amendment case that because the plaintiff had shown a likelihood of success on the merits, the remaining preliminary-injunction factors were met). In that vein, the Supreme Court has explained that a "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). The Eighth Circuit has accordingly reasoned that if a plaintiff establishes "a sufficient likelihood of success on the merits of her First Amendment claim, she will also have established irreparable harm as the result of the deprivation." *Phelps-Roper*, 545 F.3d at 690. *Phelps-Roper* would therefore suggest that the Court should begin by evaluating Plaintiffs' likelihood of success on the merits.

Nonetheless, the Eighth Circuit recently clarified that "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on

16

the merits," even in a First Amendment case. *See Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 893–94 (8th Cir. 2024) (quoting *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam)). Instead, a court may independently deny a motion for a preliminary injunction when the plaintiff acts with "unreasonable delay." *See id.* at 894; *see also Ng v. Bd. of Regents of Univ. of Minn.*, 64 F.4th 992, 997 (8th Cir. 2023) (unreasonable delay "is a sufficient basis to deny" a preliminary injunction). That is because in making a showing of irreparable harm, "a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 425 (8th Cir. 1996). But delay in seeking a preliminary injunction "vitiates much of the force of . . . allegations of irreparable harm." *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 894 (8th Cir. 2013) (quoting *Beame v. Friends of the Earth*, 434 U.S. 1310, 1313 (1977)) (alteration in original). Delay is calculated by measuring the time between when the plaintiff sought injunctive relief and the time when the plaintiff had "knowledge of the conduct of the defendant." *Id.*

Minnesota argues that Plaintiffs have unreasonably delayed seeking injunctive relief (ECF No. 19 at 46–47; ECF No. 25 at 12–14), so the Court therefore evaluates whether Representative Franson—the only plaintiff with standing—has unreasonably delayed seeking injunctive relief. The original version of Minn. Stat. § 609.771 went into effect on August 1, 2023. Laws of Minnesota 2023, ch. 58, § 2, *codified at* Minn. Stat. § 609.771. Representative Franson, in fact, voted for the very bill that was codified as Minn. Stat. § 609.771 (2023) on May 16, 2023, and Governor Walz signed the bill into law on May 26, 2023. ECF No. 1 ¶¶ 51, 53. Notably, although the 2024 amendments to Minn. Stat.

17

§ 609.771 altered the temporal scope and penalties associated with disseminating a deepfake, the amendments *did not* change the statutory definition of a deepfake. *Compare* Minn. Stat. § 609.771, subd. 1(c) (2023), *with* Minn. Stat. § 609.771, subd. 1(c) (2024). Therefore, the substantive scope of the type of AI-generated content proscribed by the statute has remained the same since the statute was enacted on May 26, 2023. As such, Representative Franson has been on notice of the statute's scope (and its potential chilling effect on her online activities) since May 26, 2023.

Representative Franson argues that she was "unaware of the law's overbreadth" until July 29, 2024. ECF No. 28 at 17. Representative Franson's only support for that proposition is a single paragraph in her verified complaint, which simply states that on July 29, 2024, Representative Franson saw a post on X by another state representative reminding Minnesotans of the potential legal consequences of disseminating deepfakes. ECF No. 1 ¶ 35. That in no way establishes Representative Franson's lack of knowledge of the *scope* of Minn. Stat. § 609.771. Further, her argument would run counter to the "common maxim, familiar to all minds, that ignorance of the law will not excuse any person, either civilly or criminally."[3] *United States v. Moreira-Bravo*, 56 F.4th 568, 578 (8th Cir. 2022) (citation omitted) (internal quotation marks omitted). At the risk of stating

---

[3]     The same is true for Kohls, who offers no explanation for why he only sought injunctive relief in October 2024, even though the parts of Minn. Stat. § 609.771 to which he objects were codified in mid-2023. Kohls's delay in seeking injunctive relief in this case is particularly striking because he sought injunctive relief against a similar California statute on the day that the California statute was signed into law by the Governor. *See Kohls v. Bonta*, No. 2:24-cv-02527 JAM-CKD, 2024 WL 4374134, at *1 (E.D. Cal. Oct. 2, 2024).

the obvious, Representative Franson voted for the bill that became the original version of Minn. Stat. § 609.771, ECF No. 1 ¶ 51, so her argument that she was unaware of the statute's scope rings especially hollow.

