No. 25-1300

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

---

Christopher Kohls; Mary Franson,

*Plaintiffs-Appellants,*

vs.

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Chad Larson, in his official capacity as County Attorney of Douglas County,

*Defendants-Appellees.*


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
Case No. 0:24-cv-03754-LMP-DLM
Honorable Judge Laura M. Provinzino


**APPELLEE LARSON'S BRIEF**

---

Kristin C. Nierengarten
Zachary J. Cronen
SQUIRES, WALDSPURGER & MACE, P.A.
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
(612) 436-4300
kristin.nierengarten@raswlaw.com
zachary.cronen@raswlaw.com

*Attorneys for Appellee Chad Larson*

# SUMMARY OF THE CASE

Appellants Christopher Kohls and Mary Franson sued Minnesota Attorney General Keith Ellison and Douglas County Attorney Chad Larson, in their official capacities, on a preemptive challenge to Minnesota Statutes Section 609.771. Section 609.771 prohibits knowingly or recklessly disseminating deep fake content with the intent to injure a candidate or influence an election. Appellants contend that Section 609.771 violates their First Amendment and Due Process rights, seeking permanent injunctive relief against Appellees and nominal damages against Larson specifically. Appellants brought a motion for a preliminary injunction to enjoin the enforcement of Section 609.771. The district court denied Appellants' motion. Appellants now appeal.

Larson's role in this case and appeal is limited. Larson opposed the preliminary injunction motion primarily on the basis that he is not a proper party to Appellants' claims, which specifically challenge the constitutionality of a state law. Larson defers to Ellison to defend the state's law. Nonetheless, to the extent relevant to Appellants' arguments on appeal, Larson reiterates his position on the preliminary injunction motion in this brief. Larson, however, does not seek or intend to present an oral argument unless the Court requests that he do so.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ..............................................................................i

TABLE OF CONTENTS ................................................................................ii

TABLE OF AUTHORITIES...........................................................................iii

STATEMENT OF ISSUES ............................................................................ 1

STATEMENT OF THE CASE ........................................................................ 2

SUMMARY OF THE ARGUMENT .............................................................. 6

ARGUMENT.................................................................................................. 7

I.      STANDARD OF REVIEW...................................................................... 7

II.     THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT FRANSON CANNOT SHOW IRREPARABLE HARM SUFFICIENT TO SUPPORT APPELLANTS' MOTION FOR INJUNCTIVE RELIEF AGAINST LARSON. ............................................................... 7

III.   APPELLANTS CANNOT SHOW THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AGAINST LARSON. ......................... 10

     A.    *Monell* applies to Appellants' constitutional claims against Larson........... 12

     B.    Appellants' Section 1983 claims against Larson fail under *Monell* for want of an allegedly unconstitutional County policy........................................... 15

     C.    Larson's statutory authority to enforce Section 609.771 is not a municipal policy for *Monell* purposes........................................................................ 16

     D.    The alleged threat of harm is not caused by a Douglas County policy....... 25

CONCLUSION ............................................................................................ 27

CERTIFICATE OF COMPLIANCE .............................................................. 28

CERTIFICATE OF SERVICE....................................................................... 29

# TABLE OF AUTHORITIES

**Cases**

*Adam–Mellang v. Apartment Search, Inc.*
  96 F.3d 297 (8th Cir. 1996)................................................................8
*Bandag, Inc. v. Jack's Tire & Oil, Inc.*
  190 F.3d 924 (8th Cir. 1999)..............................................................7
*Beacon Theatres, Inc. v. Westover*
  359 U.S. 500 (1959) ...........................................................................7
*Bergerson v. Deephaven Capital Mgmt., LLC*
  No. 03-1090 (DWF/JSM), 2003 WL 1824964 (D. Minn. Apr. 4, 2003)..............9
*Bethesda Lutheran Homes & Servs., Inc. v. Leean*
  154 F.3d 716 (7th Cir. 1998)...........................................................21
*Brockes v. Fields*
  999 F.2d 788, 791 (4th Cir. 1993).............................................. 21, 22
*Calhoun v. Washington Cnty. Cmty. Servs. Child Support Unit*
  No. 18-CV-1881 (ECT/HB), 2019 WL 2079834 (D. Minn. Apr. 23, 2019) 16, 26
*Carlsen v. GameStop, Inc.*
  833 F.3d 903 (8th Cir. 2016)..............................................................7
*City of Canton v. Harris*
  489 U.S. 378 (1989) .........................................................................14
*City of Oklahoma City v. Tuttle*
  471 U.S. 808 (1985) .............................................. 18, 20, 23, 24, 26
*City of St. Louis v. Praprotnik*
  485 U.S. 112 (1988) .........................................................................14
*Cooper v. Dillon*
  403 F.3d 1208 (11th Cir. 2005)......................................................23
*Doby v. DeCrescenzo*
  171 F.3d 858 (3d Cir. 1999)............................................................23
*Duhe v. City of Little Rock*
  902 F.3d 858 (8th Cir. 2018)...........................................................17
*Elder–Keep v. Aksamit*
  460 F.3d 979 (8th Cir. 2006)...........................................................13
*Evers v. Custer County*
  745 F.2d 1196 (9th Cir. 1984).........................................................23
*Familias Unidas v. Briscoe*
  691 F.2d 391 (5th Cir. 1980)..................................................... 19, 20
*Gardner v. Wal-Mart Stores, Inc.*
  2 F.4th 745 (8th Cir. 2021)..............................................................10
*Garner v. Memphis Police Dep't*
  8 F.3d 358 (6th Cir. 1993)...............................................................23

