# No. 25-1300

## In the United States Court of Appeals for the Eighth Circuit

Christopher Kohls; Mary Franson,
*Plaintiffs-Appellants,*

*v.*

Keith M. Ellison, in his official capacity as Attorney General of Minnesota; Chad Larson, in his official capacity as County Attorney of Douglas County,
*Defendants-Appellees,*
_____

Appeal from the United States District Court for the District of Minnesota,
Case No. 0:24-cv-03754-LMP-DLM,
Hon. Laura M. Provinzino

### Reply Brief of Christopher Kohls and Mary Franson

Douglas P. Seaton
James V. F. Dickey
Alexandra K. Howell
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
Phone: (612) 428-7000
Email: james.dickey@umlc.org

Adam E. Schulman
Michael Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

*Attorneys for*
*Plaintiffs-Appellants Kohls and Franson*

# Table of Contents

Table of Contents ..................................................................................................................i

Table of Authorities ............................................................................................................ ii

Introduction ........................................................................................................................ 1

Argument ............................................................................................................................ 2

I.    Plaintiffs have standing because section 609.771 "arguably proscribes" both their speech and that of others reposting it. ..................... 2

    A.    The statute at least "arguably" criminalizes Plaintiffs' speech. ....... 3

    B.    The statute at least "arguably" criminalizes the resharing of Kohls' speech on social media. .....................................................................10

    C.    Certification is unwarranted .........................................................................11

II.    Plaintiffs demonstrated irreparable harm. ........................................................12

III.    The Court should remand with instructions to enjoin Defendants from enforcing the statute because it flagrantly infringes core political speech. .....................................................................................................16

IV.    This Court should provide more guidance than a bare remand. ...............26

V.    *Monell* doesn't apply to this *Ex parte Young* action. ........................................27

Conclusion ........................................................................................................................28

Combined Certifications of Compliance.......................................................................29

Certificate of Service .......................................................................................................30

# Table of Authorities

## Cases

*281 Care Committee v. Arneson*,
    766 F.3d 774 (8th Cir. 2011).......................................................................... 3, 4, 14

*281 Care Committee v. Arneson,*
    766 F.3d 774 (8th Cir. 2014)............................................................................. *passim*

*Amoco Prod. Co. v. Vill of Gambell.*,
    480 U.S. 531 (1987) ........................................................................................ 12

*Animal Legal Def. Fund v. Reynolds*,
    8 F.4th 781 (8th Cir. 2021) ....................................................................... 16, 18, 24

*Arizona Free Enter. Club's Freedom Club PAC v. Bennett.*,
    564 U.S. 721 (2011) ...................................................................................... 25

*Beard v. Falkenrath*,
    97 F.4th 1109 (8th Cir. 2024) ....................................................................... 26-27

*Bernards v. United of Omaha Life Ins. Co.*,
    987 F.2d 486 (8th Cir. 1993)......................................................................... 13

*Brown v. Ent'mt Merchants Ass'n*,
    564 U.S. 786 (2011) ................................................................................5, 16-17, 22

*Burnham v. Ianni,*
    119 F.3d 668 (8th Cir. 1997)......................................................................... 23

*Burson v. Freeman,*
    504 U.S. 191 (1992) ...................................................................................... 21

*Christian Action League v. Freeman*,
    31 F.4th 1068 (8th Cir. 2022) .........................................................................7

*Citizens United v. FEC*,
558 U.S. 310 (2010) ................................................................ 2, 24

*Commonwealth v. Lucas*,
34 N.E.3d 1242 (Mass. 2015) ......................................... 18, 19

*Counterman v. Colorado*,
600 U.S. 66 (2023) ......................................................................7

*Doe v. S. Iron R-1 Sch. Dist.,*
498 F.3d 878 (8th Cir. 2007) .....................................................8

*Edenfield v. Fane,*
507 U.S. 761 (1993) ..................................................................21

*Evans v. City of Helena-West Helena*,
912 F.3d 1145 (8th Cir. 2019) ................................................27

*Ex parte Young*,
209 U.S. 123 (1908) ..............................................................27-28

*FEC v. Cruz,*
596 U.S. 289 (2022) ..................................................................19

*Florida v. HHS,*
19 F.4th 1271 (11th Cir. 2021) .......................................13-14

*Forsyth Cty. v. Nationalist Movement,*
505 U.S. 123 (1992) ..................................................................10

*GEICO Cas. Co. v. Isaacson,*
932 F.3d 721 (8th Cir. 2019) ..................................................26

*GLBT Youth in Iowa School Task Force v. Reynolds,*
114 F.4th 660 (8th Cir. 2024) ................................................25

*Grimmett v. Freeman,*
   59 F.4th 689 (4th Cir. 2023)..............................................................................23-24

*Gross v. United States*,
   390 U.S. 62 (1968)......................................................................................26

*Grow Biz Int'l, Inc. v. MNO, Inc.*,
   No. 01-1805, 2002 WL 113849 (D. Minn. Jan. 25, 2002)..............................15

*Hanson v. Smith*,
   120 F.4th 223 (D.C. Cir. 2024)...............................................................13

*Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*,
   115 F.4th 889 (8th Cir. 2024)..................................................................12

*Houston v. Hill.*,
   482 U.S. 451 (1987)...................................................................................11

*Huizenga v. Indep. Sch. Dist. No. 11*,
   44 F.4th 806 (8th Cir. 2022)...................................................................10

*Iancu v. Brunetti,*
   588 U.S. 388 (2019)..............................................................................23, 24

*Interactive Digital Software Ass'n v. St. Louis Cnty.*,
   329 F.3d 954 (8th Cir. 2003)...............................................................16, 21

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018).....................................................................................6

*Kohls v. Bonta*,
   752 F. Supp. 3d 1187 (E.D. Cal. 2024)...........................................16, 17, 22

*Kuklenski v. Medtronic USA, Inc..*,
   134 F.4th 528 (8th Cir. 2025)..................................................................11

iv

*Lackey v. Stinnie*,
    145 S. Ct. 659 (2025) ...................................................................8

*Mader v. United States.*,
    654 F.3d 794 (8th Cir. 2011)....................................................... 12

*Matal v. Tam*,
    582 U.S. 218 (2017) .............................................................. 23, 24

*McIntyre v. Ohio Elections Commission*,
    514 U.S. 334 (1995) ...............................................................20-21

*McMillian v. Monroe Cty.*,
    520 U.S. 781 (1997) ...................................................................27

*Miller v. Ziegler*,
    109 F.4th 1045 (8th Cir. 2024) ...............................................23

*Minn. RFL Republican Farmer Labor Caucus v. Freeman*,
    2020 WL 1333154, 2020 U.S. Dist. LEXIS 49778 (D. Minn. Mar. 23,
    2020) ............................................................................................27

