# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

No. 25-1300

Christopher Kohls and Mary Franson,

*Plaintiffs-Appellants*,

*v.*

Keith M. Ellison, in his official capacity as Minnesota Attorney
General; Chad Larson, in his official capacity as Anoka County
Attorney,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the District of Minnesota,
Case No. 0:24-cv-03754-LMP-DLM

## PETITION FOR REHEARING EN BANC

Adam E. Schulman
Michael Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
(610) 457-0856
adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
Nicholas J. Nelson (MN #0391984)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
(612) 428-7000
nicholas.nelson@umlc.org

*Attorneys for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. i

TABLE OF AUTHORITIES .......................................................... ii

STATEMENT PURSUANT TO FED. R. APP. P. 40 ........................................ 1

STATEMENT OF THE CASE ........................................................ 3

ARGUMENT FOR GRANTING REHEARING *EN BANC* ............................ 5

    I.    The panel's standing analysis conflicts with Supreme Court jurisprudence and creates an intra- and inter-circuit split. ...................... 6

        A. Precedent requires an "arguably proscribed" test for First Amendment standing. ....................................................... 6

        B. Recent panel decisions, including this one, have sown confusion about the arguable-proscription standard............................. 8

    II.    The panel's irreparable harm decision creates intra-circuit conflict. ..............................................................................11

CONCLUSION .......................................................................14

CERTIFICATE OF COMPLIANCE.................................................15

CERTIFICATE OF SERVICE.......................................................17

# TABLE OF AUTHORITIES

**Cases**

*281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011) .............. 1, 8, 12, 13

*American Encore v. Fontes*, 152 F.4th 1097 (9th Cir. 2025) ................................10

*Animal Legal Defense Fund v. Reynolds*, 89 F.4th 1071 (8th Cir. 2024) ................ 6

*Babylon Bee, LLC v. Lopez*, Civ. No. 25-00234, 2026 WL 555552, 2026
U.S. Dist. LEXIS 41476 (D. Haw. Jan. 30, 2026) ........................................4, 10

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023).....................................................7, 10

*Cerame v. Slack*, 123 F.4th 72 (2d Cir. 2024) ...................................................... 9

*Christian Action League v. Freeman*, 31 F.4th 1068 (8th Cir. 2022).................... 8

*Cuviello v. City of Vallejo*, 944 F.3d 816 (9th Cir. 2019) .....................................13

*Dataphase Systems v. C L Systems*, 640 F.2d 109 (8th Cir. 1981).......11, 12, 13, 14

*Henderson v. Springfield R-12 School District*, 163 F.4th 478 (8th Cir.
2025) ........................................................................................................... 5

*Kohls v. Bonta*, 752 F. Supp. 3d 1187 (E.D. Cal. 2024) ........................................ 4

*Kohls v. Bonta*, 797 F. Supp. 3d 1177 (E.D. Cal. 2025) ........................................ 4

*Laird v. Tatum*, 408 U.S. 1 (1972) ...................................................................... 7

*McKinney ex rel. NLRB v. Southern Bakeries, LLC*, 786 F.3d 1119 (8th
Cir. 2015)..................................................................................................2, 12, 13

*Milkovich v. Lorain J. Co.*, 497 U.S. 1 (1990).......................................................... 6

*New Jersey Bankers Ass'n v. Attorney General of New Jersey*, 49 F.4th
849 (3d Cir. 2022)...................................................................................... 9

*Ng v. Board of Regents*, 64 F.4th 992 (8th Cir. 2023) ..................................2, 12, 13

*Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14 (2020).....................5

*Scott v. Allen*, 153 F.4th 1088 (10th Cir. 2025) .................................................7, 10

*Speech First, Inc. v. Fenves*, 979 F.3d 319 n.10 (5th Cir. 2020) ............................9

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...........................1, 7, 8, 9

*Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211 (5th Cir. 2023).......................9

*Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694 (8th Cir. 2021) ............1, 7, 8

*Winter v. NRDC, Inc.,* 555 U.S. 7 (2008) ......................................................11, 14

*X Corp. v. Ellison*, No. 25-cv-1649, 2025 U.S. Dist. LEXIS 234397 (D. Minn. Dec. 2, 2025) ..................................................................................... 9

**Statutes**

Cal. Elec. Code §20012(f)(4) ................................................................... 4

Haw. Rev. Stat. §11-303 ........................................................................... 4

Minn. Stat. §609.771, subd. 1(c) ............................................................1, 4, 6, 10

**STATEMENT PURSUANT TO FED. R. APP. P. 40**

This case concerns a Minnesota statute that bans political speech. In particular, Minnesota prohibits political "deep fakes"—which the statute defines as "any technological representation of speech or conduct *** that is so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Minn. Stat. §609.771, subd. 1(c). This is a First Amendment challenge to this statute brought by two plaintiffs: (1) Christopher Kohls, an online content creator who posted a parody campaign ad criticizing Kamala Harris using a computer-generated version of her voice; and (2) Rep. Mary Franson, a Minnesota state representative who re-posted Kohls's video.