Additionally, Representative Franson does not claim that anything about the 2024 amendments to the statute's temporal scope and penalties materially changed her belief that the statute proscribed her speech. Nor does the record reflect that Representative Franson only recently began disseminating AI-generated content. *See id.* ¶¶ 4, 16 (noting that Representative Franson has communicated with her constituents on social media since 2010, and that she "regularly consumes and shares AI-generated content for political commentary," without any temporal qualification); *id.* ¶ 37 (noting that Representative Franson was sharing fake memes on social media as early as 2021). Put differently, it does not appear from the record that Representative Franson's fear that her speech would be punished would have been any different on July 1, 2024 (when the 2024 amendments went into effect), than on May 26, 2023.

Quite simply, Representative Franson knew by May 26, 2023, that Minn. Stat. § 609.771 would be enacted, and that it would bar dissemination of the types of AI-generated content that she now claims she is prohibited from sharing. However, Representative Franson did not move for a preliminary injunction until October 11, 2024— more than 16 months later.

Courts have held that delays comparable to and shorter than Representative Franson's fatally undermine assertions of irreparable harm. *See, e.g., Hotchkiss*, 115 F.4th at 894 (delay of 16 months in seeking injunctive relief failed to demonstrate irreparable

19

harm); *Adventist Health Sys./Sunbelt, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 17 F.4th 793, 806 (8th Cir. 2021) (same for 12-month delay); *Minn. State Coll. Student Ass'n, Inc. v. Cowles*, 620 F. Supp. 3d 835, 855 (D. Minn. 2022) (same for 11-month delay in a First Amendment case); *CHS, Inc. v. PetroNet, LLC*, No. 10-cv-94 (RHK/FLN), 2010 WL 4721073, at *3 (D. Minn. Nov. 15, 2010) (same for 8-month delay). The Court takes Representative Franson's 16-month delay in bringing this pre-enforcement action—an action that she could have brought on the day the statute she voted for was enacted—as "an indication that the harm [suffered by Representative Franson] would not be serious enough to justify a preliminary injunction." 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2948.1 & n.13 (3d ed. 2013).

The Court further finds Representative Franson's delay "inexplainable in light of [her] knowledge of the conduct of the defendant." *Novus Franchising*, 725 F.3d at 894. Representative Franson does not argue that she needed 16 months to assemble a factual record necessary for a preliminary-injunction motion. *See Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 936 (8th Cir. 2002) (concluding that a seven-month delay in moving for injunctive relief was reasonable when the movant spent that time "marshal[ling] its case for a preliminary injunction"). Nor does she assert that this case involved any unique procedural or legal complications. *See Osthus v. TruStone Fin. Fed. Credit Union*, 182 F. Supp. 3d 901, 916 n.19 (D. Minn. 2016) (explaining that a delay in seeking injunctive relief in a labor relations case was not unreasonable because "complicated labor disputes take time to investigate and litigate"). Rather, the only argument that Representative Franson makes is that she had no clue that Minn. Stat.

20

Add.20

§ 609.771 would prohibit her from disseminating AI-generated political content, an assertion that is unsupported (and even belied) by the record.