*Gelco Corp. v. Coniston Partners*
  811 F.2d 414 (8th Cir. 1987) ................................................................8
*Grow Biz Int'l, Inc. v. MNO, Inc.*
  No. 01-1805, 2002 WL 113849 (DWF/AJB) (D. Minn. Jan. 25, 2002) ...............9
*Hafer v. Melo*
  502 U.S. 21 (1991) ........................................................................12
*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*
  182 F.3d 598 (8th Cir. 1999) ................................................................9
*Kentucky v. Graham*
  473 U.S. 159 (1985) ................................................................... 12, 13
*Lankford v. Sherman*
  451 F.3d 496 (8th Cir. 2006) ................................................................7
*Los Angeles Cnty., Cal. v. Humphries*
  562 U.S. 29 (2010) ........................................................................14
*Mazurek v. Armstrong*
  520 U.S. 968 (1997) ......................................................................11
*Mettler v. Whitledge*
  165 F.3d 1197 (8th Cir. 1999) ..............................................................14
*Monell v. Dep't of Soc. Servs. of City of New York*
  436 U.S. 658 (1978) ................................................................... *passim*
*N.N. ex re. S.S. v. Madison Metro. Sch. Dist.*
  670 F. Supp. 2d 927 (W.D. Wis. 2009) ....................................................25
*Osborn v. United States*
  918 F.2d 724 (8th Cir. 1990) ................................................................7
*Pembaur v. City of Cincinnati*
  475 U.S. 469 (1986) ........................................................ 1, 17, 18, 19, 20, 24
*Phyllis Schlafly Revocable Trust v. Cori*
  924 F.3d 1004 (8th Cir. 2019) ..............................................................7
*Planned Parenthood Minn., N.D., S.D. v. Rounds*
  530 F.3d 724 (8th Cir. 2008) ................................................................7
*Rodgers v. Bryant*
  942 F.3d 451 (8th Cir. 2019) ................................................................11
*Slaven v. Engstrom*
  710 F.3d 772 (8th Cir. 2013) ................................................................17
*Snyder v. King*
  745 F.3d 242 (7th Cir. 2014) ................................................................25
*Surplus Store & Exchange, Inc. v. City of Delphi*
  928 F.2d 788 (7th Cir. 1991) ........................................................ 20, 21, 25
*Szabla v. City of Brooklyn Park, Minn.*
  486 F.3d 385 (8th Cir. 2007) ................................................................14

*Tarek ibn Ziyad Acad. v. Islamic Relief USA*
  794 F. Supp. 2d 1044 (D. Minn. 2011) .............................................1, 9
*Udoh v. Minnesota Dep't of Human Servs.*,
  No. 16-CV-3119 (PJS/SER), 2017 WL 9249426 (D. Minn. July 26, 2017) .......16
*Ulrich v. Pope Cnty.*
  715 F.3d 1054 (8th Cir. 2013)....................................................1, 15
*United States v. Carrillo*
  380 F.3d 411 (8th Cir. 2004)..........................................................10
*Vives v. City of New York*
  524 F.3d 346 (2d Cir. 2008).......................................... 17, 22, 23, 24
*Watkins Inc. v. Lewis*
  346 F.3d 841 (8th Cir. 2003)........................................................1, 8
*Whitesel v. Sengenberger*
  222 F.3d 861 (10th Cir. 2000)........................................................22
*Winter v. NRDC, Inc.*
  555 U.S. 7 (2008) ......................................................................8

**Statutes**
Minn. Stat. § 382.01....................................................................12
Minn. Stat. § 388.051, subd. 1 .........................................................12
Minn. Stat. § 609.771.............................................................. passim

**Rules**
Fed. R. Civ. Pro. 4......................................................................13
Minn. R. Civ. Pro. 4.03 ................................................................13

# STATEMENT OF ISSUES

1.  Whether the district court, in denying Appellants' motion for preliminary injunction, correctly concluded that Appellant Franson will not suffer irreparable harm absent the requested injunctive relief.

    Apposite Cases and Statutes:

    Minnesota Statutes Section 609.771
    *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003)

2.  Whether Appellants have failed to show they are likely to succeed on the merits of the case against Appellee Larson to warrant remand with instructions to enjoin enforcement of Minnesota Statutes Section 609.771.

    Apposite Cases and Statutes:

    *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978).
    *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986)
    *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013)
    Minnesota Statutes Section 609.771

## STATEMENT OF THE CASE

Appellants are an online political content creator – Kohls – whose content includes AI-generated depictions of political candidates making statements they have not made and a sitting Minnesota State Representative – Franson – who lives in Douglas County, Minnesota, and actively uses social media, sharing content like that created by Kohls. (App. at 9-12, 16; R. Doc. 1 ¶¶ 3-6, 8, 16.) Through this case, Appellants have brought a preemptive challenge to Minnesota Statutes Section 609.771, which they contend violates their First Amendment and Due Process rights, including by chilling their speech.