*Minn. Voters All. v. Mansky.*,
    585 U.S. 1 (2018)......................................................... 11-12, 18

*Missouri v. Yellen*,
    39 F.4th 1063 (8th Cir. 2022) ...............................................9-10

*Missouri Broadcasters Ass'n v. Schmitt*,
    946 F.3d 453 (8th Cir. 2020)................................................... 22

*Missourians for Fiscal Accountability v. Klahr*,
    830 F.3d 789 (8th Cir. 2016).......................................................9

*Moms for Liberty v. Brevard Pub. Sch.*,
    118 F.4th 1324 (11th Cir. 2024).................................................9

*Monell v. Dep't of Soc. Servs of City of New York.*,
    436 U.S. 658 (1978) .................................................................27-28

*Moody v. NetChoice,*
    603 U.S. 707 (2024) .................................................................24-25

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ..........................................................................8

*NIFLA v. Becerra,*
    585 U.S. 755 (2018) .....................................................................24

*NetChoice, LLC v. Attorney General, Fla.,*
    34 F.4th 1196 (11th Cir. 2022) .................................................25

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) .....................................................................11

*Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.*,
    83 F.4th 658 (8th Cir. 2023)........................................................7

*Presson v. Reed*,
    65 F.4th 357 (8th Cir. 2023).........................................................8

*Rickert v. State Pub. Disclosure Comm'n*,
    168 P.3d 826 (Wash. 2007)(*en banc*)......................................... 18, 19

*Riley's Am. Heritage Farms v. Elsasser*,
    29 F.4th 484 (9th Cir. 2022)...................................................27-28

*Rodgers v. Bryant,*
    942 F.3d 451 (8th Cir. 2019)........................................................9

*Round v. Clements*,
    495 Fed. App'x 938 (10th Cir. 2012) .......................................27

*Salier v. Walmart, Inc..,*
76 F.4th 796 (8th Cir. 2023) ........................................................... 11

*Scheffler v. Molin,*
743 F.3d 619 (8th Cir. 2014) ............................................................ 9

*Sch. of the Ozarks, Inc. v. Biden,*
41 F.4th 992 (8th Cir. 2022) ............................................................ 9

*State v. Hensel,*
901 N.W.2d 166 (Minn. 2017) ......................................................... 6

*Susan B. Anthony List v. Driehaus,*
573 U.S. 149 (2014) .............................................................. 2, 3, 14

*Susan B. Anthony List v. Driehaus,*
814 F.3d 466 (6th Cir. 2016) .......................................................... 19

*Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm. of
Adjustment,*
558 U.S. 67 (2009) .......................................................................... 26

*United States v. Alvarez,*
567 U.S. 709 (2012) ............................................................. 5, 18, 19

*United States v. Mackey,*
652 F. Supp. 3d 309 (E.D.N.Y. 2023) ............................................ 18

*United States v. Stevens,*
559 U.S 460 (2010) ................................................................... 5, 18

*Wisconsin Right to Life v. FEC,*
551 U.S. 449 (2007) ........................................................................ 17

*X Corp. v. Bonta,*
116 F.4th 888 (9th Cir. 2024) .................................................... 25-26

*Zarate v. Younglove*,
     86 F.R.D. 80 (C.D. Cal. 1980) ................................................................................. 5-6

Constitutional Provisions

U.S. CONST., AMEND. I ......................................................................................... *passim*

U.S. CONST., ART. III ..................................................................................................2-11

Rules and Statutes

28 U.S.C. § 1292(a)(1) ................................................................................................. 13

Ariz. Rev. Stat. §16-1024(B)(1) .....................................................................................4

Cal Elec. Code §20519(c) ......................................................................................... 4-5

Cal. Elec. Code §20012(f)(8)(A) ...................................................................................4

Colo. Rev. Stat. §1-46-103(3)(e) ...................................................................................5

Del. Code Ann. §5145(d)(4) ..........................................................................................5

Minn. Stat. §211B.07 ............................................................................................. 1, 21

Minn. Stat. §609.771 ........................................................................................ *passim*

Miss. Code Ann. §97-13-47(6)(e) ..................................................................................5

Other Authorities

Allen, Matthew & John W. Ayers,
     *X's Community Notes Are a Model for Public Health Success—Will*
     *Meta Actually Follow Suit?*,
     Sensible Medicine (Jan. 9, 2025), https://www.sensible-
     med.com/p/xs-community-notes-are-a-model-for ........................................20

Bergstrom, Carl T. & Jevin D. West,
    Calling Bullshit: The Art of Skepticism in a Data-Driven World
    (2020) ........................................................................................................... 3, 20

Shepardson, David,
    *US political consultant indicted over AI-generated Biden robocalls,*
    Reuters, (May 23, 2024), https://www.reuters.com/world/us/us-
    political-consultant-indicted-over-ai-generated-biden-robocalls-
    2024-05-23/ ........................................................................................................ 21

Volokh, Eugene,
    *When are Lies Constitutionally Protected,*
    4 J. Free Speech L. 685 (2024) ................................................................ 18-19

## Introduction

Minnesota has many longstanding speech-neutral tools for maintaining election integrity. OB43[1]; Minn. Stat. §211B.07 (prohibiting voter coercion). However well-intentioned the aim of protecting "free and fair elections," section 609.771 self-defeats it by weaponizing the political process and "perpetuat[ing] the very fraud it is allegedly designed to prohibit." *281 Care Committee v. Arneson*, 766 F.3d 774, 789 (8th Cir. 2014) ("*Care Committee II*"). It does so by criminalizing the very speech necessary for free and fair elections. Worse still, it threatens Franson and other elected officials with the ultimate political penalty: permanent disqualification from state or local office.

Though the district court correctly concluded Franson had standing to facially challenge section 609.771, it erred in denying Kohls the same standing, and in concluding that Franson didn't allege irreparable harm sufficient to seek an injunction. Section 609.771 threatens to imprison online commentators who misjudge how "realistic" their political memes are. It threatens to permanently disqualify legislators like Franson from state office for core political speech. It arms political adversaries with a shiny new method of waging lawfare. In short, it is the exact type of statute most desperately calling out for pre-enforcement

---

[1] OB, EB, LB refer to Kohls' opening brief, defendant Ellison's brief, and defendant Larson's brief respectively. "App. xyz" refers to page xyz of the Joint Appendix. "R.Doc." refers to docket entries in Case No. 24-cv-03754 (D. Minn.) below.

review. Instead, the district court and Defendants would insulate it from review by an uncharitable reading of Plaintiffs' complaint and an Pollyannaish reading of the statute at issue.

Our Republic permits "all to speak," and "entrust[s] the people to judge what is true and what is false." *Citizens United v. FEC,* 558 U.S. 310, 355 (2010) (internal citation omitted). *Care Committee II* prohibits the war on political misinformation that Section 609.771 intends to wage. OB38-42. With full briefing, Defendants offer no reason to think otherwise. This Court should reverse with instructions to enter the requested injunction.