A panel of this Court has affirmed the denial of a preliminary injunction against this deepfake ban, on two important grounds that conflict with previous precedents.

First, the panel held that Kohls lacks standing and the deepfake ban does not prohibit his parody ad at all, because the ad's title—which does not appear in the video itself—includes the word "parody." Panel Op., No. 25-1300 (8th Cir. Feb. 9, 2026), at 4. On its face, the statutory ban depends only on how "realistic" the video is, and does not include any exception for accompanying disclaimers. Moreover, this Court's and the Supreme Court's previous precedents established that First Amendment standing exists as long as the plaintiff's "intended speech is arguably proscribed by the law" he challenges. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (cleaned up); *see Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021); *281 Care Comm. v. Arneson*, 638 F.3d 621, 630 (8th Cir. 2011). But the panel here did not decide, or even address, whether Kohls's parody ad is

1

arguably proscribed by the statute—it simply held that it is not *actually* proscribed, and therefore that Kohls lacks standing. Panel Op. 4. A growing trend of panel opinions taking this approach is generating confusion in the law and the district courts about important First Amendment rights. The full Court should grant review to clarify matters.

Second, the panel held that Rep. Franson cannot establish irreparable harm for a preliminary injunction against the deepfake ban because she did not sue about it until several months after it was enacted, and because she did not adequately explain this delay. Panel Op. 7-8. This Court's precedents hold that, in the preliminary-injunction analysis, "delay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *Ng v. Bd. of Regents*, 64 F.4th 992, 998 (8th Cir. 2023) (cleaned up); *McKinney ex rel. NLRB v. S. Bakeries, LLC*, 786 F.3d 1119, 1125 (8th Cir. 2015). But here again, the panel opinion did not apply this standard: it held that Rep. Franson's delay, without more, precluded preliminary injunctive relief. The full Court should grant review to address this issue as well.

## STATEMENT OF THE CASE

Plaintiff Christopher Kohls is a political commentator who posts on X and YouTube. He sometimes does so by using artificial intelligence to create political parodies. App. 12, 47; R.Doc. 1 at 5, 40. During the 2024 Presidential campaign, Kohls posted a YouTube video criticizing then-candidate Kamala Harris. The video took the form of a parody "campaign ad" for Harris, featuring an AI-generated imitation of her voice making critical statements about why voters should not support her. App. 19-22; R.Doc. 1 at 12-15. For example: "I was selected because I am the ultimate diversity hire… [I]f you criticize anything I say, you're both sexist and racist…. I take insignificant things and discuss them as if they're significant …. [M]y work addressing the root causes of the border crisis were catastrophic…. You think the country went to [bleep] over the past four years? You ain't seen nothing yet." App. 20-21; R.Doc. 1 at 13-14. The text title of the video displayed on YouTube's web page was "Kamala Harris Ad PARODY," but the video itself did not state that it was parody. App. 13, 22; R.Doc. 1 at 6, 15 (including link to YouTube video).

This video took off and garnered over 100 million views. App. 13; R.Doc. 1 at 6. It was "re-tweeted" by many, including Rep. Franson (App. 132; R.Doc. 47 at 13; Add. 13) as well as Elon Musk. Many of these re-posts, including Rep. Franson's, did not reproduce the "PARODY" label. *See id.* As the video's notoriety spread, Senator Amy Klobuchar complained on X that it violated a rule prohibiting media "likely to result in widespread confusion on public issues." App. 45-46; R.Doc. 1 at 38-39. Dedicated fact-checkers decided to warn the public about the video, rating it "not real." App. 44-45; R.Doc. 1 at 37-38. California Governor Gavin Newsom

condemned Kohls's video, promised to outlaw videos like it, and promptly signed two California bills to that effect into law. App. 22-23; R.Doc. 1 at 15-16. Kohls brought a separate First Amendment lawsuit in California and obtained preliminary and permanent injunctions against these provisions. *See Kohls v. Bonta*, 752 F. Supp. 3d 1187 (E.D. Cal. 2024); 797 F. Supp. 3d 1177 (E.D. Cal. 2025). Subsequently, another well-known political satirist obtained an injunction against Hawaii's version of the law. *Babylon Bee, LLC v. Lopez*, Civ. No. 25-00234, 2026 WL 555552, 2026 U.S. Dist. LEXIS 41476 (D. Haw. Jan. 30, 2026).