At oral argument, counsel for Representative Franson offered a new argument: her delay was reasonable because there were no elections in 2023, and thus the 90-day ban was not triggered. As an initial matter, that argument is forfeited because it was raised for the first time at oral argument. *See Anderson v. Rugged Races LLC*, 496 F. Supp. 3d 1270, 1285 n.11 (D. Minn. 2020). Moreover, Representative Franson's argument is factually incorrect: there were state and local elections in Minnesota during the latter half of 2023, meaning that the statute's prohibitions on disseminating deepfakes would have been activated during that time. *See* Minnesota Secretary of State, *Election Results*, available at https://www.sos.state.mn.us/elections-voting/election-results.

Representative Franson also fails to demonstrate irreparable harm for a second, independent reason: by voting for the very bill that she now claims constitutes a "dangerous attack on truth, speech, and free elections," ECF No. 1 ¶ 1, her asserted harm is self-inflicted. If Representative Franson truly believed that the statute posed a dire threat to First Amendment rights, she logically would have voted against the bill. Because the harm Representative Franson asserts was partly of her own making, Representative Franson's claim of irreparable harm further falls flat. *See Salt Lake Trib. Publ'g Co. v. AT & T Corp.*, 320 F.3d 1081, 1106 (10th Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable . . . ."); *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) ("If the harm complained of is self-inflicted, it does not qualify as

21

irreparable."); *Portz v. St. Cloud State Univ.*, No. 16-cv-1115 (JRT/LIB), 2019 WL 6727122, at *5 (D. Minn. Dec. 11, 2019).

Finally, the Court's conclusion is fortified by contextualizing the claim that Representative Franson makes and the relief that she seeks. *See Ng*, 64 F.4th at 998 ("[T]he determination of the reasonableness of a delay is context dependent."). According to Representative Franson, Minnesota is engaged in a "dangerous attack on truth, speech, and free elections." ECF No. 1 ¶ 1. That certainly sounds like a "certain and great" and "imminen[t]" harm, *Iowa Utils. Bd.*, 109 F.3d at 425, and if true, one would expect that Representative Franson would have run to court with haste to combat that violation of fundamental free-speech principles (or at a minimum, voted against the bill that catalyzed such a "dangerous attack"). But by waiting 16 months to challenge that "dangerous attack," Representative Franson herself diminished the urgency and gravity of the claim that she now makes. *See Novus Franchising*, 725 F.3d at 894.

As to Representative Franson's requested relief, she mounts a facial challenge against Minn. Stat. § 609.771, which is "strong medicine that is not to be casually employed." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted) (internal quotation marks omitted). Indeed, facial challenges are "disfavored" because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450–51 (2008). Considering the drastic remedy that Representative Franson requests, the Court concludes

that Representative Franson's failure to act with the requisite diligence does not justify the "strong medicine" of facial invalidation at this juncture. *Williams*, 553 U.S. at 304; *see also Winter*, 555 U.S. at 22 (explaining that a preliminary injunction itself is an "extraordinary remedy").

To be clear: a determination on Representative Franson's constitutional claims will eventually be made. But because she fails to demonstrate that she will be irreparably harmed absent injunctive relief, she is not entitled to that determination at this time. *See Lewis*, 346 F.3d at 844.

## **CONCLUSION**

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for a Preliminary Injunction (ECF No. 10) is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 10, 2025                    *s/Laura M. Provinzino*
                                           Laura M. Provinzino
                                           United States District Judge

Add.23

**UNITED STATES DISTRICT COURT**

**District of Minnesota**

Christopher Kohls, Mary Franson

**JUDGMENT IN A CIVIL CASE**

Plaintiffs,

v.                                                          Case Number: 24-cv-03754-LMP-DLM

Keith Ellison, Chad Larson

Defendants.

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

Plaintiffs' Motion for a Preliminary Injunction (ECF No. 10) is **DENIED**.

Date: 1/13/2025                                          KATE M. FOGARTY, CLERK

Add.24

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on April 17, 2025, an electronic copy of the Addendum to Brief of Plaintiffs-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants in this case are registered CM/ECF users and that service of the Addendum will be accomplished by the CM/ECF system.


*/s/ Adam E. Schulman*
Adam E. Schulman