Appellee Chad Larson is the Douglas County Attorney, and Appellants have sued him in that official capacity. In over 150 pages of Appellants' initial Complaint (App. at 8-58; R. Doc. 1), memoranda in support of their preliminary injunction (R. Docs. 11, 28), and opening appellate brief (Appellants' Br.), Appellants cite almost no facts relevant to Larson or their claims and requested relief against him. Larson has never taken – or even considered – enforcement action under Section 609.771 against Appellants or anyone else or investigated potential violations of this law. (App. at 107; Larson Decl. ¶¶ 4-10.)   Instead, Larson appears to be a defendant in this case simply because he is the County Attorney for the county where Franson resides.

Section 609.771, originally enacted on May 26, 2023 – and of which Franson

voted in favor – prohibits the use of deep fake technology to influence an election.

It defines deep fake technology as:

> any video recording, motion-picture film, sound recording, electronic image, or photograph, or any technological representation of speech or conduct substantially derivative thereof:
>
>> (1) that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct; and
>>
>> (2) the production of which was substantially dependent upon technical means, rather than the ability of another individual to physically or verbally impersonate such individual."

Minn. Stat. § 609.771, subd. 1(c). The statute imposes civil and criminal liability for individuals who disseminate deep fake material without the consent of the depicted individual, with intent to injure a candidate or influence the result of an election, and which takes place either within 90 days before a political party nominating convention, or after the start of the absentee voting period prior to a presidential nomination primary, or a regular or special state or local primary or general election. Minn. Stat. § 609.771, subd. 2.

The legislature amended Section 609.771 in 2024, adding a requirement that courts declare candidates who violate the law to have forfeited their nomination or office and that a candidate convicted of violating the statute is disqualified for appointment to that office or any office for which the legislature establishes qualifications. *Id.*, subd. 3. Notably, the definition for deep fake technology cited

above – and which is at the heart of this lawsuit – was not changed by the 2024 amendments. Under the statute, the attorney general, a county or city attorney, the individual depicted in the deep fake material, and any candidate for public office who is or may be injured by the dissemination of such content may maintain a cause of action for injunctive or equitable relief against those believed to have violated the statute. *Id.*, subd. 4.

Appellants filed the present lawsuit in late September 2024, over sixteen months after the challenged law was enacted in May 2023. (*See* App. at 56; R. Doc 1 (filed on September 27, 2024).) Appellants contend that through their online political conduct, they are at risk of violating the provisions of the statute and thus incurring liability. (App. at 9-12; R. Doc. 1 ¶¶ 3-6.) Both specifically identify a July 2024 video created by Kohls and shared by Franson as an example of online political conduct exposing them to liability under Section 609.771. (*See* App. at 11, 16; R. Doc. 1 ¶¶ 5, 16-17.)

Two weeks after filing this lawsuit, Appellants brought a motion for preliminary injunction to enjoin Appellee Ellison and Larson from enforcement of Section 609.771. (R. Doc. 10 (filed on October 10, 2024).) Larson opposed the motion, primarily on the bases that Appellants had not suffered irreparable harm and cannot prevail on the merits of their claims against Larson specifically. The district court denied the motion for preliminary injunction.

With respect to Appellant Kohls, the district court found that Kohls did not have standing. (App. at 130-131; R. Doc. 47 at 11-12.) The district court concluded that Section 609.771 does not penalize pure parody or satire because it only proscribes a deepfake insofar as it "is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." (App. at 129; R. Doc. 47 at 10 (quoting Minn. Stat. § 609.771, subd. 1(c)(1).) The district court found that based on the record before it, which showed Kohls' repeated "parody" disclaimers on his deepfake videos, Kohls has only ever posted constitutional parody. (App. at 130; R. Doc. 47 at 11.) Accordingly, the conduct alleged in the Complaint did not fall within the ambit of Section 609.771. (App. at 130; R. Doc. 47 at 11.)

With respect to Franson, the district court found that she had posted a video without any "parody" disclaimer. (App. at 132; R. Doc 47 at 13.) Thus, Franson had arguably engaged in conduct prohibited under Section 609.771 and had standing. However, the district court then correctly found that Franson has not suffered irreparable harm and thus is precluded from obtaining a preliminary injunction. (App. at 142; R. Doc. 47 at 23.) The district court reasoned that Franson's delay in seeking a preliminary injunction and the fact that she voted in favor of the statute from which she now seeks relief show that she is not at risk of irreparable harm but-for the requested injunctive relief.

Appellants now appeal the district court's denial of their motion for a preliminary injunction.

## SUMMARY OF THE ARGUMENT

In May 2023, the Minnesota legislature passed Section 609.771, prohibiting the use of deep fake technology to influence an election. Franson voted in favor of the bill. Well over a year later, Appellants brought the present lawsuit, alleging that Section 609.771 constitutes an unconstitutional restraint on speech. The district court properly denied Appellants' motion for preliminary injunction to enjoin enforcement of Section 609.771.

Contrary to Appellants' claims, Franson has not suffered irreparable harm. The district court properly found that Franson's delay of nearly sixteen months between the enactment of Section 609.771 and the present lawsuit undermined her claim of irreparable harm but-for the requested injunctive relief. [1]

Further, even if the Court were to consider the issue of Appellants' likelihood of success on the merits – as Appellants ask this Court to do – they have failed to show they are likely to succeed on their claims against Larson. Specifically, they have failed to state a valid constitutional claim against Larson and his employer

---

[1] The district court also properly concluded that Kohls lacked standing because he failed to identify conduct that is "arguably proscribed" by Section 609.771. (App. at 130; R. Doc. 47 at 11). However, because Larson did not brief or argue this issue at the district court, Larson will not address it on appeal.