## Argument

### I. Plaintiffs have standing because section 609.771 "arguably proscribes" both their speech and that of others reposting it.

When assessing plaintiffs' standing to bring a pre-enforcement First Amendment challenge, this Court applies a "lenient" and "forgiving" test. OB2; *contra* EB10 (supplying "not toothless" gloss). Respect for free speech rights manifests itself in the "*arguably* proscribed" test of *SBA List* (OB15-17) and in the presumption that, absent desuetude, there is a credible threat of enforcement of statutes. OB21-22. Arguing that neither Kohls nor Franson has standing to challenge enforcement of section 609.771, Ellison ignores "the specifics of the challenged statute and the nature of the standing analysis in First

Amendment political speech cases." *281 Care Committee v. Arneson*, 638 F.3d 621, 628 (8th Cir. 2011) ("*Care Committee I*").

### A.    The statute at least "arguably" criminalizes Plaintiffs' speech.

As Ellison sees it, section 609.771 "categorically excludes parody" by limiting itself to depictions that a reasonable person "would believe" are authentic. EB11-12.  The problem is—as Minnesota's only expert who has not been excluded for fabricating AI-generated citations has recognized—"reasonable people still might not agree whether you're looking at fake news, hyper-partisan news, satire, or some other form of misinformation." Carl T. Bergstrom & Jevin D. West, CALLING BULLSHIT: THE ART OF SKEPTICISM IN A DATA-DRIVEN WORLD, 192 (2020). Put differently, parody is compatible with authenticity. Ellison erroneously assumes that parody can be discretely and neatly excluded from the statute.

Minnesota and Ohio attempted similar standing arguments in *281 Care Committee* and *SBA List* respectively. Their statutes only banned "knowing" falsehoods and the plaintiffs had "no plans to lie." *SBA List*, 573 U.S. at 163; *accord Care Committee I*, 638 F.3d at 628. Ellison's argument "misses the point" because it ignores the possibility of reasonable misinterpretation. *SBA List*, 573 U.S. at 163.

On the undisputed record below, "reasonable people—like…Senator Amy Klobuchar, California Governor Gavin Newson, and the leader of Public Citizen—considered Musk's dissemination of the July 26 Video…to be realistic." App. 13-

14; R.Doc. 47 at 13-14. In short, "plaintiffs have alleged that they wish to engage in conduct that could reasonably be interpreted as [authentic representations of candidate speech] and that, therefore, they have reasonable cause to fear…section [609.771]." *Care Committee I*, 638 F.3d at 628. "[G]iven the scope, context, and enforcement structure of section [609.771]—plaintiffs have made sufficient allegations of objectively reasonable chill." *Id.*

The district court erred by misapprehending the complaint's allegations about Newsom and other commentators as only supporting Franson's standing, not Kohls'. OB20-21. Ellison makes no attempts to justify *that* error, instead discounting Newsom as merely commenting on California law. EB20-21. But the laws are substantively equivalent. Like Minnesota's, California's prohibits dissemination of "media that is intentionally digitally created or modified,…such that the content would falsely appear to a reasonable person to be an authentic record of the content depicted." Cal. Elec. Code §20012(f)(8)(A). Ellison does not claim Governor Newsom (or Senator Klobuchar for that matter) is an unreasonable person. Thus, Kohls' videos are at the very least "arguably proscribed" by Minnesota's law for the same reason as California's.

More generally, unlike other state laws targeting political deepfakes, Minnesota's doesn't even purport to carve out "parody" or "satire" from its domain. *Compare* Minn. Stat. §609.771 (no exemption), *with e.g.*, Ariz. Rev. Stat. §16-1024(B)(1) (exempting "media that constitutes satire or parody"); Cal. Elec. Code §20519(c) (exempting "materially deceptive content that constitutes

4

satire or parody"); Colo. Rev. Stat. §1-46-103(3)(e) (exempting "media content that constitutes satire or parody" that is "substantially dependent" on individual impersonate rather than AI-generation); Del. Code Ann. §5145(d)(4) (exempting "Materially-deceptive audio or visual media that constitutes satire or parody"); Miss. Code Ann. §97-13-47(6)(e) (exempting "content that constitutes satire or parody").

Kohls does not argue that a satire carveout would cure Minnesota's law.[2] But other states' exemptions show that parody and realism can coexist. Otherwise, those carveouts would be superfluous.

---

[2] Longstanding First Amendment doctrine follows a categorical historical approach, not one in which legislatures have "freewheeling authority" to reverse engineer "new categories of speech outside the scope of the First Amendment." *United States v. Stevens*, 559 U.S. 460, 472 (2010). In *Stevens* for example, Congress attempted to ban "animal crush videos" while exempting "any depiction that has serious religious, political, scientific, educational, journalistic, historical, or artistic value." 585 U.S. at 465. *Stevens* held that Congress could not "use[]" that one class of protected speech "as a general precondition to protecting *other* types of speech in the first place." *Id.* at 479 (emphasis in original). The California legislature learned the same lesson: "appending a saving clause" to an unconstitutional statute prohibiting the sale of "violent video games" to minors "does not suffice" to salvage the statute. *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 792 (2011). And in *United States v. Alvarez*, the Stolen Valor Act was struck down even though it did "not reach dramatic performances, satire, parody, hyperbole, or the like." 567 U.S. 709, 740 (2012) (Alito J., dissenting). Since the *Alvarez* court still found the law unconstitutional, a carveout for satire alone cannot satisfy the First Amendment. Here too. A satire carveout "simply exchanges [some] overbreadth for [more] vagueness." *Zarate v. Younglove*, 86 F.R.D. 80, 104 (C.D. Cal. 1980) (quoting Professor Lawrence Tribe, AMERICAN CONSTITUTIONAL LAW §12-26).

Acknowledging the possibility of ambiguity, Ellison asks this Court to apply constitutional avoidance. EB12-13. But once one finds ambiguity, there is no room to conclude, for standing purposes, that Kohls' speech isn't "arguably proscribed." OB23 (citing *Texas v. Yellen*, 105 F.4th 755, 766, (5th Cir. 2024)). On the merits, constitutional avoidance is not available because 609.771 does not admit of a parody exemption, especially when Minnesota's legislature rejected that type of exemption. OB17, 22-23. "Spotting a constitutional issue does not give a court the authority to rewrite a statute as it pleases." *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018); *accord State v. Hensel*, 901 N.W.2d 166, 176-81 (Minn. 2017) (Stras, J.) (refusing a "shave-a-little-off-here and throw-in-a-few-words-there" approach to save a statute from First Amendment challenge). Nor would a parody exemption resolve its constitutional defect. *See supra* at 5 n. 2; *compare Hensel*, 901 N.W.2d at 181 (declining narrowing construction that amounted to a "partial cure").