This case is about Minnesota's version of these statutes. *Compare* Cal. Elec. Code §20012(f)(4) *and* Haw. Rev. Stat. §11-303, *with* Minn. Stat. §609.771, subd. 1(c). The Minnesota statute bans any political "deep fake"—which it defines as a technologically-created video that is "so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Minn. Stat. §609.771, subds. 1(c), 2. Disseminating such videos to "injure a candidate or influence the result of an election" is a crime punishable by up to five years in prison. *Id.* subds. 2, 3. And under a more recent amendment to the statute, if the 'offender' is a political candidate, she also "forfeit[s] the nomination or office." *Id.* subd. 3(b).

Faced with these potential penalties, Kohls and Rep. Franson sued and sought a preliminary injunction against enforcement of this statute under the First Amendment. App. 47; R.Doc. 1, at 40; App. 121; R.Doc. 47 at 2; Add. 2. The district court denied that request, and the panel of this Court affirmed. As to Kohls, the panel held that "Kohls's videos … are not deep fakes under the statute" because they are

"labeled as parodies," so he lacks Article III injury or standing. Panel Op. 4. And while Rep. Franson has standing, the panel concluded that the district court properly denied her a preliminary injunction because "Franson has not provided a sufficient explanation for her sixteen-month delay" between the enactment of the pre-amendment version of the statute and the filing of this suit. *Id.* at 7.

**ARGUMENT FOR GRANTING REHEARING *EN BANC***

The panel opinion adds to the growing confusion over important First Amendment and preliminary-injunction principles announced by this Court's and the Supreme Court's precedents. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (quotation omitted). Yet the panel's errors promise to prolong First Amendment violations by foreclosing preliminary relief. Specifically, the panel joined a growing trend of decisions that—contrary to established precedent—denies standing even to plaintiffs whose speech is arguably proscribed by a statute, and denies preliminary injunctive relief based on supposed 'delay' alone (even when irreparable constitutional harm is ongoing). The full Court should grant review to correct matters. *See Henderson v. Springfield R-12 Sch. Dist.*, 163 F.4th 478, 494 (8th Cir. 2025) (*en banc*) (reversing denial of standing to plaintiffs who experienced an "objectively reasonable chilling effect on [their] speech").

**I.  The panel's standing analysis conflicts with Supreme Court juris-prudence and creates an intra- and inter-circuit split.**

"To qualify as a deep fake under the statute, a video must be so realistic that a reasonable person would believe it depicts speech or conduct of an individual who did not in fact engage in such speech or conduct." Panel Op. 4 (quoting Minn. Stat. §609.771). That's it. There is no parody exception, no political-speech exception, no safe harbor for proper disclaimers, and no other exception that one may think of. Nevertheless, the panel created one: a labeled-as-parody exception. Quoting from a Supreme Court opinion interpreting the First Amendment to the U.S. Constitution, the panel concluded that a small "parody" disclaimer means that Kohls's videos "cannot reasonably [be] interpreted as stating actual facts," and therefore somehow are excluded from coverage under this Minnesota statute. *Id.* (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). Based only on that, and notwithstanding the evidence that many commentators had accused Kohls' video of being deceptive, the panel held that he lacks First Amendment injury or standing to sue.

In so holding, the panel rejected decades of Supreme Court precedent, added to the growing confusion in this Circuit about First Amendment standing, and deepened a circuit split.