Douglas County because they have failed to satisfy *Monell* by establishing that Larson or the County has an unconstitutional municipal policy or custom or that they are responsible for the purported constitutional deprivation. Appellants have made no argument to the contrary, simply choosing to ignore this fatal flaw in their claim against Larson.

## ARGUMENT

### I.  STANDARD OF REVIEW.

This Court reviews the denial of a preliminary injunction for abuse of discretion. *Phyllis Schlafly Revocable Trust v. Cori*, 924 F.3d 1004, 1009 (8th Cir. 2019). A district court abuses its discretion if it "rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 733 (8th Cir. 2008) (en banc) (quoting *Lankford v. Sherman*, 451 F.3d 496, 503-04 (8th Cir. 2006)).

### II.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION WHEN IT CONCLUDED THAT FRANSON CANNOT SHOW IRREPARABLE HARM SUFFICIENT TO SUPPORT APPELLANTS' MOTION FOR INJUNCTIVE RELIEF AGAINST LARSON.

The cornerstone of any motion for injunctive relief "has always been irreparable harm and inadequacy of legal remedies." *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (quoting *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506-07 (1959)). A party seeking injunctive relief must show that it will be irreparably harmed if the court does not issue the requested injunction. *Winter v.*

*NRDC, Inc.*, 555 U.S. 7, 22 (2008). Indeed, "[f]ailure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (citing *Adam–Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996)). Put another way, "[o]nce a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 420 (8th Cir. 1987).

Here, the district court properly found that Franson has not made a showing of irreparable harm. Franson knew about Section 609.771 – its contents and its reach – when she voted in favor of the law in 2023. Likewise, she knew about the amendments to Section 609.771 when the Legislature approved them in the spring of 2024. Moreover, she was well aware of this law at the time she disseminated a video, made by Kohls, in July 2024 that she contends "plausibly fall[s] within the scope" of this law. (App. at 11; R. Doc. 1 ¶ 5.) Yet neither she nor Kohls did anything to challenge Section 609.771 until late September 2024. (*See* App. at 58; R. Doc. 1 at p.51) (showing Franson signed the verification of the complaint on September 26, 2024).) They then waited another two weeks to bring the preliminary injunction motion at issue on appeal. (*See* R. Doc. 10 (filed October 11, 2024)).

"[I]t has . . . long been recognized that a plaintiff's delay in seeking relief may justify denying a request for injunctive relief because it belies claims of irreparable

injury." *Tarek ibn Ziyad Acad. v. Islamic Relief USA*, 794 F. Supp. 2d 1044, 1059 (D. Minn. 2011) (citing *Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999)). Franson's delay in seeking injunctive relief illustrates that there is no actual or immediate harm that exists. *See Grow Biz Int'l, Inc. v. MNO, Inc.*, No. 01-1805, 2002 WL 113849, at *8 (D. Minn. Jan. 25, 2002) (holding that a two and a half month delay rebuts a presumption of irreparable harm to movant); *see also Bergerson v. Deephaven Capital Mgmt., LLC*, No. 03-1090, 2003 WL 1824964, at *3 (D. Minn. Apr. 4, 2003) (finding that a three month delay negated movant's contention of threat of irreparable harm).[2]

The district court correctly determined that the sixteen-month delay between when Section 609.771 was passed – and at which point Franson became aware of the law's scope and purported "overbreadth" – and when Appellants sought injunctive relief show that there is no irreparable harm absent the requested injunctive relief. Accordingly, the district court did not abuse its discretion in denying the motion for a preliminary injunction.

---

[2] To the extent the Court considers irreparable harm to Kohls, the analysis as it relates to Franson applies similarly to Kohls. Kohls waited eleven weeks between posting a deepfake video he deems consequential to his potential liability under the statute and seeking the preliminary injunction at issue in this appeal. This delay belies his claim of irreparable injury.

**III.  APPELLANTS CANNOT SHOW THAT THEY ARE LIKELY TO SUCCEED ON THE MERITS OF THEIR CLAIMS AGAINST LARSON.**

While the district court denied Appellants' preliminary injunction motion without reaching the issue of Appellants' likelihood of success on the merits, on appeal, Appellants again argue they are likely to succeed on the merits. With this, they ask the Court to reverse the denial of the preliminary injunction and remand with instructions to enjoin enforcement of Section 609.771. Appellants, however, focus their argument only on the substance of their First Amendment claim, without establishing a legal basis for bringing a preemptive constitutional challenge to a state law against a county attorney who has never engaged with the law in any way.

Instead, just as they did before the district court, Appellants fail to establish Larson as a proper defendant to their constitutional claims and ignore Larson's arguments that, under *Monell* and its progeny, they are unlikely to succeed in their claims against him.[3] They have thus waived any argument on these points. *Gardner v. Wal-Mart Stores, Inc.*, 2 F.4th 745, 749 (8th Cir. 2021) (does not consider issues raised for the first time on appeal); *United States v. Carrillo*, 380 F.3d 411, 413 (8th Cir. 2004) ("[A]bsent some reason for failing to raise an argument in an opening

---

[3] Appellants' only response to Larson's *Monell* argument was to state they are not bringing a *Monell* claim against Larson. R. Doc. 28, p. 16, n.7; App. at 200. They have made no attempt to reconcile this bald assertion with the facts or law or to argue that there is a viable alternative theory of liability against Larson.

brief, [the Eighth Circuit] do[es] not consider an argument first raised in a reply brief."). Nonetheless, Larson addresses this issue to preserve its argument in the event the Court decides to consider it.