Several other states included "satire" exemptions in their own versions of the political-speech ban. Minnesota declined to follow suit. The legislative history belies Ellison's claim that the law intended to exclude "the lampooning of candidates." EB13. The legislative sponsor only referred to physical impersonations and editing existing videos, not the creation of new AI-generated content. App. 34-35; R.Doc. 1 at 27-28.[3] Ellison quotes the sponsor's supposed later recognition of the right "to make parodies and jokes about

---

[3] Quoting https://www.youtube.com/live/eABxOrPeM2I?t=5150s.

elected officials." EB13. But the sponsor's full remarks there make clear she believed that the amended law could survive strict scrutiny even though it indeed "limit[ed] constitutional rights," *including parody*, because it was temporally limited around an election. *See* Senate Elections Committee Hearing of Feb. 15, 2024, at 13:27-14:38.[4]

Kohls challenges a brand-new political speech restriction, not a decades-old speech-neutral law governing harassment restraining orders. *Contra Christian Action League v. Freeman*, 31 F.4th 1068 (8th Cir. 2022) (EB14). When a newly-promulgated vague policy targets speech, this Court will not immunize it from review by imposing atextual limitations. *See Parents Defending Educ. v. Linn Mar Cmty. Sch. Dist.,* 83 F.4th 658, 667 (8th Cir. 2023).[5]

Defending the district court's reasoning, Ellison too ignores the averments of Plaintiffs' complaint. The record does not support Ellison's claim (EB16) that Kohls "only posted" labelled parodies. OB19. Nor is the claim correct. OB19 n.3.[6]

---

[4] *Available at:* https://www.youtube.com/live/4pWTrdRbPG4?t=803s. This links to the YouTube version of the same video cited at EB13 n.9, but jumps to the relevant answer so the context can be heard.

[5] Ellison argues that section 609.771 is not vague because the "reasonable person" standard is pervasive. EB12 n.7. This obscures the issue: what is "realistic" to a reasonable person depends on vague subjective judgments. The First Amendment often requires more than invoking a "reasonable person" standard. *See, e.g., Counterman v. Colorado*, 600 U.S. 66, 76-78 (2023) (state's "reasonable person" standard did not sufficiently protect First Amendment rights in a true-threats prosecution).

[6] In his California lawsuit, Kohls never represented otherwise. *Contra* EB19 n.13 (quoting source discussing initial videos, not republication).

Ellison offers no defense for the district court's mischaracterization of Governor Newsom's threat against Kohls. OB20-21.

*Murthy v. Missouri*, involving factually complex issues of traceability and causation, does not unsettle this Circuit's consistent case law governing burdens at the preliminary-inunction stage. *Compare* EB18, *with* OB18-19. Indeed, the Supreme Court recently reaffirmed that preliminary injunction "procedures" are "customarily" "less formal" and "evidence" "less complete than in a trial on the merits." *Lackey v. Stinnie*, 145 S. Ct. 659, 667 (2025). Regardless, Plaintiffs make the "clear showing"[7] that their speech "is likely"[8] "arguably proscribed" by section 609.771. Averments of a verified complaint constitute competent evidence throughout the case. *Presson v. Reed*, 65 F.4th 357, 361 n.2 (8th Cir. 2023); *Doe v. S. Iron R-1 Sch. Dist.*, 498 F.3d 878, 880 (8th Cir. 2007).

Again, Ellison ignores the complaint when he claims (EB22-23) that Plaintiffs offered no "allegations of chill on their speech." *Contra* App. 47; R.Doc 1 at 40 ("Franson is also chilled from sharing AI-generated content…"); App. 48; R.Doc 1 at 41 ("Plaintiffs reasonably fear…"). Precedent rejects Ellison's idea that only those plaintiffs who completely silence themselves have standing to challenge laws that forbid their speech. *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016) (noting "two types" of First Amendment injury: (1) intention to engage in speech arguably proscribed by law and (2) self-

---

[7] *Murthy*, 603 U.S. 43, 58 (2024).

[8] *Id.*

censorship); *see also Moms for Liberty v. Brevard Pub. Sch.*, 118 F.4th 1324, 1331 (11th Cir. 2024) (holding that being "more careful" and "very selective" with words constitutes self-censorship injury-in-fact); *cf. also Scheffler v. Molin*, 743 F.3d 619, 621 (8th Cir. 2014) ("The test is "objective": "the question is not whether the plaintiff himself was deterred") (simplified). Ellison relies on *Missourians* (EB22) but fails to mention this principle.

As for credible threat of enforcement, Kohls need not show that Defendants have affirmatively threatened prosecution. *Contra* EB21. Courts presume that enforcement officials will enforce recent laws. OB21-22. Unlike the memorandum challenged in *School of the Ozarks, Inc. v. Biden*, section 609.771 contains an enforcement mechanism. 41 F.4th 992, 998 (8th Cir. 2022). Despite opportunity, Defendants have not disavowed enforcement against Kohls. OB22. They haven't "explicitly disclaimed" (EB21) anything; adopting an expedient litigation position does not count. *Rodgers v. Bryant*, 942 F.3d 451, 455 (8th Cir. 2019) (citing *United Food & Commercial Workers Int'l Union v. IBP, Inc.*, 857 F.2d 422, 429 (8th Cir. 1988)); *contrast Missouri v. Yellen*, 39 F.4th 1063 (8th Cir. 2022) (plaintiffs' feared interpretation of statute was "explicitly disclaimed" in both interim and final rules promulgated by agency outside litigation).

The law's "plain text" supplies the threat of enforcement. OB22. That "plain text" does not include Defendants' imagined parody exemption. When a law employs vague terms, "every application creates an impermissible risk of

suppression of ideas." *Forsyth Cty. v. Nationalist Movement*, 505 U.S. 123, 129 (1992); *accord* OB16.

**B.    The statute at least "arguably" criminalizes the resharing of Kohls' speech on social media.**

Kohls' complaint plainly stated: "Kohls' livelihood is materially harmed by §609.771. The chilling effect and enforcement of the law will dissuade others from sharing his content and preclude him from earning a living, ...." App. 47; R.Doc 1 at 40. This inflicts a First Amendment harm in limiting the reach of Kohls' videos.  OB25.

Numerous paragraphs address the chilling effect on third parties. For example, "Rep. Franson knows that other Republicans have tamped down on social media because of concern about the law." App. 27; R.Doc 1 at 20; *see also* App. 45-47; R.Doc 1 at 40-42 (averring that the law "deters" and "dissuades others" from "sharing" and "creat[ing] political AI-generated content"). These "general allegations embrace those specific facts that are necessary to support the claim." *Huizenga v. Indep. Sch. Dist. No. 11*, 44 F.4th 806, 811-12 (8th Cir. 2022) (internal quotation omitted). Franson and Kohls did not need to provide granular detail about Franson's relationships with other legislators or Kohls' social media audience's behavior.