**A.  Precedent requires an "arguably proscribed" test for First Amendment standing.**

Standing for a First Amendment pre-enforcement challenge is supposed to be a "lenient" inquiry. *Animal Legal Def. Fund v. Reynolds*, 89 F.4th 1071, 1077 (8th Cir. 2024). "This … forgiving standard" is "satisfied so long as the plaintiff's intended future conduct is arguably proscribed by the statute it wishes to challenge." *Turtle*

*Island Foods*, 992 F.3d at 699 (cleaned up); *accord Susan B. Anthony List*, 573 U.S. at 162.  Under this standard, it does not matter "whether … Plaintiffs' intended commercial speech will be proscribed by the Statute" they challenge. *Turtle Island Foods*, 992 F.3d at 699-700. "[T]he standing analysis and the substantive analysis are not coextensive"—as long as "it is at least 'arguable'" that the statute covers the plaintiff's intended speech, the First Amendment claims may proceed without need to delve into any "fuzzy question" of what the statute actually prohibits. *Id.*

There are important reasons for this rule. "Nothing in th[e Supreme] Court's decisions requires a plaintiff who wishes to challenge the constitutionality of a law to confess that he will in fact violate that law." *Susan B. Anthony List*, 573 U.S. at 163. Instead, it is extraordinarily well established that "constitutional violations may arise from the deterrent, or 'chilling,' effect of governmental regulations that fall short of a direct prohibition against the exercise of First Amendment rights." *Laird v. Tatum*, 408 U.S. 1, 11 (1972). A citizen who is arrested and prosecuted for protected speech under an unconstitutional statute—or who refrains from protected speech for fear of such—suffers a real injury, even if the prosecution eventually ends with a ruling that he did not violate the statute. Thus, the threshold for standing to obtain an injunction against unconstitutional enforcement activity is not whether a plaintiff would ultimately be convicted under the statute; it is whether the plaintiff may realistically be *prosecuted* under the statute. *See Brown v. Kemp*, 86 F.4th 745, 764 (7th Cir. 2023)

And a plaintiff's assertion of innocence "does not mean he concedes that he lacks standing, nor that a prosecutor would see his conduct differently." *Scott v. Allen*, 153 F.4th 1088, 1096 (10th Cir. 2025).

### B. Recent panel decisions, including this one, have sown confusion about the arguable-proscription standard.

The panel opinion here, however, widens a gap between this controlling line of precedent and another inconsistent one. On one side of that gap sit precedents like *Susan B. Anthony List*, *Turtle Island Foods*, and *281 Care Committee*, which expressly hold that a plaintiff need not show his intended conduct definitely violates the statute to have First Amendment standing. The other line of cases began (to our knowledge) in 2022 with *Christian Action League v. Freeman*, in which a divided panel of this Court stated a very different approach. According to the panel majority there, First Amendment standing of this type

> turns on a single question: is [plaintiff's] planned conduct criminalized by the Statute? If it is, then [plaintiff] has standing … But if the Statute doesn't prohibit [plaintiff's] conduct, then [plaintiff] isn't affected by the Statute and has no injury in fact.

31 F.4th 1068, 1072 (8th Cir. 2022). This conflicting standard reads the word "arguably" out of the Supreme Court's and this Court's precedents: it raises the previously-low standing bar by inquiring not whether the plaintiff's speech is arguably proscribed by the challenged statute, but whether it is *actually* proscribed. Indeed, in *Christian Action League*, Judge Smith dissented from the panel majority's holding as inconsistent with the arguable-proscription standard. *Id.* at 1075-76 (Smith., C.J., dissenting).

The result has been confusion. Shortly before the panel decision here, one district court found it "not entirely clear" in this Circuit "whether [a plaintiff] must show that its intended conduct is 'arguably proscribed'… or whether its intended conduct

is in fact proscribed." *X Corp. v. Ellison*, No. 25-cv-1649, 2025 U.S. Dist. LEXIS 234397, at *9 n.2 (D. Minn. Dec. 2, 2025). That should not be so, since the arguably-proscribed standard comes directly from the Supreme Court's *Susan B. Anthony* decision.

But the panel decision in this case unfortunately has deepened the confusion. Although the panel acknowledged that Kohls *asked* for the "arguably proscribes" standard (Panel Op. 4), it did not apply that standard. Instead, it simply concluded that "Kohls's videos … are not deep fakes under the statute" because they are "labeled as parodies," and "so he is not injured by any threat of enforcement." *Id.* This leaves district courts in this Circuit—not to mention speakers themselves—to guess what standard might apply if they ask the courts to enforce their First Amendment rights.