A party moving for a preliminary injunction cannot prove that it is likely to succeed on the merits of its claims if the non-moving party demonstrates that the moving party could not withstand a motion for summary judgment. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasizing that the movant, by a clear showing, carries the burden of persuasion and must present proof even more substantial than that required on a motion for summary judgment). Indeed, the Supreme Court has held that to prevail on a preliminary injunction motion, the moving party not only carries the burden of persuasion, by a clear showing, but that the movant must show proof more substantial than that required on a motion for summary judgment. *Id.* Further, parties seeking to preliminarily enjoin enforcement of a state statute must demonstrate that they are "likely to prevail on the merits." *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019).

Here, Appellants' claims fail on all fronts. Larson defers to Appellee Ellison's arguments as to the constitutionality of Section 609.771 and, as it did before the district court, adopts them for purposes of this appeal. Beyond failing on those grounds, Appellants could not survive summary judgment and therefore could not prevail on their request for injunctive relief against Larson specifically because

Appellants cannot satisfy the requirements of *Monell* to support their constitutional claim against Douglas County.

### A. *Monell* applies to Appellants' constitutional claims against Larson.

Appellants assert their Section 1983 claim against Larson in his official capacity as the Douglas County Attorney. Official-capacity suits are "another way of pleading an action against an entity that employs an officer." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978)); *see also Hafer v. Melo*, 502 U.S. 21, 27 (1991) ("[O]fficers sued for damages in their official capacity . . . assume the identity of the government that employs them.") (citation omitted)). Here, that entity is Douglas County. *See* Minn. Stat. §§ 382.01 (designating the county attorney as a county "officer"); 388.051, subd. 1 (enumerating duties that each county attorney owes their county and its staff as chief legal officer).

Not only does the law support the conclusion that Appellants' constitutional official-capacity claims are stated against Douglas County itself, Appellants own conduct demonstrates their attempt to impose constitutional liability on Douglas County by way of Larson. Specifically, Plaintiffs effected service on Larson, in his official capacity as Douglas County Attorney, by personally serving the summons

and complaint on the Douglas County Auditor (App. at 106; Larson Decl. ¶ 2),[4] which is consistent with the rules for personal service on a Minnesota county in place at the time service was effected. *See* Fed. R. Civ. Pro. 4(j)(2)(B) (deferring to state law for service of a summons on a local government); Minn. R. Civ. Pro. 4.03(e)(1) (2024)[5] (directing that service of a defendant county is completed by delivering a copy of the summons on the chair of the county board or the county auditor). Larson himself was never personally served. (App. at 106; Larson Decl. ¶ 2.)

Moreover, Appellants seek an award of nominal damages against Larson, but not Ellison. (*See* App. at 55; R. Doc. 1 at 48.) This is a clear acknowledgement that Appellants are pursuing this claim against Douglas County specifically, which cannot escape a claim for damages under Eleventh Amendment immunity applicable to the state. *See Kentucky*, 473 U.S. at 169-70 (explaining that the Eleventh Amendment bars a damages action against state officials sued in their official capacity).

The fact that Appellants are pursuing this constitutional claim against Douglas County by way of an official-capacity claim against Larson matters because "a municipality cannot be held liable solely because it employs a tortfeasor." *Monell*,

---

[4] Specifically, a deputy auditor was authorized to accept service on behalf of the County at the time service was effected.

[5] Minnesota Rule of Civil Procedure 4.03(e)(1) was subsequently amended, effective January 1, 2025.

436 U.S. at 691. Rather, to prevail on their official-capacity claims against Larson, Appellants must show that the County "caused the constitutional violation at issue." *Elder–Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (quotation omitted). "Thus, [the] first inquiry . . . is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also Los Angeles Cnty., Cal. v. Humphries*, 562 U.S. 29, 36-37 (2010) (holding that *Monell*'s policy or custom requirement applies equally in Section 1983 cases seeking equitable relief only).

To prove the existence of a policy, plaintiffs must point to "an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) ("[O]nly those municipal officials who have final policymaking authority may by their actions subject the government to Section 1983 liability.") (internal quotation marks omitted)). Further, plaintiffs must "demonstrate that the policy itself is unconstitutional," *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 395 (8th Cir. 2007) (citations omitted), and that the policy is the "moving force" behind the violation of their constitutional rights. *Mettler*, 165 F.3d at 1204 (quoting *Monell*, 436 U.S. at 694).

Accordingly, to state a claim against Douglas County here, Appellants must

plead facts plausibly suggesting that: (1) the County has an unconstitutional policy, of which (2) Larson is the policymaker, and that (3) is the "moving force" behind the alleged violation of their First Amendment free speech rights. They have not and cannot make this showing. As such, their request that this Court reverse the district court's preliminary injunction denial and remand with instructions to enjoin enforcement against Larson must be denied.

### B. Appellants' Section 1983 claims against Larson fail under Monell for want of an allegedly unconstitutional County policy.

As a threshold matter, Appellants have not identified a Douglas County policy that they allege is unconstitutional or the "moving force" behind the alleged violation of their First Amendment or Due Process rights. They have not even alleged that any such County policy exists or that Larson, acting in his role as a County official, engaged in policymaking that resulted in their alleged constitutional injury. (*See generally* App. at 8-48; R. Doc. 1.) In fact, they say almost nothing about Larson at all, noting only that he is the County Attorney of the County where Franson resides and is the elected criminal prosecutor, with authority to take criminal or civil enforcement action under Section 609.771. (App. at 17; R. Doc. ¶ 19.)