The law presumes that individuals "will conduct their activities within the law and so avoid prosecution and conviction" *O'Shea v. Littleton*, 414 U.S. 488, 497 (1974); *contra* OB23 (calling it "speculation"). Plaintiffs have pled the

injuries they sustain from the "predictable [deterrent] effect" of the law "on the decisions of third parties." OB24 (quoting *Dep't of Commerce v. New York*, 588 U.S. 752, 768 (2019)).

This is a second independent reason to reverse the determination that Kohls lacks standing.

### C. Certification is unwarranted.

On appeal, Ellison asks to certify the question of interpreting section 609.771 to the Minnesota Supreme Court if there remain "doubts about the statute's scope." EB25. But if doubts exist, the Court must rule for Plaintiffs because their speech is "arguably proscribed" by the statute. *See* OB15-18. More generally, when this Court can derive the meaning of a statute from text and context, it "does not present a close question of state law." *Kuklenski v. Medtronic USA, Inc.*, 134 F.4th 528 (8th Cir. 2025); *see also Salier v. Walmart, Inc.*, 76 F.4th 796, 804 (8th Cir. 2023) (certification not appropriate "absent a close question").

"A federal court may not properly ask a state court if it would care in effect to rewrite a statute." *Houston v. Hill*, 482 U.S. 451, 471 (1987). Once again, Minnesota offers no "viable alternative construction that the Minnesota Supreme Court might adopt instead" to save the statute. *Minn. Voters All. v. Mansky*, 585 U.S. 1, 22 n.7 (2018); *see supra* at 5 n.2 (explaining why a textual satire carveout could not save a novel restriction on political speech).

## II. Plaintiffs demonstrated irreparable harm.

Neither Defendant discusses the cases demonstrating that sixteen months is not "undue delay" for bringing a First Amendment case. OB33-36. Ellison labels these cases "pre-Hotchkiss" (EB31),[9] but fails to engage Plaintiffs' central point: that *Hotchkiss* turned on lack of harm, not delay. OB35-36. Hotchkiss removed his child from the school district, thus avoiding the harm. His interests were neither "threatened or in fact being impaired at the time relief was sought." 115 F.4th 889, 894 (8th Cir. 2024) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Here, Plaintiffs continue to post AI-generated videos. Section 609.771 objectively chills Plaintiffs and those they follow from sharing similar content, unlike Hotchkiss.

Ellison discounts the years-long delay that preceded injunction in *281 Care Committee* as not concerning preliminary injunction (EB30), but irreparable harm is required for all injunctions. There's no distinction. *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987).

Ellison faults Plaintiffs (EB28-29) for consenting to stay proceedings before the district court. To the extent *Hanson v. Smith* is persuasive, consenting to a stay and not requesting expedited appeal "will not always establish lack of diligence," but only when the delay is "unexplained." 120 F.4th 223, 246 (D.C. Cir. 2024). Plaintiffs make clear that they appeal not just for a bare remand, but

---

[9] *Hotchkiss* cannot overrule earlier Circuit precedent. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (*en banc*).

to further the litigation on the merits, and conserve private and judicial resources. *See* Section IV below. Not all injunctive actions are TRO-type emergencies. *Compare Bernards v. United of Omaha Life Ins. Co.*, 987 F.2d 486, 487 (8th Cir. 1993) (expediting review because plaintiff's "medical condition [w]as rapidly deteriorating" and case could "affect the medical treatment"). This Court should not make expedited review a *de facto* requirement of pursuing a 28 U.S.C. § 1292(a)(1) appeal.

In First Amendment cases, the alleged seventeen-month delay—much less the three months with the clock starting correctly—cannot overcome the presumption of irreparable harm. None of Defendants' cited cases (EB28; LB8-9) show otherwise. Most do not concern constitutional injuries at all.

Defendants also cannot cite a single case where a legislator lacked irreparable harm for challenging a law he or she voted for, much less one passed 197-to-1. OB32. Defendants do not address this point, nor deny that Kohls isn't a Minnesota legislator. Their only case even involving "legislative acts" (EB34) is *Florida v. HHS*, where the state, not a legislator, claimed to be harmed by a federal rule's conflict with a state law passed after the issuance of the rule. 19 F.4th 1271, 1291 & n.5 (11th Cir. 2021).

Given that even longer alleged delays do not undermine irreparable harm for First Amendment injuries, Plaintiffs' further arguments only confirm the district court's mistake.

First, Franson did not earlier intend to engage in AI-assisted speech. OB30-31. Ellison's argument that Franson could have sued in May 2023 (EB29) fails because she had no intention to engage in relevant speech then. Standing doctrine rejects Ellison's extremely narrow conception of standing: she's not "just chilled [sic] in May 2023 as she was 17 months later" (EB30) because she didn't have any "intention to engage in a course of conduct arguably affected with a constitutional interest" in May 2023. *SBA List*, 573 U.S. at 160.

Second, the disturbing actions of her neighbor/political opponent raised the likelihood of speech-squelching private suit against Franson. OB37-38. Ellison calls this "unrelated" (EB33), but he plays a role in the statute's enforcement. *Care Committee I* rejected a similar argument that there was no redressability because "any party can institute a civil complaint." 638 F.3d 621, 631 (8th Cir. 2011). "[A] party 'satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself." *Id.* (internal quotation omitted). It need not relieve "*every* injury." *Id.*

Third, the addition of the unprecedented election-forfeiture penalty justifies the alleged delay. OB28-30. Ellison says "Franson's challenge is not limited to the enhanced penalties from 2024," all-but-conceding that Franson did not delay with respect to that relief. EB32.

Ellison also concedes that, contrary to the district court's alternative finding, Kohls did not delay unduly. OB28. Except for his argument about a discovery stay while seeking a remand with instructions here, Ellison does not

even suggest Kohls was untimely. Larson drops a footnote claiming the same analysis for Franson applies to Kohls' alleged eleven-week delay. LB9 n.2. But Larson does not cite any authority that held such a short "delay" precludes irreparable harm. Even the shortest—a dissimilar contractual dispute—*Grow Biz Int'l, Inc.*—was premised not just on delay, but the fact that a preliminary injunction would impose countervailing irreparable harm. 2002 WL 113849 (D. Minn. Jan. 25, 2002).

Fourth and finally, there were no federal elections in 2023 relevant to Plaintiffs' political speech. OB11; OB29-30. Franson *did* argue that none of her speech prior to July 2024 would have plausibly violated the statute because there were no elections relevant to her political commentary. OB29-30 (citing record); *contra* EB29. Ellison insists that elections did occur in 2023 but does not grapple with Kohls' argument that he wouldn't "make videos about school boards or anything like that." OB27-29; App. 201; R.Doc. 56; Tr. 56. Defendants cite no counter-example; they cannot deny that AI-generated political commentary has become much more common since 2023.