Other Courts of Appeals have already addressed and resolved this confusion—by following *Susan B. Anthony List* and rejecting the approach of the panel here. The Second Circuit has affirmed that the First Amendment standing test is "arguably proscribed," not "*in fact* proscribed." *Cerame*, 123 F.4th at 84 (citation omitted). The Third Circuit has clarified that "arguably proscribed is not a stringent test" and is satisfied when the challenged statute "appear[s] broad enough to cover the intended conduct." *N.J. Bankers Ass'n v. Atty. Gen. N.J.*, 49 F.4th 849, 855 (3d Cir. 2022). The Fifth Circuit agrees that a plaintiff's "arguable" reading of a statute is enough for First Amendment standing, *Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 217 (5th Cir. 2023), and that an actual-proscription requirement is "wrong." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 332 n.10 (5th Cir. 2020). The Seventh Circuit recognizes that a First Amendment plaintiff "does not need to show

or confess that h[is] intended conduct will actually violate the statute in question." *Brown*, 86 F.4th at 761. The Ninth Circuit agrees that, "for the purposes of standing, we accept Plaintiffs' interpretation of the statute so long as it is an arguable interpretation." *Am. Encore v. Fontes*, 152 F.4th 1097, 1116 (9th Cir. 2025). (This standard grounded the *Babylon Bee*'s successful challenge to Hawaii's parallel political deepfake ban. 2026 U.S. Dist. LEXIS 41476, at *17.) And the Tenth affirms that a First Amendment plaintiff "need not show that his conduct *actually* violates the law." *Scott*, 153 F.4th at 1096.

The panel decision here also sharply illustrates the importance of the arguably-proscribed standard. The panel resolved what is, at best, a difficult question of Minnesota statutory interpretation. The challenged statute defines a deepfake as being a "video recording … or … technological representation of speech or conduct … that is so realistic that a reasonable person would believe it" is genuine. Minn. Stat. §609.771, subd. 1(c)(1). It is easily "arguable" that this prohibition covers Kohls's conduct: the "technological representation of speech" in his video is the AI-generated voice, which is indeed "realistic" enough to be mistaken for Kamala Harris's. Indeed, the panel here seemed to agree that posting his video standing alone—as Rep. Franson did—*would* violate the statute. So the question was whether that same video somehow complies with the statute when a written "PARODY" label appears alongside it. The text of the statute indicates otherwise: after all, a written label cannot change how "realistic" the "video recording" itself is. But the panel decided, with little explanation, that the statute *does* have an implicit safe harbor for speech tagged as parody. That leaves Kohls—and other speakers like him—with no way to

know whether Minnesota could simply amend its statute to eliminate the implicit parody-label safe harbor and *then* punish their speech. And that, of course, gives rise to the kind of chilling effect that is anathema to the First Amendment, and that the arguably-proscribed standard is meant to prevent.

*

The *en banc* Court should grant review to resolve the conflict between two lines of this Court's own precedents, between a line of this Court's precedents and the holdings of the Supreme Court and other Courts of Appeals, and between the decision below and crucial First Amendment values.

## II. The panel's irreparable harm decision creates intra-circuit conflict.

The panel here created an additional form of confusion and inconsistency that merits the full Court's review. It held that Rep. Franson's purported delay in seeking a preliminary injunction, without more, was sufficient to justify denying her that relief. Panel Op. 6-8.

"[T]he relevant factors" in the preliminary injunction test are well established—irreparable harm during the litigation, the balance of harms, likelihood of success on the merits, and the public interest—and the timing of the plaintiff's request is not one of them. *Winter v. NRDC, Inc.,* 555 U.S. 7, 20 (2008); *Dataphase Sys. v. C L Sys.*, 640 F.2d 109, 113 (8th Cir. 1981) (*en banc*). Thus, the passage of time has no direct relevance to a preliminary-injunction request. And while it can have *indirect* relevance by informing the irreparable-harm *Dataphase* factor, that is so only in a relatively narrow sense. There is nothing intrinsic about passing time that causes

irreparable harm to cease, or to become reparable: for instance, a statute prohibiting people from criticizing the government would cause irreparable harm in its tenth year of existence as much as in its first. Instead, "delay is only significant if the harm has occurred and the parties cannot be returned to the status quo." *Ng,* 64 F.4th at 998 (cleaned up)  (quoting *McKinney*, 786 F.3d at 1125). That is, delay can weigh against a preliminary injunction only when it has become *too late* for the court to stave off or undo the harm pending trial.[*] To give another example: if a statute banned a particular book, the irreparable-harm factor would not weigh against a pre-liminary injunction just because three years had passed since its enactment—but it might if the plaintiff waited to sue until all copies of the book had been destroyed. Even then, of course, "no single [*Dataphase*] factor … is … dispositive; rather, the court should balance all the factors." *Id.* at 997.