The undisputed facts are that Larson and his County employer do not have any policy related to dissemination of deep fake content, much less a policy that sets any sort of restriction on or proscribes enforcement mechanisms for disseminating such content. This alone would be sufficient to grant summary judgment and thus to deny

the Appellants' request for a preliminary injunction against Larson. *See, e.g.*, *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused a constitutional deprivation); *Calhoun v. Washington Cnty. Cmty. Servs. Child Support Unit*, No. 18-CV-1881 (ECT/HB), 2019 WL 2079834, at *5 (D. Minn. Apr. 23, 2019) (recommending dismissal of a Fourteenth Amendment claim where plaintiff did not identify a municipal policy or custom that caused his alleged constitutional injuries), *adopted by* 2019 WL 2075870 (D. Minn. May 10, 2019); *Udoh v. Minnesota Dep't of Human Servs.*, No. 16-CV-3119 (PJS/SER), 2017 WL 9249426, at *7 (D. Minn. July 26, 2017) (dismissing *Monell* claim challenging constitutionality of state law, where plaintiffs failed to allege a municipal policy that violated their due process rights), *adopted by* 2017 WL 4005606 (D. Minn. Sept. 12, 2017), *aff'd* 735 Fed. App'x. 906 (8th Cir. 2018) (per curiam memorandum). Appellants' failure to plead the existence of a policy or custom is fatal to their ability to succeed on their claims against Larson and thus fatal to their request for a preliminary injunction as it relates to Larson.

### C. *Larson's statutory authority to enforce Section 609.771 is not a municipal policy for Monell purposes.*

Instead of identifying a County policy underlying their alleged constitutional injury, Appellants seek to impose Section 1983 liability on Douglas County based on state law alone. In other words, they seek to hold the County constitutionally

liable – both for injunctive and monetary relief – because the state allows Larson to civilly or criminally enforce Section 609.771, even where he has never done so and he has absolutely no control over the law.[6] To the extent the Court is willing to entertain whether this state law can be imputed to the County for *Monell* purposes given Appellants' failure to otherwise identify a County policy allegedly underlying their Section 1983 claims against Larson, as set forth below, the Court should properly reject any such argument.

Neither the U.S. Supreme Court nor the Eighth Circuit has directly decided whether a municipality, like Douglas County here, can be liable under *Monell* based solely on its employee's act of enforcing an allegedly unconstitutional state law. *See Slaven v. Engstrom*, 710 F.3d 772, 781 n.4 (8th Cir. 2013) ("Whether, and if so when, a municipality may be liable under Section 1983 for its enforcement of state law has been the subject of extensive debate in the circuits.") (citing *Vives v. City of New York*, 524 F.3d 346, 351-53 (2d Cir. 2008)); *Duhe v. City of Little Rock*, 902 F.3d 858, 863 n.2 (8th Cir. 2018) (calling this "a thorny issue"). But the Supreme Court has been quite clear that "*Monell* is a case about responsibility," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986), and there can be no doubt that responsibility for any alleged constitutional harm resulting from Section 609.771 does not fall on

---

[6] This is in contrast to Franson, who is a sitting legislator and voted in favor of this law in 2023, which contains substantially similar restrictions on dissemination of deep fake content as Section 609.771 presently does after 2024 amendments.

Douglas County or its County Attorney.

While *Monell* itself is specifically about the imposition of vicarious liability on municipal bodies in their role as an employer of a constitutional tortfeasor, the core tenet of *Monell* and its progeny is that municipalities should be held liable for only their own acts. Stated another way, *Monell* is meant to prevent municipalities from bearing responsibility for controlling the conduct or decisionmaking of others. *Id.* To constitute a "policy" for *Monell* purposes, the Supreme Court has stated that "'policy' generally implies a course of action consciously chosen from among various alternatives" and requires that the municipal policy itself have caused the alleged constitutional violation, rather than the alleged constitutional violation simply being the result of a general and otherwise constitutional "policy." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). The Court reiterated this position in *Pembaur*, holding "municipal liability under Section 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483. The Court has been quite clear that, "at the least," the requirements of *Monell* are "intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decisionmakers." *Tuttle*, 471 U.S. at 821.

In this case, it was not a County policy that has allegedly violated or burdened

Appellants' constitutional rights, but rather state law. Section 609.771 itself proscribes the prohibited conduct, while naming county attorneys as one of the enforcing authorities. Neither Larson, nor his County employer, asked for or assigned themselves this authority through their own legislative process, decisionmaking, or otherwise. Being handed certain authority, without more, is the antithesis of "deliberate" or "conscious" choice and unequivocally establishes that Larson is not an "official[] responsible for establishing final policy with respect" to the challenged statute. *See Pembaur*, 475 U.S. at 483. As such, the U.S. Supreme Court instructs that there can be no finding of a County policy or custom in these circumstances as required to satisfy *Monell* and liability under Section 1983 does not attach to Larson or Douglas County.