Defendants' cases involved no First Amendment claims, countervailing harm, or much longer delays. None rebuts the *Elrod* presumption, particularly where ongoing speech is chilled by the specter of criminal prosecution and election forfeiture.

**III. The Court should remand with instructions to enjoin Defendants from enforcing the statute because it flagrantly infringes core political speech.**

*Care Committee II* controls here. OB38-42. Yet in his lengthy defense of Minnesota's law, Ellison mentions *Care Committee II* only once, claiming that it "applied strict scrutiny because the challenged statute 'target[ed] falsity'" rather than "'associated'" harms. EB43. There's no distinction. Minnesota's statute in *Care Committee II* purported to target the same harms Ellison claims: "to preserve fair and honest elections and prevent a fraud on the electorate." 766 F.3d at 786.

In this Court, allegedly false political speech is fully protected, and laws infringing it are subject to strict scrutiny, without even wading into the *Alvarez* cognizable harm analysis. 766 F.3d at 783-84; *Animal Legal Def. Fund v. Reynolds*, 8 F.4th 781, 788-89 (8th Cir. 2021) ("*ALDF*") (Grasz, J. concurring) (singling out the political/ideological nature of proscribed speech as a "key" consideration under *Alvarez*); *Kohls v. Bonta*, 752 F. Supp. 3d 1187, 1196 (E.D. Cal. 2024) (quoting Justices Alito and Breyer's separate *Alvarez* opinions).

That AI-assisted media is a "novel medium" for political speech "is of no legal consequence." *Interactive Digital Software Ass'n v. St. Louis Cnty.*, 329 F.3d 954, 957 (8th Cir. 2003). "[T]he First Amendment's command [does] not vary." *Brown*, 564 U.S. at 790. When governments attempt "a novel restriction on content," they must present "persuasive evidence" it "is part of a long (if heretofore unrecognized) tradition of proscription." *Id.* at 792. "[A] legislature

may not revise the 'judgment of the American people,' embodied in the First Amendment." *Id.* (quoting *Stevens*, 559 U.S. at 470).

Ellison offers only half-hearted efforts to place section 609.771 within a "tradition of proscription." He tries to shoehorn it within the confines of defamation. But section 609.771, like California's law "extends beyond the legal standard for defamation" to capture speech that doesn't inflict harm at all. *Kohls*, 752 F. Supp. 3d at 1193; *contra* EB39 (mischaracterizing defamation as knowing falsehoods "*intended* to harm a candidate"). Instead, it proscribes false but realistic AI-generated content made with any intent to influence the result of an election. Minn. Stat. §609.771, subd. 2(a)(2).

Ellison touts (EB39) the "actual-malice" standard, but this necessary element is not sufficient when the statute requires no cognizable harm. *Care Committee II*, 766 F.3d at 794. It does nothing "to realistically stop the potential for abuse of [section 609.771's] mechanism." *Id.* "First Amendment freedoms need breathing space to survive. An intent test provides none." *Wisconsin Right to Life v. FEC*, 551 U.S. 449, 468-69 (2007). Moreover, the Supreme Court has repeatedly disavowed the idea that legislatures may chisel away First Amendment rights by importing a liability standard from a different context. *E.g. Stevens*, 559 U.S. at 479-80. "A rule designed to tolerate certain speech ought not blossom to become a rationale for a rule restricting it." *Alvarez*, 567 U.S. at 720.

Ellison's fraud analogy similarly fails for lack of an "actual harm" element. "[T]he absence of a materiality requirement distinguishes the [Minnesota]

statute from permissible prohibitions on fraud, perjury, and lying to government officials." *ALDF*, 8 F.4th at 787.

Finally, *Care Committee II* forecloses Ellison's endeavor (EB41-43) to apply the intermediate scrutiny approach of Justice Breyer's *Alvarez* concurrence. Even apart from *Care Committee II*, that concurrence would not control. *ALDF*, 8 F.4th at 785.

At bottom, Section 609.771 cannot withstand the strict scrutiny that *Care Committee II* mandates. OB 39-42; *contra* EB43-49. Simply put, materially deceptive political speech doesn't jeopardize "free and fair elections." Elections have always been a noisy ruckus of misinformation. Case after case so recognizes. *See, e.g., Care Committee II*; *Commonwealth v. Lucas*, 34 N.E.3d 1242 (Mass. 2015); *Rickert v. State Pub. Disclosure Comm'n*, 168 P.3d 826, 829-31 (Wash. 2007) (*en banc*). Minnesota's interest in protecting the franchise thus "does not align" with a prohibition on "messages about the electoral choices at issue." *Minn. Voters All.*, 585 U.S. at 18 n.4 (simplified). It is one thing to prohibit lies about "the procedures governing elections." *United States v. Mackey*, 652 F. Supp. 3d 309, 344 (E.D.N.Y. 2023) (cited by EB42). It is quite another to prohibit lies about campaigns and government officials—areas "categorically immune from liability." Eugene Volokh*, When are Lies Constitutionally Protected,* 4 J. FREE SPEECH L. 685, 704-09 (2024). Like the laws in *281 Care Committee* and *Lucas*, section 609.771 falls on wrong side of the line, restricting political speech about

candidates, campaigns, and issues and "tamper[ing] with the right of citizens to choose who shall govern them." *FEC v. Cruz*, 596 U.S. 289, 305-06 (2022).

When confronting government efforts to suppress so-called political misinformation, courts consistently hold that counterspeech is the proper "remedy to an allegation of falsity": more speech, not less. *Care Committee II*, 766 F.3d at 793; *accord SBA List v. Driehaus*, 814 F.3d 466, 472, 476 (6th Cir. 2016); *Lucas*, 34 N.E.3d at 1253; *Rickert*, 168 P.3d at 832. "[S]uppression of speech by government can make exposure of falsity more difficult, not less so." *Alvarez*, 567 U.S. at 728.

Ellison seeks to burden-shift and put the onus on Kohls to "provide[]...evidence" that "counterspeech is a sufficient response to deepfakes." EB45. Even though plaintiffs don't bear that burden, the record does prove that. Fact checkers and commentators immediately met Kohls' Harris video with their own counterspeech. App. 44-45; R.Doc 1 at 37-38. Within this very litigation, when Defendants' expert, Professor Jeff Hancock, used AI to deepfake multiple academic citations in his putative expert declaration, Kohls' own counterspeech drew those fakes to the attention of the district court which then excluded Hancock's declaration. App. 114-19; R.Doc 46 at 7-12.