This Court has acted consistently with that rule in previous First Amendment cases. For instance, in *281 Care Committee* the plaintiff sought an injunction against a law that had been enacted years before—and although this Court did not directly address the relevance of the passage of time, it reversed an order of dismissal without suggesting that timing was any kind of problem. 638 F.3d at 631 (discussing 2004 amendments to 1988 statute; plaintiffs had standing to seek "injunctive relief");

---

[*] *Ng* illustrates: the plaintiff waited to seek a preliminary injunction reinstating the University of Minnesota men's gymnastics team until after "the majority of the coaching staff and other gymnasts had left the University," and the new gymnastics season was about to begin. The Court concluded that *this* "delay … defeated Ng's goal of preventing irreparable harm." 64 F.4th at 998.

Judgment, ECF 145, *281 Care Comm. v. Arneson*, No. 08-cv-05215 (D. Minn. Dec. 8, 2014) (granting injunctive relief).

Other courts agree: delays are not "determinative" in First Amendment cases, and courts are appropriately "loath to withhold relief solely on that ground." *Cuviello v. City of Vallejo*, 944 F.3d 816, 823-24, 833 (9th Cir. 2019) (plaintiff sought preliminary injunction 20 years after statute's enactment, 21 months after learning of statute, and 17 months after encounter with law enforcement).

The panel's approach here starkly departed from those precedents, and so is likely to sow even further confusion among the district courts. Rather than treating the passage of time as one limited input to one factor of the *Dataphase* test, as *Ng* and *McKinney* require, the panel treated it as the overriding and dispositive question. The panel purported to apply a blanket rule that "[a] plaintiff's delay may justify denial of preliminary injunctive relief where it is not adequately explained," and then held that the lack of "a sufficient explanation for [Rep. Franson's] sixteen-month delay" was enough by itself to deny her preliminary relief. Panel Op. 7. It did not address whether the delay made it too late to remedy the threat to Rep. Franson's First Amendment rights—which it manifestly has not, since the challenged statute continues to apply and to threaten Rep. Franson today.

If district courts take this holding seriously, it will cause no end of mischief. The panel indicates that sixteen months of delay is a *per se* bar to a preliminary injunction, at least absent a "sufficient explanation." *Id.* There is significant risk that district courts will treat this as a sort of presumptive statute-of-limitations period for

preliminary injunctions—elevating a desire to avoid "delay" above even the canonical *Winter/Dataphase* factors.

The full Court should grant review to clarify that this outcome would be incorrect and wholly inappropriate.

**CONCLUSION**

The Court should grant rehearing *en banc*.


Respectfully submitted,

Dated: March 9, 2026

/s/ Nicholas J. Nelson
Adam E. Schulman
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
(610) 457-0856
adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
Nicholas J. Nelson (MN #0391984)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
(612) 428-7000
nicholas.nelson@umlc.org

*Attorneys for Plaintiffs-Appellants
Christopher Kohls and Mary Franson*

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. 40(d)(2) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 Version 2602 in 14-point Times New Roman font.

Pursuant to Fed. R. App. P. 40(d)(3), I hereby certify that this brief (exclusive of the tables of contents and authorities, certificates of service and compliance, but including footnotes) contains 3,642 words as determined by the word counting feature of Microsoft Word 365 Version 2602.

Pursuant to 8th Cir. R. 28A(h), I also hereby certify that the electronic file of this Brief has been submitted to the Clerk via the Court's CM/ECF system. The file has been scanned for viruses and is virus-free.

Dated: March 9, 2026

Respectfully submitted,

/s/Nicholas J. Nelson
Adam E. Schulman
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
(610) 457-0856
adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
Nicholas J. Nelson (MN #0391984)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
(612) 428-7000

nicholas.nelson@umlc.org

*Attorneys for Plaintiffs-Appellants*
*Christopher Kohls and Mary Franson*

# CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service has been accomplished by the CM/ECF system.

Dated: March 9, 2026     Respectfully submitted,


/s/Nicholas J. Nelson
Adam E. Schulman
M. Frank Bednarz
HAMILTON LINCOLN LAW INSTITUTE
1629 K Street, NW, Suite 300
Washington, DC 20006
(610) 457-0856
adam.schulman@hlli.org

Douglas P. Seaton (MN #127759)
Nicholas J. Nelson (MN #0391984)
Alexandra K. Howell (MN #504850)
UPPER MIDWEST LAW CENTER
12600 Whitewater Dr. Ste. 140
Minnetonka, MN 55343
(612) 428-7000
nicholas.nelson@umlc.org

*Attorneys for Plaintiffs-Appellants*
*Christopher Kohls and Mary Franson*