Consistent with this, several Circuits agree that the authority to enforce state law and even acting to enforce it (which Larson has not done), without more, is not a municipal policy for *Monell* purposes. For example, in *Familias Unidas v. Briscoe*, the Fifth Circuit considered a challenge to a Texas statute authorizing county judges to demand public disclosure of organizations' memberships on the basis that this law violated First Amendment free association rights. 619 F.2d 391, 394-96 (5th Cir. 1980). The plaintiff in that case sued a county judge, in the judge's official capacity, who applied this law to the plaintiff and asked the court to declare the law facially unconstitutional. *Id.* The Fifth Circuit found that the plaintiff had not satisfied the

requirements of *Monell* to hold the county liable for the county judge's application of the disclosure statute. *Id.* at 404. In reaching this conclusion, the court explained that the judge's duty to implement the challenged statute, "much like that of a county sheriff in enforcing state law, may more fairly be characterized as the effectuation of the policy of the State of Texas embodied in that statute" and was not attributable to the county. *Id.*

Similarly, in *Surplus Store & Exchange, Inc. v. City of Delphi*, the Seventh Circuit was faced with a claim by a pawn shop alleging that a city police officer violated its constitutional right to due process by seizing rings pursuant to Indiana statutes without first holding a hearing. 928 F.2d 788, 790 (7th Cir. 1991). In an attempt to comply with the requirements of *Monell*, the pawn shop argued that the city's "decision simply to enforce" the allegedly unconstitutional state statutes constituted a municipal policy causing its constitutional injury. *Id.* at 791. Consistent with the Supreme Court's discussions in *Tuttle* and *Pembaur*, the Seventh Circuit rejected this argument out of hand, explaining:

> It is difficult to imagine a municipal policy more innocuous and constitutionally permissible, and whose causal connection to the alleged violation is more attenuated, than the "policy" of enforcing state law. If the language and standards from *Monell* are not to become a dead letter, such a "policy" simply cannot be sufficient to ground liability against a municipality.

*Id.* at 791-92. The court further rejected the argument that a city has adopted state

law, thereby establishing a policy, by not simply ignoring the law, explaining this "would allow municipalities to be nothing more than convenient receptacles of liability for violations caused entirely by state actors – here, the [state] legislature." *Id.* at 791 n.4. Instead, the court stated that to hold the city liable under Section 1983, a policy or custom actually attributable to the city had to have caused the violation, meaning the fault for the constitutional deprivation had to lie with the city itself, not an employee or a state statute. *Id.* at 793.

Piggybacking off of this, in *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, the Seventh Circuit refused to subject a county to Section 1983 liability for following state law, explaining that "[w]hen the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury." 154 F.3d 716, 718 (7th Cir. 1998). It explained that this position "has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government." *Id.*

The Fourth and Tenth Circuits have also reached the conclusion that a municipality's compliance with a state-established policy is insufficient to satisfy *Monell* to establish Section 1983 liability against the municipality. In *Brockes v. Fields*, the Fourth Circuit held that a county social services board did not act in a policy-making capacity when it fired the plaintiff in accordance with a

comprehensive personnel handbook issued by the state social services board that county boards were required to follow. 999 F.2d 788, 791 (4th Cir. 1993). The court reasoned that even though the county board "enjoyed its discretion" to terminate the employee, it did so "at the prerogative of and within the constraints imposed by" the state and "[s]uch bounded, state-conferred discretion" did not constitute policymaking authority sufficient to confer liability under Section 1983. *Id.* The Tenth Circuit similarly "emphasize[d]" that a municipal board cannot be liable under Section 1983 "for merely implementing a policy created by the state," but rather must be "the moving force" behind the action allegedly causing a constitutional injury. *Whitesel v. Sengenberger*, 222 F.3d 861, 872 (10th Cir. 2000).

In addressing this question of whether state law can be imputed to a municipality for purposes of Section 1983 liability, the Second Circuit provided an analysis of how its sister circuits had addressed this question. *See Vives v. City of New York*, 524 F.3d 346 (2d Cir. 2008). In doing so, the Second Circuit held that for *Monell* liability to attach, a municipal policymaker must "have focused on the particular statute in question" and "there must have been conscious decision making by the [municipality's] policymakers" regarding how to enforce the statute. 524 F.3d at 353. In other words, a municipality must "put flesh on the bones" of an allegedly unconstitutional statute by, for example, "instruct[ing] officers that they could make arrests for constitutionally protected conduct." *Id.* at 356. Thus, a "conscious choice

to enforce [a] statute in an unconstitutional manner" can constitute a cognizable Monell policy. *Id.*

The court explained that while other circuits – namely the Sixth, Ninth, and Eleventh – had addressed this issue differently, "in each case the policymaker was alleged to have gone beyond merely enforcing the state statute." *Id.* at 351; *accord Garner v. Memphis Police Dep't*, 8 F.3d 358, 364-65 (6th Cir. 1993) (finding *Monell* policy where city policymakers made a deliberate choice to allow the use of deadly force and identify circumstances warranting such use, because the use of force, while authorized, was not required under state law); *Cooper v. Dillon*, 403 F.3d 1208, 1221-23 (11th Cir. 2005) (finding *Monell* policy where municipality enacted an ordinance prohibiting all crimes proscribed by state law and took action to enforce an unconstitutional law under this ordinance where enforcement was not required under state law); *Evers v. Custer County*, 745 F.2d 1196, 1198 (9th Cir. 1984) (finding *Monell* policy where county board issued a declaration that road was public and instigated criminal action, even though state law allowed the county to make such a declaration). In other words, these cases can be harmonized as standing for the proposition that enforcing a state law is not a *Monell* policy unless a municipal policymaker consciously chooses to enforce the law unconstitutionally. *Cf. City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation

alleged."); *Doby v. DeCrescenzo*, 171 F.3d 858, 868 (3d Cir. 1999) ("[W]hen a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable under the Monell line of cases.") (citations omitted).