Social media companies have also begun to enable community-sourced counterspeech to misinformation. Matthew Allen & John W. Ayers, *X's Community Notes Are a Model for Public Health Success—Will Meta Actually Follow Suit?*, Sᴇɴsɪʙʟᴇ Mᴇᴅɪᴄɪɴᴇ (Jan. 9, 2025), [https://www.sensible-](https://www.sensible-)

[med.com/p/xs-community-notes-are-a-model-for](med.com/p/xs-community-notes-are-a-model-for). Ellison's non-excluded expert, Professor West, agrees with Kohls outside of litigation: "No law or fancy new AI is going to solve the problem [of misinformation]. We all have to be a little more vigilant, a little more thoughtful, a little more careful when sharing information-and every once in a while, we need to call bullshit when we see it." West, et al., CALLING BULLSHIT, 288.

Ellison asserts that section 609.771 applies "only in limited periods" when "counterspeech will be least ineffective [sic]." EB38, 49. By "limited periods," Ellison means several months before an election and three months in advance of a nominating convention. For the 2024 Presidential Election for example, 609.771 activated July 1 and would have begun running in May—six months before the November general election—had the amended law already been enacted. Though Defendants call that a "limited period[]," cases like *McIntyre v. Ohio Elections Commission* disagree. There, the Court invalidated Ohio's prohibition on anonymous political pamphleteering, in part because it "applie[d] not only to leaflets distributed on the eve of an election, when the opportunity for reply is limited, but also to those distributed months in advance." 514 U.S. 334, 352 (1995); *contrast Burson v. Freeman*, 504 U.S. 191 (1992) (election-day restriction).

Counterspeech isn't the only less restrictive alternative. Putative plaintiffs with actual harm can use tort remedies. Paternalistic laws that directly target speech-*qua*-speech are unnecessary. OB43. Ellison complains that the state's

interest in "electoral integrity cannot only be at the mercy of private actors." EB46. Fortunately, speech-neutral threat, fraud, intimidation, and coercion laws also exist in Minnesota, as in all other states. *See, e.g.,* Minn. Stat. §211B.07 (prohibiting voter coercion). For example, Ellison's example of AI-generated calls to discourage voting in New Hampshire "the day before a primary" (EB4) resulted in a felony indictment of the alleged perpetrator under similar voter suppression laws. *See* David Shepardson, *US political consultant indicted over AI-generated Biden robocalls*, Reuters (May 23, 2024).[10] Plaintiffs take no position on the merits of the prosecution.

Minnesota's legislature candidly admitted that section 609.771 is "prophylactic." OB40. Prophylaxis cannot even sustain a regulation under intermediate scrutiny, let alone strict scrutiny. *Edenfield v. Fane*, 507 U.S. 761, 770-77 (1993). Minnesota "must demonstrate that the recited harms are real, not merely conjectural, and that the regulation will in fact alleviate these harms in a direct and material way." *Interactive Digital Software Ass'n*, 329 F.3d at 958. Ellison's doomsaying on appeal (EB4) relies on anecdotes absent from the legislative record, and it doesn't even fairly represent what Minnesota's expert said below. Professor West never stated that viral deepfakes "likely swung" a close parliamentary election in Slovakia. He said "it would be difficult, if not impossible, to show that this video altered the election…" App. 101; R.Doc 24 at

---

[10] https://www.reuters.com/world/us/us-political-consultant-indicted-over-ai-generated-biden-robocalls-2024-05-23/.

12. If information is unavailable, Minnesota must "bear[] the risk of uncertainty," *Brown*, 564 U.S. at 799-800, not citizens exercising First Amendment rights at the risk of being permanently disqualified from office.

Minnesota's reliance on togetherness with other states passing similar anti AI-generated political speech laws "is equally unavailing." *Mo. Broadcasters Ass'n v. Schmitt*, 946 F.3d 453, 461 (8th Cir. 2020). Ellison neglects to mention those state legislatures voting down such prohibitions, nor that the only court to yet weigh in the constitutionality of such a statute held that such a "blunt tool" against "democratic debate" could not stand. *Kohls*, 752 F. Supp. 3d at 1199.

Section 609.771 exceeds the constitutional flaws of Minnesota's statute in *281 Care Committee*. It not only weaponizes the political process, it equips political opponents with the ultimate punishment to inflict on their adversaries: disqualification from public office. Ellison suggests that tools to weed out frivolous litigation can resolve the issue, but that's little comfort because the lawsuit is itself punitive: "damage is done at the time a complaint is filed." *Care Committee II*, 766 F.3d at 792.

Like the statute in *281 Care Committee*, section 609.771 contains an exemption for news media that reveals fatal underinclusiveness vis-à-vis the "stated interest in preventing fraud on the electorate." 766 F.3d at 794. When the law is underinclusive because it neglects to address the major aspect of the conceived harm, courts consistently hold that fails narrow tailoring. *E.g., Miller v. Ziegler*, 109 F.4th 1045, 1052 (8th Cir. 2024).

Section 609.771 again fares worse: it allows deepfakes with the consent of the portrayed candidate. In other words, perpetuating fraud on the electorate is fine as long as the candidate consents. That's backwards. OB45. (citing *McIntyre*, 514 U.S. at 351). And it reveals the viewpoint discrimination inherent in the law. OB44-45.

Viewpoint discriminatory restrictions on private speech "poison…a free society"; the Constitution does not "tolerate[]" them. *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring). Section 609.711 permits election-related content that is "'positive' about a person," while restricting such content if it is "derogatory." *Iancu*, 588 U.S. at 393 (quoting *Matal v. Tam*, 582 U.S. 218, 249 (2017) (Kennedy, J., concurring). Ellison asserts (EB50) that the statute equally prohibits negative and laudatory viewpoints, which conveniently reads "consent" entirely out of the statute. Candidates can freely promulgate positive deepfakes about themselves because they have the "consent of the depicted individual." The law's equal application among nonconsensual deepfakes does not absolve it of viewpoint discrimination, because consent tracks a perspective. *Burnham v. Ianni*, 119 F.3d 668, 676 (8th Cir. 1997) (*en banc*) (heckler's veto is viewpoint discrimination). Allowing only candidate-approved speech "single[s] out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring); *Grimmett v. Freeman*, 59 F.4th 689, 694-96 (4th Cir. 2023) (invalidating law prohibiting "derogatory reports" about political candidate).

Ellison analogizes (EB51) to *ALDF*, but that anti-trespass statute did not discrimination on viewpoint by "prefer[ring] laudatory lies over critical falsehoods." 89 F.4th 1065, 1070. Section 609.771 does—for promotional deepfakes disseminated by candidates. It is an unconstitutional speaker-based distinction that "le[aves] unburdened those speakers whose messages are in accord" with candidate views. *NIFLA v. Becerra*, 585 U.S. 755, 778 (2018). And the First Amendment is "deeply skeptical of laws that distinguish among different speakers." *Id.* at 777-78 (simplified). They "are all too often simply a means to control content." *Citizens United*, 558 U.S. at 340. By giving special treatment to candidates who are presumably speaking highly about themselves, Minnesota favors "happy-talk." *Matal*, 582 U.S. at 246 (plurality).