In essence, to the extent that other Circuits have addressed the question of whether a plaintiff can rest on state law to satisfy the *Monell* requirements when raising a Section 1983 claim against a municipality, the short and unequivocal answer is no. This is wholly consistent with the Supreme Court's *Monell* analysis and decree that there can be no municipal liability under Section 1983 absent actual, intentional policymaking by the municipality itself. *See Tuttle*, 471 U.S. at 823; *Pembaur*, 475 U.S. at 483. *Monell* is satisfied if, and only if, the municipality goes beyond merely enforcing or complying with a state law by putting "flesh on the bones" of the statute, *see Vives*, 524 F.3d at 324, by adding to its plain language in some way. This has not happened here – there is no dispute on this point.

Unlike Franson, the County and Larson had no role in enacting Section 609.771. Moreover, Larson has taken no enforcement action under that law, or even considered it. Larson has not, in fact, exercised any conscious or deliberate choice as it relates to Appellants' alleged constitutional injuries – the purported chilling of their speech – by the way he has engaged with Section 609.771. To be sure, having never acted on the authority it affords him, Larson certainly has not undertaken to supplement or go beyond the requirements of that state law.

Because the law bars Appellants from relying on Section 609.771 alone to establish *Monell* liability against Larson, it thus follows that Appellants cannot prevail on the merits of their claims against him to impose constitutional liability on Douglas County. The find otherwise, thereby requiring Larson and his County employer to serve as "convenient receptacles of liability for violations caused entirely by" the state, *Surplus Store*, 928 F.2d at 791 n.4, would pit these local governments against the state government and undermine *Monell*'s central holding that municipalities should be liable under Section 1983 for only their own alleged constitutional wrongs.

### D.     *The alleged threat of harm is not caused by a Douglas County policy.*

The lack of a cognizable *Monell* policy notwithstanding, Appellants also cannot establish that any County policy is the "moving force" behind the harm they supposedly have suffered or stand to suffer. Part and parcel of Appellants' contention that the restrictions imposed by Section 609.771 are irredeemably unconstitutional is the unavoidable conclusion that the statute itself is the sole cause of their alleged constitutional injury. *See, e.g.*, *N.N. ex re. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 941 (W.D. Wis. 2009) (noting that when a plaintiff cannot "point to a separate policy choice made by the municipality . . . it is the policy contained in [the challenged] law, rather than anything devised or adopted by the municipality, that is responsible for the injury" (quotations and citation omitted));

*Snyder v. King*, 745 F.3d 242, 247 (7th Cir. 2014) ("To say that [a] direct causal link exists when the only local government 'policy' at issue is general compliance with the dictates of state law is a bridge too far; under those circumstances, the state law is the proximate cause of the plaintiff's injury.") (citations omitted); *see also Calhoun*, 2019 WL 2079834, at *5 (finding that "any alleged violation of Plaintiff's due process rights … was the result of action undertaken by an entity separate and distinct from Washington County").

Even if Appellants had or could identify a viable Douglas County policy to satisfy *Monell*, their official-capacity claims against Larson nevertheless fail for want of causation. Unless the test set out in *Monell* is to "become dead letter," *Tuttle*, 471 U.S. at 823, and municipalities are to be held vicariously (and strictly) liable based solely on their employees' legislatively-conferred authority to enforce an allegedly unconstitutional state law, this Court should deny Appellants' motion for a preliminary injunction against Larson. Simply put, Appellants have not carried their burden of making a clear showing that they are likely to prevail on the merits of their claims against Larson.

**CONCLUSION**

For these reasons, Larson respectfully asks this Court to affirm the district court's denial of Appellants' motion for a preliminary injunction.

**SQUIRES, WALDSPURGER & MACE, P.A.**

Dated: May 19, 2025

*/s/ Kristin C. Nierengarten*
Kristin C. Nierengarten (#395224)
Zachary J. Cronen (#397420)
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: kristin.nierengarten@raswlaw.com
         zachary.cronen@raswlaw.com

**ATTORNEYS FOR APPELLEE CHAD LARSON**

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. Civ. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,552 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2310 in Times New Roman font, 14-point.

3.      The brief and addendum have been scanned for viruses and are virus free.

**SQUIRES, WALDSPURGER & MACE, P.A.**

Dated: May 19, 2025

*/s/ Kristin C. Nierengarten*
Kristin C. Nierengarten (#395224)
Zachary J. Cronen (#397420)
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: kristin.nierengarten@raswlaw.com
 zachary.cronen@raswlaw.com

**ATTORNEYS FOR APPELLEE CHAD LARSON**

# CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by

using the CM/ECF system. I certify that all participants in this case are registered

CM/ECF users and that service has been accomplished by the CM/ECF system.

**SQUIRES, WALDSPURGER &
MACE, P.A.**

Dated: May 19, 2025

*/s/ Kristin C. Nierengarten*
Kristin C. Nierengarten (#395224)
Zachary J. Cronen (#397420)
333 South Seventh Street, Suite 2800
Minneapolis, MN 55402
Phone: (612) 436-4300
Fax: (612) 436-4340
Email: kristin.nierengarten@raswlaw.com
 zachary.cronen@raswlaw.com

**ATTORNEYS FOR APPELLEE CHAD
LARSON**