Lastly, Ellison relies on *Moody v. NetChoice*, in procedural defense of a substantively untenable law. EB36-37. But *Moody* concerns only overbreadth challenges, not facial viewpoint discrimination. When, as here, a challenged law restricts pure speech by viewpoint, it cannot be "salvage[d] by…constitutionally permissible applications." *Iancu*, 588 U.S. at 398. Finding viewpoint discrimination "end[s] the matter" and "renders unnecessary any extended treatment of other questions." *Id.* at 399; *Matal*, 582 U.S. at 248 (Kennedy, J., concurring).

In *Moody*, by contrast, the Texas and Florida social-media laws were not viewpoint discriminatory speech restrictions on their face. See *NetChoice, LLC v. Attorney General, Fla.*, 34 F.4th 1196, 1224 (11th Cir. 2022) ("we don't think

that...the entire Act is impermissibly viewpoint-based...."). Likewise, in *GLBT Youth*, this Court only addressed a law that was "viewpoint-neutral." 114 F.4th 660, 670 (8th Cir. 2024).

*Moody* was an overbreadth case. It raised a facial challenge to a law "dealing with a broad swath of varied platforms and functions." *Moody*, 603 U.S. at 745 (Barrett, J., concurring); *see also id.* at 787 (Alito, J., concurring in the judgment) (suggesting remand was necessary to discern whether the laws covered "primarily nonexpressive conduct" like "carry[ing] messages instead of curating them") (internal quotation omitted). Thus, the Supreme Court remanded for full consideration of the laws' applicability to services like "direct messaging," "events management," "online marketplaces," "financial exchanges" or even "ride-sharing," some of which may not even implicate the platforms' free expression rights. *Id.* at 724-25.

This case concerns only speech about candidates and elections—core political expression—which receives the First Amendment's "fullest" protection. *Arizona Free Enter. Club's Freedom Club PAC v. Bennett*, 564 U.S. 721, 734 (2011). When a facial challenge confronts a law that "raises the same First Amendment issue" for all regulated speakers, courts should proceed to apply the relevant level of constitutional scrutiny. *X Corp. v. Bonta*, 116 F.4th 888, 898-99 (9th Cir. 2024). *Care Committee II* took this path; *Moody* does not disturb it.

**IV.** **This Court should provide more guidance than a bare remand.**

This Court may decide this case "as may be just under the circumstances," and should do so "to obviate further and entirely unnecessary proceedings below." *Gross v. United States*, 390 U.S. 62, 71, 72 (1968) (quoting, in part, 28 U.S.C. §2106). It should do so here.

Kohls raises a *de novo* First Amendment issue already fully briefed and implicating statewide political-speech rights. Indeed, it implicates one of the district court's precise errors: whether the Plaintiffs have sustained irreparable harm. Perhaps most importantly, the constitutional answer to this issue follows from this Court's binding precedent, *Care Committee II. See* Section III, *supra*. Nonetheless, guidance is particularly necessary to repudiate Ellison's overreaching arguments. *E.g.* EB40 (analogy to securities fraud).

Under these circumstances, for the sake of efficiency and the public interest, this Court should reach the likelihood of success factor, and "resolve without need for remand" that "pure question of law." *Union Pac. R.R. Co. v. Bhd. of Locomotive Eng'rs & Trainmen Gen. Comm of Adjustment*, 558 U.S. 67, 79 (2009) (internal quotations omitted); *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 725 (8th Cir. 2019) (remand "unnecessary" when addressing purely legal question with an unambiguous answer in controlling precedent); *Beard v. Falkenrath*, 97 F.4th 1109, 1117 (8th Cir. 2024) (answering "well-settled" First Amendment question in the first instance over dissent's call for remand).

## V.    *Monell* doesn't apply to this *Ex parte Young* action.

Larson argues that Plaintiffs plead a deficient *Monell* action, but does not engage with Plaintiffs' response: "We are suing [Larson] in his official capacity under *Ex parte Young* doctrine, not *Monell*." App. 200; R.Doc. 56; Tr. 55. Neither defendant contests *Ex parte Young*'s application; the word "*Young*" appears in neither brief. None of Larson's citations (LB12-25) concern suits to enjoin official-capacity state actors charged with enforcing state law.

Plaintiffs do "not present defectively pleaded Monell claims—the complaint presents well-pleaded *Ex parte Young*…claims." *Minn. RFL Republican Farmer Labor Caucus v. Freeman*, 2020 WL 1333154, 2020 U.S. Dist. LEXIS 49778, at *7 (D. Minn. Mar. 23, 2020). They seek to enjoin from Larson in his capacity as a state official delegated enforcement under the statute. *Id*.; Minn. Stat. § 609.771 subd. 4(2). Like the sheriff in *McMillian v. Monroe Cty.*, 520 U.S. 781, 790 (1997), Minnesota county attorneys enforce Minnesota law. Minn. Stat. §388.051; *see also Evans v. City of Helena-West Helena*, 912 F.3d 1145, 1146-47 (8th Cir. 2019).

*Monell* does not apply. *See Rounds v. Clements*, 495 Fed. App'x 938, 941 (10th Cir. 2012) (Gorsuch, J.) (Monell's "policy or custom" requirement applies to "suits against municipalities…and it has no applicability to state officers who are immune from suit for damages but susceptible to suit under *Ex parte Young* for injunctive relief."); *Riley's Am. Heritage Farms v. Elsasser*, 29 F.4th 484, 508 (9th Cir. 2022) (reversing denial of injunction because plaintiffs are "not

required to allege a named official's personal involvement in...the alleged constitutional violation").

## Conclusion

Section 609.771 assaults the First Amendment by criminalizing core political speech. This Court should reverse with instructions to enter an injunction.

Dated:  June 10, 2025                       Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
Phone: (610) 457-0856
Email: adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
James V. F. Dickey (MN #393613)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
Phone: (612) 428-7000
Email: james.dickey@umlc.org

*Attorneys for Plaintiffs-Appellants*
 *Christopher Kohls and Mary Franson*

## Combined Certifications of Compliance

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

This brief is 6,448 words long, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in a proportionally spaced typeface using Office 2013 in 14-point CenturyExpd Bt font.

3.    This brief and addendum comply with 8th Cir. R. 28A(h) because the PDF file has been scanned for viruses by Microsoft Defender 18.0.6014 and are said to be virus-free by that program.


Dated:  June 10, 2025                    Respectfully submitted,

                                        */s/ Adam E. Schulman*
                                        Adam E. Schulman

**Certificate of Service**

I hereby certify that on June 12, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

*/s/ Adam E. Schulman*
Adam E. Schulman